UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                         **Chapter 11**

**TELTRONICS, INC.,**                        Case No. 8:11-bk-12150-KRM

Debtor.
_____/

### AFFIDAVIT IN SUPPORT OF DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING RETENTION OF MICHAEL J. WORRALL AND SOLUTIONS MANAGEMENT, LLC AS CHIEF RESTRUCTURING OFFICER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, OR ALTERNATIVELY, SECTION 327 OF THE BANKRUPTCY CODE *NUNC PRO TUNC* AS OF JUNE 27, 2011

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

BEFORE ME, the undersigned authority, personally appeared Michael J. Worrall, who, being duly sworn, submits the following statement in compliance with 11 U.S.C. §§ 327, 328 and 329 and Bankruptcy Rules 2014 and 2016 and deposes and says:

1. I am Michael J. Worrall. I am employed by Solutions Management, LLC ("**Solutions Management**"), which is located at 459 Marmora Avenue, Tampa, Florida 33606. Over the past 15 years, I have specialized in turnaround management and have significant experience in working with distressed companies.

2. Solutions Management is a consulting firm that specializes in, among other things, interim management, turnaround and crisis management and financial restructuring in chapter 11 cases.

3. Unless otherwise stated, this Affidavit is based upon facts of which I have personal knowledge.

4. This Affidavit is submitted in order to comply with 11 U.S.C. §§ 327, 328 and 329, and Bankruptcy Rules 2014 and 2016.

5. In preparing this Affidavit, Solutions Management has undertaken a thorough review of its computerized conflict check database that contains the names of clients and other parties in respect to certain matters. Solutions Management has run the following parties through its conflicts database: (a) the Debtor and its non-debtor subsidiaries; (b) the Debtor's current officers and directors; (c) the Debtor's secured lender; (d) the Debtor's top twenty largest creditors; and (e) various professional firms known to be involved in this case. Solutions Management's investigation has not revealed any actual or potential conflicts of interest with respect to its proposed representation of the Debtor. As explained hereinbelow, Solutions Management has had dealings in other engagements with (i) a customer of the Debtor, NetVersant Solutions, Inc. and (ii) the secured lender in the instance case, Wells Fargo.

6. Prior to the Petition Date, from approximately July 2008 through to approximately January 2009, Solutions Management was engaged by NetVersant Solutions, Inc. ("**NetVersant**") in connection with its Chapter 11 bankruptcy filing in Delaware. NetVersant was a customer of the Debtor. The Debtor had no objection to Solutions Management's engagement by NetVersant. As of the Petition Date, NetVersant is not a creditor of the Debtor. The former engagement of Solutions Management by NetVersant does not create a conflict.

7. In addition, prior to the Petition Date, Worrall and Solutions Management in the regular course of its business have had other clients which have had loans with Wells Fargo. This does not create a conflict for this representation.

8. Prior to the Petition Date, beginning in approximately April 2008, Worrall and Solutions Management were engaged by the Debtor to provide consulting services focused on, among other things, the restructuring of the Debtor's business.

9. On or about June 24, 2011, pursuant to an agreement with Wells Fargo Capital Finance, Inc., the Debtor has continued to engage Solutions Management and myself as chief restructuring officer pursuant to an engagement. The agreement is attached hereto as Exhibit A and incorporated by reference.

10. The services provided prior to the Petition Date by Solutions Management and myself to the Debtor will not result in any actual conflict.

11. To the best of my knowledge, formed after reasonable inquiry, neither I nor any employee employed by Solutions Management holds any interest adverse to the Debtor, its estate, or any other parties in interest.

12. Neither I nor any employee employed by Solutions Management holds a direct or indirect equity interest in the Debtor, and no such employee has any right to acquire such an interest.

13. Neither I nor any employee employed by Solutions Management now holds, or has ever held, a direct or indirect equity interest (including stock, stock warrants or a partnership interest) in the Debtor, and no such employee now has, nor has ever had, any right to acquire such an interest.

14. Except as provided herein, neither I nor any employee in Solutions Management is now, or has ever served in the past, as an officer, director or employee of the Debtor.

15. Neither I nor any employee in Solutions Management is, or has ever been, in control of the Debtor or is a relative of a director, officer or person in control of the Debtor.

16. Neither I nor any employee in Solutions Management is, or has ever been, a general or limited partner of a partnership in which the Debtor is also a general or limited partner.

17. Neither I nor any employee in Solutions Management is, or has ever served as, an officer, director or employee of a financial advisor which has been engaged by the Debtor in connection with the offer, sale or issuance of a security of the Debtor.

18. Neither I nor any employee in Solutions Management has ever represented a financial advisor of the Debtor in connection with the offer, sale or issuance of a security of the Debtor.

19. To the best of my knowledge, neither I nor any employee in Solutions Management presently represents any person adverse to the Debtor or the estate, on any matter related to the Debtor or its estate.

20. Solutions Management does not believe that any actual conflict of interest exists with respect to its service provided pre-petition to the Debtor.

21. Based on the foregoing, Solutions Management is disinterested as defined in 11 U.S.C. § 101(14).

22. There is no agreement of any nature as to the sharing of any compensation to be paid to Solutions Management. The compensation of employees at Solutions Management fixed from time to time by its board of directors.

4

23.     This concludes my Affidavit.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Michael J. Worrall

SWORN TO AND SUBSCRIBED BEFORE ME this 27 day of June, 2011 by Michael J. Worrall who is personally known to me and who did not take an oath.

_____
Notary Public

Aaron Myerly
_____
Print Name
My Commission Expires: 3/14/15

AARON MYERLY
MY COMMISSION # EE 073886
EXPIRES: March 14, 2015
Bonded Thru Notary Public Underwriters

5

# **EXHIBIT A**


**Solutions Management LLC**

459 Marmora Avenue,
Tampa, Florida 33606

June 24th, 2011

Ewen Cameron
Teltronics, Inc.
2511 Corporate Way
Sarasota, FL 34221

Dear Mr. Cameron:

This letter confirms the engagement of Solutions Management LLC ("Solutions Management") as Chief Restructuring Officer (CRO) acting as special strategic advisors, financial advisors and bankruptcy consultants, to your company, Teltronics, Inc. its affiliates and subsidiaries, if any (collectively, the "Company"). You have informed us that the Company intends to file for bankruptcy to restructure the Company's' business and requires assistance in the development of a business plan and the negotiating of specific components of that plan. Our engagement will include working with the Company in a bankruptcy filing by the Company.

In this connection, Solutions Management will provide professional services as described hereinafter in this letter (the "Engagement Letter") in accordance with applicable standards of the consulting and "turnaround" professions.

Additional services to be performed:

- Meet the obligations of the DIP Term Sheet duly signed and authorized by Ewen Cameron and WFCF on June 24th, 2011 which states;

    " Borrower shall retain a chief restructuring officer ("CRO"), whose identity, terms of engagement and scope of duties shall be acceptable to WFCF, and who shall be exclusively responsible for overseeing and managing financial matters of Borrower, including authorizing disbursements, preparing, reviewing and validating financial reporting and borrowing base certificates, and monitoring Borrower's income, expenses, financing and use of cash collateral."

- Analyze the cash position, cash needs of the Company in the immediate term and validate the present cash forecast.

- Advise the company on changes to the current cash forecasting model, to improve the accuracy, the timing of sales and issues impacting the collateral base given recent submissions for funding.

Teltronics, Inc.
June 24, 2011
Page 2

- Review business plan(s), including assumptions and rationale from information supplied by Teltronics, Inc. to develop the budget through 2011.

- Advise the Lender in connection with any amendments or restructuring of the terms of the Credit Agreement, including frequency of reporting that may benefit the company.

- Review and provide a report to the Lender on the Company's cash flow, real estate, inventory and relationships with key vendors and creditors.

- Analyze the Company's strategic alternatives and financing needs in connection with the pursuit of such alternatives (including, without limitation, debtor in possession financing) and or a sale of the company.

- Advise and assist the Company in developing a new business plan, including assumptions and rationale.

- Advise and assist the Company, as a debtor in a bankruptcy case, in forecasting, planning, controlling and other aspects of managing cash, and, if necessary, obtaining debtor-in-possession financing or exit financing; and

- Provide such other services as may be required by the Company.

In addition to the specific services listed above that we will perform, we understand that we will participate, at your request and to the extent appropriate, in meetings and discussions, with the Company's Lender and other creditor constituencies, and with their respective professionals.

Our work will be performed on a "level-of-effort" basis; that is, the depth of our analysis and extent of our authentication of the information on which our advice to you will be predicated may be limited in some respects due to the extent and sufficiency of available information, time constraints dictated by the circumstances of our engagement, and other factors. Moreover, we do not contemplate examining any such information in accordance with generally accepted auditing or attestation standards. Rather, it is understood that we are to and will rely on information disclosed or supplied to us by employees and representatives of the Company without audit or other detailed verification of their accuracy and validity.

It is our intention to work closely with you throughout our engagement. Regular discussions with you of our engagement should facilitate our progress, enable the Company to appropriately direct our efforts so as to avoid duplicative efforts among the professionals retained in the case, and provide the Company with relevant information and an ongoing opportunity to confirm or request that we modify the scope of our engagement to best serve your objectives.

Teltronics, Inc.
June 24, 2011
Page 3

We will submit periodic oral and/or written reports summarizing our evaluations and analyses based on our work pursuant to this engagement letter. Our reports will encompass only matters that come to our attention in the course of our work that we perceive to be significant in relation to the objectives of our engagement. However, because of the time and scope limitations implicit in our engagement and the related limitations on the depth of our analyses and the extent of our verification of information, we may not discover all such matters or perceive their significance. Accordingly, we will be unable to and will not provide assurances in our reports concerning the integrity of the information used in our analysis and on which our findings and advice to you may be based. In addition, we will state that we have no obligation to and will not update our reports or extend our activities beyond the scope set forth herein unless you request and we agree to do so.

Information, Disclosure & Confidence

In the case of filing for bankruptcy by the Company, our retention to provide and continue services to the Company must be approved by the applicable Bankruptcy Court. However, unless and until the applicable Bankruptcy Court approves Solutions Management's retention on our customary terms and conditions of employment and our compensation for our services and reimbursement for out-of-pocket expenses in accordance with our customary billing practices, we will be unable to and will refrain from continuing to provide services under this Engagement Letter. Accordingly, we are not obligated to and will not perform services hereunder if the requisite approval of the Bankruptcy Court would be problematical. To limit any disruption in the continuity of our work hereunder, if the Company wishes to continue our engagement post-bankruptcy, we anticipate that an application to retain Solutions Management will be made promptly, indeed, if not included in one of the "first day" requests.

The Company agrees to treat any information received from Solutions Management, whether orally or in writing, with utmost confidentiality and, except as provided in this letter, will not publish, distribute or disclose in any manner any information developed by or received from us without Solutions Management's prior written approval. Such approval shall not be unreasonably withheld. Our approval is not needed to disclose such information (i) to the Company's legal counsel, (ii) if the information sought or required to be disclosed by an order binding on Solutions Management issued by a court having competent jurisdiction over Solutions Management (unless such order specifies that the information to be disclosed is to be placed under seal), or (iii) such information, is otherwise publicly available.

We agree that all information not publicly available which is received by Solutions Management from the Company or the Company's counsel in connection with this engagement will be treated confidentially by our Firm, except as required by the process of law or as authorized by the Company.

Conflicts of Interest

Solutions Management will perform an internal search for any potential conflicts of interest upon receipt from the Company of a list of its significant creditors and equity holders.

Teltronics, Inc.
June 24, 2011
Page 4

Additionally, we have or may provide consulting services to your bank, Wells Fargo Foothill, in matters unrelated to this engagement which we have disclosed to the Company on a confidential basis. The Company hereby waives any actual or potential conflict as a result thereof. Solutions Management is engaged by new clients every day and cannot assure that, following our employment by the Company, an engagement will not be accepted somewhere else in our Firm for an "Interested Party". We will advise you as promptly as possible of the circumstances of any such engagements with Interested Parties which may create a potential conflict of interest, should the engagement team for the Company become aware of any such engagement.

The Engagement Team

Mr. Michael J. Worrall will lead Solutions Management's project team assisted, as necessary by Rick Konvalinka. Mr. Worrall will be responsible for the overall direction and quality control of the project. The project team led by Mr. Worrall has extensive experience in the revitalization of troubled businesses. Additional staff may be used as necessary during our engagement.

In order for us to perform our services, it will be necessary for our personnel to have full access to the Company's facilities and to its books, records and reports. In addition, we will need to have discussions with your management and certain other personnel. We will perform our services in a manner, which will permit your business operations to proceed in an orderly fashion, subject to the requirements of this engagement.

Fee and billing Arrangement

Our fees are based on the hours actually incurred by each staff member and the standard hourly billing rate for that individual.

Our current hourly billing rates by staff classification are:

| Classification | Rate |
|---|---|
| Principals | $250 - $400 |
| Project Directors and Principal Consultant | $250 - $350 |
| Associate Consultants | $150 - $200 |
| Professional Assistants and Administrative Personnel | $75 - $125 |

These rates are adjusted at least annually. Upon written request, we will notify the Company of rate adjustments and promotions affecting the billing rates of persons on this engagement. In addition to the fees described above, the Company will reimburse Solutions Management for actual out-of-pocket expenses incurred such as photocopying, travel, outside vendors, etc. Travel expenses will include travel time where total flying time exceeds three hours and will be charged at 50% of the individuals' billable rate. All such billings will be in accordance with our customary practices and, as appropriate, in accordance with applicable guidelines of the Bankruptcy Court. Our fees are not

Teltronics, Inc.
June 24, 2011
Page 5

contingent upon the results of this engagement. We make no express or implied warranties of our work or predict either results or final developments in this matter.

Additionally, should any of the principals or employees of Solutions Management, LLC be required to testify at any administrative or judicial proceeding relating to this matter, either during or after the termination of this engagement, our firm will be compensated by the Company for our associated time charges at our regular hourly rates in effect at the time, and reimbursed for reasonable out-of-pocket expenses, including counsel fees.

We will submit to Teltronics, Inc., bi-weekly invoices for all services rendered and expenses incurred. Payment is to be made by check or wire transmission, payable to Solutions Management LLC within seven days of receipt of invoice. If a bankruptcy case is initiated by the Company and our continued engagement is approved by the Court, we shall be compensated for our services and reimbursed for any expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of an applicable Bankruptcy Court, and pursuant to any additional procedures that may be established by the Court for the Company's bankruptcy case. All such payments will be subject to final approval by the Bankruptcy Court.

Limitation of Liability

The Company agrees to indemnify and hold harmless Solutions Management, its affiliates, and its managers, officers, employees, principals and representatives, or any of them, harmless from and against all claims, expenses (including, but not limited to, attorneys' fees), damages and liabilities of any kind which may be incurred by or asserted against any such person in connection with or arising out of this Engagement Letter, or incurred by or resulting from any action or inaction taken or not taken or omitted by us in good faith arising out of or related to this engagement. Solutions Management specifically shall not be liable to the Company or any other party for any action taken or not taken or omitted by Solutions Management in good faith, except for matters judicially determined to be caused by Solutions Management's gross negligence or willful misconduct. Under no circumstances shall Solutions Management or any of its affiliates, managers, principals, employees, officers, or representatives be liable for any punitive, exemplary or consequential indirect damages which may alleged in connection with this Engagement Letter or the services provided hereunder.

The Company agrees that any claim it may have with respect to Solutions Management's engagement pursuant to the Engagement Letter must be formally commenced within one year after you become aware, or with exercise of reasonable diligence should have become aware, of the facts which give rise to the action, and in any event no later than two years after occurrence of the event giving rise to the alleged breach of contract, negligence or other cause of action.

This Engagement Letter is governed by and shall be construed in accordance with the laws of the State of Florida regarding applicable contracts made and performed in that State. EACH

Teltronics, Inc.
June 24, 2011
Page 6

PARTY HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY OR ANY CLAIM OR CAUSE OF ACTION ARISING IN CONNECTION WITH THIS ENGAGEMENT LETTER FOR SERVICES TO BE PROVIDED HEREUNDER, WHETHER ARISING IN CONTRACT COURT OR OTHERWISE.

Termination of Engagement

Either party may terminate this agreement at any time and for any reasons. Upon receiving written notice of termination from you, we will stop all work-in-process immediately. The Company will be responsible for all fees and expenses incurred prior to our stopping work. Solutions Management may terminate this engagement and stop work at any time and for any reason, including but not limited to the Debtor's failing to make payments when due under this agreement. The Company's obligations to indemnify Solutions Management and its partners and employees, and the limitations on liabilities, shall survive any termination of this engagement.

If this Engagement Letter conforms to the Company's understanding of our agreement, please sign and return the original of this letter to the undersigned. This Engagement Letter shall be of no force and effect unless and until the Company executes this letter and returns this letter as provided herein and such delivery is accompanied by payment of the retainer which is outlined herein. This Engagement Letter may be executed in multiple counterparts, each of which shall be deemed an original and all of which counterparts constitute one and the same document.

Yours sincerely,

Michael J. Worrall
President and Managing Partner

Read, agreed and accepted this 27th day of June, 2011.

Ewen Cameron
President & CEO
Teltronics, Inc.
on behalf of itself and
its affiliates and subsidiaries

By
Name: _____
Its: _____
Date: _____