# EXHIBIT A

# AMENDMENT NUMBER FIFTEEN TO CREDIT AGREEMENT

## [DIP FINANCING]

This Amendment Number Fifteen to Credit Agreement [DIP Financing] (this "DIP Amendment") is entered into as of June 29, 2011, by and among the lenders identified on the signature pages hereof (such lenders, together with their respective successors and permitted assigns, are referred to hereinafter each individually as a "Lender" and collectively as the "Lenders"), and WELLS FARGO CAPITAL FINANCE, INC., a California corporation, formerly known as Wells Fargo Foothill, Inc., as the arranger and administrative agent for the Lenders (in such capacity, together with its successors and assigns in such capacity, "Agent"), on the one hand, and TELTRONICS, INC., a Delaware corporation ("Borrower"), on the other hand, with reference to the following facts:

A.     On or about May 31, 2007, Borrower, Agent and Lenders have previously entered into the Agreement, the Security Agreement and the other Loan Documents.

B.     Borrower has requested that Lenders provide financing to Borrower during the Bankruptcy Case under the Agreement and the Security Agreement, each as amended by this DIP Amendment and the Financing Orders, and Agent and Lenders have agreed with such requests on the condition that Borrower execute and deliver this DIP Amendment and comply with all of the terms and conditions set forth herein.

C.     Agent and Lenders have agreed to amend the Loan Documents pursuant to this DIP Amendment and the Financing Orders to provide loans and financing to Borrower during the Bankruptcy Case upon the terms and conditions set forth in the Loan Documents, as amended by this DIP Amendment, and the Financing Orders.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby amend and supplement the Loan Documents as follows:

1.     **DEFINITIONS.**  All initially capitalized terms used in this DIP Amendment shall have the meanings given to them in the Loan Documents unless specifically defined herein.

2.     **AMENDMENTS TO AGREEMENT.**

(a)     **Definitions – New.**  Schedule 1.1 to Section 1.1 of the Agreement is amended by adding the following new definitions thereto in alphabetical order:

"Adverse Lender Claim" shall mean (a) an assertion or act in furtherance of any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief: (i) challenging or contesting the legality, validity, priority, amount or enforceability of the Obligations, (ii) challenging or contesting the legality, validity, priority or enforceability, or seeking to invalidate, set aside, avoid or subordinate, in whole or in part, any Lien or interest in favor of Agent or a Lender in the Collateral, or

(iii) seeking to prevent, hinder or delay the assertion or enforcement by Agent or a Lender of any right, remedy, claim, benefit or privilege of, or lien or interest in favor of such party in the Collateral or realization upon any Collateral, (b) a request to use cash collateral without Agent's and all Lenders' consent, except as provided in the Agreement, (c) any negotiation, solicitation or attempt to obtain postpetition loans or other financial accommodations (other than indebtedness that would be used to pay all Obligations in full or otherwise permitted hereunder) pursuant to section 364(c) or (d) other than from Lenders or such other party without Agent's and all Lenders' consent, (d) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against Agent, a Lender or a Lender, or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns or successors, including without limitation any attempt to recover on an Avoidance Action from any such party, or (e) any act which has or could have the effect of materially modifying or compromising any right, remedy, claim, benefit or privilege of Agent, a Lender, or which is contrary to any term or condition set forth in or acknowledged by the Loan Documents.

"Avoidance Actions" shall mean claims, actions, causes of action and proceeds thereof arising pursuant to sections 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code and, to the extent applicable under the foregoing, section 550 of the Bankruptcy Code, but specifically excluding claims, actions or causes of action under section 549 of the Bankruptcy Code and any proceeds relating thereto or arising therefrom.

"Bankruptcy Case" shall mean the case commenced by Borrower under chapter 11 of the Bankruptcy Code before the Bankruptcy Court, bearing Case No. 8:11-bk-12150-KRM.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the Middle District of Florida, Tampa Division.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

"Budget" shall mean the budget attached to this DIP Amendment as Exhibit A and such future and modified budgets acceptable in form and substance to the Agent in its sole discretion.

"Cash Collateral" shall mean the cash and noncash rents, issues, profits and proceeds of the Collateral, of any kind and nature, within the meaning of section 363(a) of the Bankruptcy Code.

"Cash Management Order" shall mean one or more orders, in form and substance acceptable to Agent, entered in the Bankruptcy Case, authorizing Borrower to continue to use its depository bank accounts and cash management procedures as such exist as of the Petition Date and authorizing the delivery to and dominion by Agent of cash, including Cash Collateral, including, without limitation, any agreements with financial institutions or third parties with respect to blocked accounts and similar arrangements.

"Committee" shall mean any official committee appointed in the Bankruptcy Case

under section 1102 of the Bankruptcy Code.

"CRO" shall mean a chief restructuring officer, whose identity, terms of engagement and scope of duties shall be acceptable to Agent, and who shall be exclusively responsible for overseeing and managing financial matters of Borrower, including authorizing disbursements, preparing, reviewing and validating financial reporting and borrowing base certificates, and monitoring Borrower's income, expenses, financing and use of cash collateral.

"DIP Amendment" shall mean Amendment Number Fifteen to Credit Agreement [DIP Financing], dated as of June 29, 2011, by and among Borrower, Agent and Lenders.

"Final Financing Order" shall mean an order, and related findings of fact and conclusions of law in support thereof, of the Bankruptcy Court entered in the Bankruptcy Case after a final hearing pursuant to Bankruptcy Rule 4001(c)(2) authorizing on or after the Petition Date, the incurrence of indebtedness by Borrower, the provision of loans, advances and other financial accommodations by Lenders to Borrower, and the granting of liens, interests, priority claims and other rights in favor of Lenders pursuant to the Loan Documents, pursuant to section 364 of the Bankruptcy Code and other applicable sections of the Bankruptcy Code, in form and substance acceptable to Agent and Lenders in their sole and absolute discretion, as the same may be amended, supplemented or otherwise modified from time to time with the express written consent of Borrower, and Agent and Lenders as may be required to approve such modifications, and that is not subject to any stay or injunction pending any appeal or petition for certiorari, review, rehearing or reconsideration, or otherwise.

"Financing Order(s)" shall mean, individually and collectively, the Interim Financing Order, the Final Financing Order, and such other orders, and related findings of fact and conclusions of law in support thereof, relating thereto or authorizing on or after the Petition Date, the incurrence of indebtedness by Borrower, the provision of loans from Lenders, advances and other financial accommodations by Lenders to Borrower, the granting of liens, interests, priority claims and other rights in favor of Agent and Lenders pursuant to the Loan Documents, on an emergency, interim, final or other basis pursuant to section 364 of the Bankruptcy Code and other applicable sections of the Bankruptcy Code as may be issued or entered in the Bankruptcy Case, each and all in form and substance acceptable to Agent and Lenders in their sole and absolute discretion.

"Interim Financing Order" shall mean an order, and related findings of fact and conclusions of law in support of such order, of the Bankruptcy Court entered in the Bankruptcy Case after a hearing held within 15 days after service of a motion requesting issuance and entry of a Financing Order under Bankruptcy Rule 4001(b)(2) and (c)(2), authorizing on or after the Petition Date, the incurrence of indebtedness by Borrower, the provision of loans, advances and other financial accommodations by Lenders to Borrower, and the granting of liens, interests, priority claims, and other rights in favor of Agent and Lenders pursuant to the Loan Documents, pursuant to section 364 of the Bankruptcy Code and other applicable sections of the Bankruptcy Code, in form and

substance acceptable to Agent and Lenders in their sole and absolute discretion, as the same may be amended, supplemented or otherwise modified from time to time with the express written consent of Agent and Lenders as may be required to approve such modifications, that is not subject to any stay or injunction pending any appeal or petition for certiorari, review, rehearing or reconsideration or otherwise.

"Petition Date" shall mean the date of the commencement of the Bankruptcy Case.

"Postpetition Collateral" shall mean Collateral existing as of and arising after the Petition Date.

"Postpetition Obligations" shall mean Obligations arising on or after the Petition Date.

"Prepetition Collateral" shall mean Collateral existing before the Petition Date, and proceeds of such Collateral pursuant to section 552(b)(1) of the Bankruptcy Code.

"Prepetition Obligations" shall mean Obligations existing before the Petition Date.

"Professionals" shall mean any and all attorneys, accountants, advisors, consultants, appraisers, brokers, investment bankers and other professionals retained or employed under section 327 or 1103(a) by Borrower or any Committee.

"Remaining Budgeted Disbursement Amount" shall mean an amount equal to: (i) 110% of the amounts of all projected disbursements for each week set forth in the Budget, or such other amount that Agent may determine and as provided in the Final Financing Order, minus (ii) the aggregate amount of Advances actually made by Lenders from the Petition Date through such date of determination (prior to giving effect to any requested Advances not yet made) on a weekly basis.

"Strategic Transaction" shall mean (i) the refinancing of the Obligations, (ii) a sale of all or a portion of the assets (other than in the ordinary course) of Borrower that will satisfy the Obligations, or (iii) a recapitalization of Borrower in an amount that will satisfy all Obligations.

(b)     **Definitions – Amended.** Schedule 1.1 of Section 1.1 of the Agreement is amended by replacing the applicable definitions therein (or portions thereof) with the following new definitions in alphabetical order:

"Borrowing Base" means, as of any date of determination, the result of:

(a)     the lesser of:

(i)     85% of the amount of prepetition and postpetition Eligible Accounts, less the amount, if any, of the Dilution Reserve, and

       (ii)    an amount equal to Borrower's Collections with respect to Accounts for the immediately preceding 55 day period; plus

    (b)    the lesser of:

       (i)    $550,000, and

       (ii)    12% of the value of Eligible Inventory valued at cost; provided that notwithstanding anything to the contrary, the advance rate provided in this clause (ii) has always been with respect to Eligible Inventory, *minus*

    (c)    the sum of (i) the Bank Product Reserve, (ii) a reserve in the amount of the claim of certain "carve out" expenses relating to fees and costs incurred by Professionals not to exceed an aggregate sum of $100,000, and (iii) the aggregate amount of reserves, if any, established by Agent under Section 2.1(b), whether established before or after the Petition Date, *minus*

    (d)    the outstanding balance of all Advances under the Prepetition Obligations.

    "Collateral" shall mean all assets and interests in assets and proceeds thereof now owned or hereafter by Borrower or its Subsidiaries in or upon which a Lien is granted under any of the Loan Documents; provided, however, Collateral shall not include Avoidance Actions as such term is defined in the Agreement

    Clause (a) and (i) of "Eligible Accounts" shall mean:

       (a)    Accounts that the Account Debtor has failed to pay within 90 days (180 days if the Account Debtor is either the New York City Board of Education or the New York City Department of Corrections, or their respective Affiliates) of original invoice date or Accounts with selling terms of more than 60 days; provided, however, notwithstanding the foregoing, Accounts owed by the New York City Board of Education and the New York City Department of Corrections, and their respective Affiliates, that are considered Eligible Accounts pursuant to this subparagraph (a), shall not exceed $600,000 in the aggregate at any time,"

. . .

       (i)    Accounts with respect to an Account Debtor whose total obligations owing to Borrower exceed (i) 50% of all Eligible Accounts, with respect to Accounts owed by the New York City Board of Education and its Affiliates (collectively, "NYBOE"), (ii) 50% of all Eligible Accounts, with respect to Accounts owed by the New York City Department of Corrections and its Affiliates (collectively, "NYDOC"), (iii) 55% of all Eligible Accounts, with respect to Accounts owed by the Federal Bureau of Prisons and its Affiliates (collectively, "FBOP"), but in no event shall the aggregate amount of all Eligible Accounts owed by NYBOE, NYDOC or FBOP exceed 75% of all Eligible

Accounts, (iv) 20% of all Eligible Accounts, with respect to Accounts owed by Neilsen Media Research, and (v) 12.5% of all Eligible Accounts in all other cases (such percentage, as applied to a particular Account Debtor, being subject to reduction by Agent in its Permitted Discretion if the creditworthiness of such Account Debtor deteriorates), in each such case to the extent of the obligations owing by such Account Debtor in excess of such percentages; provided, however, that, in each case, the amount of Eligible Accounts that are excluded because they exceed the foregoing percentages shall be determined by Agent based on all of the otherwise Eligible Accounts prior to giving effect to any eliminations based upon the foregoing concentration limit,"

"Fee Letter" means that certain Fee Letter [DIP Financing], dated as of June 29, 2011.

"Loan Documents" means the Agreement, this DIP Amendment, the Financing Orders, the Disclosure Statement, the Bank Product Agreements, any Borrowing Base Certificate, the Cash Management Agreements, the Control Agreements, the Copyright Security Agreement, the Fee Letter, the Guaranty, the Intercompany Subordination Agreement, the Letters of Credit, the Mortgages, the Patent Security Agreement, the Security Agreement, the Trademark Security Agreement, any note or notes executed by Borrower in connection with the Agreement and payable to a member of the Lender Group, and any other agreement entered into, now or in the future, by Borrower or any of its Subsidiaries and the Lender Group in connection with the Agreement.

"Maximum Revolver Amount" means $2,500,000, or such other amount that Agent may determine and as provided in the Final Financing Order.

(c)    **Lender Group Expenses (DIP).**    Notwithstanding anything to the contrary in the Loan Documents, the definition of "Lender Group Expenses" set forth in Schedule 1.1 to the Agreement shall include all out-of-pocket expenses, incurred to provide this DIP Amendment and all transactions related thereto, including without limitation: reasonable legal fees and expenses, closing costs, appraisal fees, UCC search and recording fees, costs for individual and corporate credit reports, surveys, and real estate title searches, recording fees, environmental assessment fees, physical inspection fees, fees to initiate electronic reporting and collateral examination costs incurred by Agent in connection with the transactions contemplated herein, and are to be paid by Borrower whether or not any Advances or financial accommodations are provided by Lenders after the Petition Date. Borrower's obligation to pay the foregoing shall survive the expiration or termination of any Financing Order.

(d)    **Revolver Advances (DIP).**    Section 2.1(a) of the Agreement is hereby amended by deleting such clause in its entirety and replacing it with the following:

(a)    Subject to the terms and conditions of this Agreement, and during the term of this Agreement, each Lender with a Revolver Commitment agrees (severally, not jointly or jointly and severally) to make advances ("Advances") to Borrower in an amount at any one time outstanding not to exceed such Lender's Pro Rata Share of an amount equal to *the lesser of* (i) the Maximum Revolver Amount *less* the Letter of Credit

Usage at such time, (ii) the Borrowing Base at such time *less* the Letter of Credit Usage at such time, and (iii) the Remaining Budgeted Disbursement Amount at such time *less* the Letter of Credit Usage at such time."

(e) **Term Loan**. Notwithstanding anything to the contrary set forth in the Agreement, including Section 2.2 thereof, the outstanding principal balance of the Term Loan shall be due and payable on the Maturity Date; provided, however, Borrower shall pay current interest when due as provided in the Agreement, including without limitation section 2.6(d).

(f) **Payments - Apportionment and Application**. Section 2.4(b)(ii) of the Agreement is hereby amended by deleting such clause in its entirety and replacing it with the following:

> (ii) At any time that an Application Event has occurred and is continuing and except as otherwise provided with respect to Defaulting Lenders, all payments remitted to Agent and all proceeds of Collateral received by Agent shall be applied to satisfy Obligations at Agent's discretion.

(g) **Payments - Mandatory Prepayments**. Section 2.4(c) is hereby amended by deleting such clause in its entirety and replacing it with the following:

> (c) Notwithstanding anything to the contrary in the Loan Documents, Borrower is not obligated to make any mandatory prepayments under the Agreement prior to the Maturity Date.

(h) **Payments – Postpetition/Prepetition Application**. Section 2.4 of the Agreement is amended by adding a new section 2.4(e) as follows:

2.4(e) Payments - Application to Prepetition and Postpetition Obligations. With respect to the satisfaction of Obligations with Prepetition Collateral and Postpetition Collateral, the Collateral and proceeds of Collateral, including Cash Collateral, and payments on account of Obligations, shall be applied by Agent and Lenders to satisfy the Obligations as follows (in each instance pursuant to the application mechanics set forth in section 2.4(b)):

a. The proceeds of Prepetition Collateral shall be applied first to satisfy Prepetition Obligations until paid in full, and thereafter to satisfy all other Obligations, including Postpetition Obligations.

b. The proceeds of Postpetition Collateral shall be applied first to satisfy Postpetition Obligations until paid in full, and thereafter to satisfy all other Obligations, including Prepetition Obligations.

c. In the event any proceeds of Collateral cannot reasonably identified by Agent as either proceeds of Prepetition Collateral or Postpetition Collateral, such proceeds shall be applied first to satisfy Prepetition Obligations until paid in full, and thereafter to satisfy all other Obligations, including Postpetition Obligations.

(i)     **Cash Management – Specified Customer Deposits**. Section 2.7 of the Agreement is amended by adding a new section 2.7(e) as follows:

2.7(e).    Notwithstanding anything to the contrary in the Loan Documents, including section 2.7 of this Agreement, upon Agent's prior consent, to be given or not given in Agent's Permitted Discretion, Borrower may retain and use certain deposits and prepayments by Alliant Techsystems Inc. (ATK) paid to Borrower for the purchase of raw materials to the extent that such prepayments are held by Borrower pursuant to the prepayment procedures set forth on Exhibit B attached to the DIP Amendment.

(j)     **Letter of Credit**. Section 2.12(a)(ii) of the Agreement is hereby amended by deleting such clause in its entirety and replacing it with the following:

"(ii)     the Letter of Credit Usage would exceed $0, or"

(k)     **Initial Conditions Precedent (DIP)**. Section 3.1 of the Agreement is amended by adding a new section 3.1(A) as follows:

3.1(A)    Conditions Precedent to the Initial Extension of Credit Postpetition. In addition to section 3.1 of this Agreement, the obligation of each Lender to make its initial extension of credit provided for hereunder on or after the Petition Date, is subject to the fulfillment, to the satisfaction of Agent and each Lender of each of the conditions precedent set forth as follows (the making of such initial extension of credit by a Lender being conclusively deemed to be its satisfaction or waiver of the conditions precedent).

(aa)    Closing Date. The Closing Date shall occur on or before July 5, 2011.

(bb)    Interim Financing Order. The Interim Financing Order shall have been entered by the Bankruptcy Court within seven days after the Petition Date.

(cc)    Cash Management Order. The Cash Management Order shall have been entered by the Bankruptcy Court at or before entry of the Interim Financing Order (and may be incorporated in the Interim Financing Order).

(dd)    CRO. Borrower shall have engaged the CRO.

(ee)    DIP Loan Documents. Agent shall have received this DIP Amendment and that certain Fee Letter [DIP Financing], each in form and substance satisfactory to Agent, duly executed, and each such document shall be in full force and effect.

(ff)    Fees. Agent shall have received payment of all fees and expenses (including, without limitation, reasonable fees and expenses of counsel) required to be paid to Agent and Lenders on or before the Closing Date; provided, however, the DIP closing fee in the amount of $50,000 shall be paid in accordance with that certain Fee Letter [DIP Financing] of even date herewith.

(l) **Conditions Precedent (DIP)**. Section 3.2 of the Agreement is amended by adding a new section 3.2(A) as follows:

3.2(A) Conditions Subsequent to the Extension of Credit Postpetition. In addition to section 3.2 of this Agreement, the obligation of each Lender to make its initial extension of credit provided for hereunder is subject to the fulfillment, to the satisfaction of Agent and each Lender of each of the conditions subsequent set forth as follows (the making of such initial extension of credit by a Lender being conclusively deemed to be its satisfaction or waiver of the conditions precedent).

(aa) Final Financing Order. The Final Financing Order shall have been entered by the Bankruptcy Court within 30 days after the Petition Date.

(m) **Term**. Section 3.3 of the Agreement is amended as follows:

3.3 Term. This Agreement shall continue in full force and effect until the earliest to occur of (the "Maturity Date"): (i) September 30, 2011, (ii) the effective date of a plan of reorganization in form and substance acceptable to the Agent, (iii) the occurrence of an Event of Default under the DIP Amendment and a determination by Agent to terminate its commitment, or (iv) the closing of a sale that satisfies the Obligations in full in cash.

(n) **Representations and Warranties (DIP)**. Section 4 of the Agreement is amended by adding a new section 4.23 as follows:

4.23 Representations and Warranties (DIP). As of the Petition Date, (i) the Obligations were due and outstanding pursuant to the Loan Documents in the principal amount of $2,771,583 (not including accrued but unpaid interest and fees through the Petition Date, and the earned but unpaid fees set forth in the Fee Letter) in the aggregate, all of which are unconditionally owing by Borrower to Lenders, without offset, defense or counterclaim of any kind, nature and description whatsoever; (ii) Borrower has no defense to, right of set off, counterclaim or other basis to challenge the Obligations; (iii) the Obligations are secured by valid, enforceable and perfected liens and interests in favor of Agent and Lenders on all Collateral; (iv) the Liens and interests in favor of Agent and Lenders encumbering the Collateral are not avoidable in any way, including without limitation, by operation of any section of the Bankruptcy Code, including sections 541 through 550, or any other law; (v) the Obligations and Liens and interests in favor of Agent and Lenders encumbering the Collateral are not subject to subordination in favor of any other person on any basis except as specifically provided in the Loan Documents; provided, however, that this acknowledgment, confirmation and agreement shall not impair, prohibit or otherwise affect any Committee's or other estate representative's right to prosecute an Adverse Lender Claim subject to the terms of this Agreement and the Financing Orders.

(o) **Affirmative Covenants (DIP)**. Section 5 of the Agreement is amended by adding a new section 5.20 as follows:

5.20 Affirmative Covenants (DIP).

(a) <u>Financing Orders.</u> Take reasonable acts and make reasonable effort to request and obtain approval of the Loan Documents and the transactions, rights, remedies, interests, privileges, waivers and releases contemplated thereunder, and entry of the Financing Orders.

(b) <u>Bankruptcy Papers.</u> Promptly furnish to counsel for Agent all pleadings, motions, applications, judicial information, financial information and other documents filed by or on behalf of Borrower with the Bankruptcy Court or served upon the United States Trustee in the Bankruptcy Case or other non-confidential material documents distributed by or on behalf of Borrower to any Committee appointed in the Bankruptcy Case.

(c) <u>Bankruptcy Events.</u> Promptly advise and provide reasonable access to, and discuss with, Agent and its counsel any and all material information and developments in connection with any proposed chapter 11 plan or substantial asset sale pursuant to section 363 of the Bankruptcy Code, any asset valuation and disclosure statement, and any other event or condition which is reasonably likely to have a material effect on Borrower or the Bankruptcy Case.

(d) <u>CRO Matters.</u> Cooperate with and assist the CRO, provide the CRO with access to all information, files and records of Borrower, not interfere with or take any act that would restrict the CRO's performance of his or her duties, and not terminate or alter the CRO's engagement to effectuate a termination or discharge of the CRO, unless for cause and with the consent of Agent.

(e) <u>Adequate Protection Payments.</u> Make payments to Agent and Lenders of such amounts due pursuant to the terms of the Loan Documents including without limitation interest on the Term Loan.

(g) <u>Budget Compliance.</u> Realize gross revenue not less than the projected revenue, and shall not incur or pay expenses greater than 110% of the amounts of all projected expenses, in the aggregate per line item and for each weekly period (which amounts may be increased upon Agent's prior written consent), as set forth in the Budget.

(h) <u>Investment Banker.</u> Engage not later than 30 days after the Closing Date, an investment banker to assist Borrower with the development, evaluation and implementation of a Strategic Transaction.

(i) <u>Strategic Transaction Report.</u> Provide to Agent not later than 75 days after the Closing Date (i) an information memorandum, in form and substance acceptable to Agent, prepared by the investment banker, about Borrower to be used in connection with soliciting offers in furtherance of a Strategic Transaction, and (ii) evidence, in form and substance acceptable to Agent, that such information memorandum has been distributed to potential lenders, investors and/or purchasers.

(j) <u>Collateral Access Agreement.</u> Agent shall have received not later than 25 days after the Closing Date, a Collateral Access Agreement, the form and substance of which shall be satisfactory to Agent, for the leased location at 17000 14th Avenue East,

Palmetto, Florida 34221.

    (p)    **Reports.** Schedule 5.3 of the Agreement is amended by adding:

As soon as available but in no event later than 2 business days after the end of any calendar week – a variance report showing Borrower's actual revenue and expenditures when compared to the Budget for the same period.

30 days following the Petition Date – copies of an executed engagement letter with an investment banker employed in connection with a Strategic Transaction.

75 days following the Petition Date - an information memorandum prepared by the investment banker, about Borrower to be used in connection with soliciting offers in furtherance of a Strategic Transaction, and evidence that such information memorandum has been distributed to potential lenders, investors and/or purchasers.

    (q)    **Financial Covenants.** Section 6.16 of the Agreement is hereby amended by deleting such Section in its entirety and replacing it with the following:

    6.16    [Intentionally Deleted].

    (r)    **Negative Covenants (DIP).** Section 6 of the Agreement is amended by adding a new section 6.17 as follows:

    6.17  Negative Covenants (DIP).

    (a)  Postpetition Liens. Create, incur, assume or suffer to exist, directly or indirectly, any Lien or interest on or with respect to any of its assets, of any kind, whether now owned or hereafter acquired, or any income or profits therefrom.

    (b)  Financing Orders. Request, seek, support or consent to, but otherwise and shall oppose and contest (unless otherwise consented to by Agent), any modification, stay, vacating or amendment of any Financing Order or Loan Document.

    (c)  Other Postpetition Debt. Request, seek, support or consent to, but otherwise and shall oppose and contest (unless otherwise consented to by Agent), and hereby irrevocably waives any rights that it may have to seek authority (i) to obtain postpetition loans or other financial accommodations or indebtedness pursuant to section 364(c) or (d) of the Bankruptcy Code unless such authority results in all obligations owed to Agent and Lenders are indefeasibly satisfied in full;

    (d)  Other Administrative Priority Expenses. Except as otherwise expressly authorized under the Financing Orders, request, seek, support or consent to, but otherwise oppose and contest (unless otherwise consented to by Agent), any approval or the granting of any priority for any administrative expense priority claim or any other claim (now existing or hereafter arising of any kind or nature whatsoever) which is equal or superior to the priority in respect of the Obligations unless otherwise expressly consented to by Agent.

(e) Payment of Expenses. Pay any expense in excess of the maximum amount delineated in the Budget for such category of expense during the applicable time period set forth in the Budget.

(g) Use of Proceeds and Cash Collateral. Use the proceeds of the Advances and the Term Loan or Collateral, including Cash Collateral, for any purpose relating to or in furtherance of an Adverse Lender Claim, including without limitation the payment of fees and costs incurred by Professionals.

(i) Cash Collateral. In the event of the termination of Lenders' commitment to make advances or loans or provide financial accommodations hereunder, request or support any request for the use of Collateral or Cash Collateral pursuant to section 363 of the Bankruptcy Code or other applicable law without Agent's and Lenders' express written consent, except for the limited purposes of completing a wind down of Borrower's business and liquidation of its assets pursuant to a wind down budget, all on terms acceptable to Agent;

(f) Surcharge Waiver. After entry of the Final Financing Order, seek or support any request, and waives any claims to surcharge the Collateral under section 506(c) of the Bankruptcy Code upon satisfaction of all Obligations.

(s) **Events of Default (DIP).** Section 7 of the Agreement is amended by adding a new section 7.14 as follows:

7.14 Events of Default (DIP).

(a) Financing Orders. The entry of an order in the Bankruptcy Case amending, supplementing, staying, reversing, vacating or otherwise modifying any Financing Order or any Loan Document, or any term or provision therein, or Lender's rights, benefits, privileges or remedies under the Financing Orders or any Loan Document;

(b) Other Postpetition Debt. The entry of an order in the Bankruptcy Case authorizing Borrower in the Bankruptcy Case to incur indebtedness (except as expressly permitted under this Agreement) or additional financing under section 364(c) or (d) of the Bankruptcy Code other than from Lenders or without the express prior written consent of Agent and Lenders;

(c) Surcharge of Collateral. The entry of an order in the Bankruptcy Case authorizing any costs or expenses under section 506(c) of the Bankruptcy Code as a surcharge against the Collateral following satisfaction of all Obligations.;

(d) Unauthorized Use of Cash Collateral. The entry of an order in the Bankruptcy Case authorizing the use of Cash Collateral without Agent's and Lenders' prior written consent under section 363(c) of the Bankruptcy Code (except as permitted herein or under the Financing Orders);

(e) Appointment of Trustee or Examiner. The entry of an order in the

Bankruptcy Case appointing an interim or permanent trustee, or an examiner having enlarged powers relating to the operation of the businesses of Borrower under section 1106(b) of the Bankruptcy Code;

(f) <u>Dismissal</u>. The entry of an order in the Bankruptcy Case dismissing the Bankruptcy Case or converting the Bankruptcy Case to a proceeding under chapter 7 of the Bankruptcy Code;

(g) <u>Third Party Relief</u>. The entry of an order in the Bankruptcy Case authorizing or granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code to permit a party to execute upon or enforce a lien on or exercise any right with respect to any material portion of the Collateral or to the extent it would result in a material adverse effect on Borrower, Borrower's financial or operational condition, or Borrower's prospects;

(h) <u>Other Administrative Priority Expenses</u>. The entry of an order in the Bankruptcy Case approving or granting priority for any administrative expense priority claim or any other claim (now existing or hereafter arising of any kind or nature whatsoever) which is equal or superior to the priority in respect of the Obligations unless otherwise expressly consented to by Agent.

(i) <u>Financing Order Default</u>. The occurrence of any condition or event that would be a breach of or a default under any Financing Order, or which entitle Lender to exercise any of rights or remedies granted, authorized, acknowledged or recognized in a Financing Order, including, without limitation, any "Default" or "Event of Default" as defined in the Financing Orders;

(j) <u>Termination</u>. The occurrence of the Maturity Date, a termination or expiration, or an event that would permit or result in a termination of (a) any Lender's commitment to make loans or advances or provide financial accommodations to Borrower, (b) the Loan Agreement, or (c) any Financing Order;

(k) <u>Business Interruption</u>. Borrower suspends or discontinues or is enjoined by any court or governmental agency from continuing to conduct all or any material part of its business or if a trustee, receiver or custodian is appointed with respect to Borrower or any of asset of Borrower;

(l) <u>Postpetition Lien</u>. The occurrence or threat of the occurrence of any restriction, limitation or cessation of either the validity, scope, existence, first and senior priority, perfection or enforceability of the Liens and interests in favor of Agent and Lenders encumbering the Collateral securing the Obligations arising after the Petition Date, for any reason.

(m) <u>CRO</u>. The failure or inability to engage a new CRO within 15 days after the termination or discharge of the existing CRO.

(n) <u>Sale</u>. The entry of any order approving the sale of all or substantially all of the Debtor's assets under section 363 of the Bankruptcy Code (unless otherwise agreed to by the DIP Lender).

(t) **Reservation of Rights**. Section 8 of the Agreement is hereby added by adding a new section 8.3 as follows:

8.3 Reservation and Survival of Rights. Notwithstanding the occurrence of an Event of Default, Maturity Date or a modification, expiration or amendment to any Financing Order, (a) Agent and Lenders shall retain all Obligations, Liens, rights, interests, privileges, claims and protections pursuant to the Loan Documents and the Financing Orders, which shall survive such event. Lender reserves, including without limitation rights to seek further, different or additional adequate protection, to seek relief from the automatic stay, to seek an injunction, to not consent to or oppose any request for use of Cash Collateral or granting of any interest in any of the Collateral or priority in favor of any other party, to object to any sale of assets, and to object to the allowance and/or payment of compensation of Professionals or other persons or entities seeking compensation or reimbursement from Borrower's bankruptcy estate.

(u) **Venue**. Section 12(b) of the Agreement is hereby amended by deleting that subparagraph therefrom in its entirety and replacing it with the following:

(b) Notwithstanding anything to the contrary in any Loan Document, the parties agree that all actions or proceedings arising in connection with the Agreement (as amended hereby) and the Loan Documents shall be tried and litigated only in the Bankruptcy Court during the pendency of the Bankruptcy Case and thereafter in a court of competent jurisdiction selected by Agent in its sole discretion.. Each of Borrower and Lender waives, to the extent permitted under applicable law, any right each may have to assert the doctrine of forum non conveniens or to object to venue to the extent any proceeding is brought in accordance with this section.

(v) Annex A to Exhibit B-1 currently attached to the Agreement is hereby amended by deleting such annex in its entirety and replacing it with Annex A attached hereto.

(w) Schedule C-1 currently attached to the Agreement is hereby amended by deleting such Schedule in its entirety and replacing it with Schedule C-1 attached hereto.

## 3. AMENDMENTS TO SECURITY AGREEMENT.

(a) **Definitions – Amended**. Section 1 of the Agreement is amended by replacing the applicable definitions in the Agreement with the following new definitions in alphabetical order:

"Collateral" shall have the meaning specified therefore in Section 2; provided, however, Collateral shall not include Avoidance Actions as such term is defined in the Agreement.

(b)    **Application of Agreement Amendments**. The Security Agreement shall be deemed amended by the terms and amendments set for in this DIP Amendment with respect to the Agreement to the extent applicable.

4.    **REPRESENTATIONS AND WARRANTIES**.

(a)    **Acknowledgment of Representations and Warranties**. Borrower hereby affirms to Agent and Lenders that all of Borrower's representations and warranties set forth in the Agreement are true, complete and accurate in all respects as of the date hereof.

5.    **CONDITIONS PRECEDENT**. The effectiveness of this Amendment is hereby conditioned upon receipt by Agent of (i) a copy of this Amendment duly executed by each party hereto, (ii) a copy of that certain Fee Letter [DIP Financing] of even date herewith duly executed by each party thereto, each in form and substance satisfactory to Agent, and (iii) entry of the Interim Financing Order in the Bankruptcy Case.

6.    **COSTS AND EXPENSES**. Borrower shall pay to Agent and Lenders all of Agent's and Lenders' out-of-pocket costs and expenses (including, without limitation, the fees and expenses of its counsel, which counsel may include any local counsel deemed necessary, search fees, filing and recording fees, documentation fees, appraisal fees, travel expenses, and other fees) arising in connection with the preparation, execution, and delivery of this DIP Amendment and all related documents.

7.    **LIMITED EFFECT**. In the event of a conflict between the terms and provisions of this DIP Amendment and the terms and provisions of the Loan Documents, the terms and provisions of this DIP Amendment shall govern. In the event of a conflict between the terms and provisions of this DIP Amendment and the terms and provisions of a Financing Order, the terms and provisions of the Financing Order shall govern. In all other respects, the Loan Documents, as amended and supplemented hereby, shall remain in full force and effect.

8.    **COUNTERPARTS; EFFECTIVENESS**. This DIP Amendment may be executed in any number of counterparts and by different parties on separate counterparts, each of which when so executed and delivered shall be deemed to be an original. All such counterparts, taken together, shall constitute but one and the same amendment. This DIP Amendment shall become effective upon the execution of a counterpart of this DIP Amendment by each of the parties hereto. This DIP Amendment is a Loan Document and is subject to all the terms and conditions, and entitled to all the protections, applicable to Loan Documents generally.

*[remainder of page left blank intentionally; signatures to follow]*

IN WITNESS WHEREOF, the parties hereto have executed this DIP Amendment as of the date first set forth above.

**TELTRONICS, INC.,**
a Delaware corporation, as Debtor in Possession,

By: _____

Name: _Ewen Cameron_____

Title: _President and CEO_____

**WELLS FARGO CAPITAL FINANCE, INC.,**
a California corporation,
as Agent, Lender and Required Lender

By: _____

Name:  Matthew Maclay
Title:  Vice President

# Annex A

Accounts created in the ordinary course arising out of sale of goods or rendition of services complying with each of the representations and warranties respecting Eligible Accounts made in the Loan Documents ("***Total Accounts***"),

$_____

*less* (without duplication):

Accounts that the Account Debtor has failed to pay within 90 days (180 days if the Account Debtor is either the New York City Board of Education or the New York City Department of Corrections, or their respective Affiliates) of original invoice date or Accounts with selling terms of more than 60 days; provided, however, notwithstanding the foregoing, Accounts owed by the New York City Board of Education and the New York City Department of Corrections, and their respective Affiliates, that are considered Eligible Accounts pursuant to this subparagraph, shall not exceed $600,000 in the aggregate at any time,

$_____

Accounts owed by an Account Debtor (or its Affiliates) where 50% or more of all Accounts owed by that Account Debtor (or its Affiliates) are deemed ineligible under the immediately preceding clause,

$_____

Accounts with respect to which the Account Debtor is an Affiliate of any Borrower or an employee or agent of any Borrower or any Affiliate of Borrower,

$_____

Accounts arising in a transaction wherein goods are placed on consignment or are sold pursuant to a guaranteed sale, a sale or return, a sale on approval, a bill and hold, or any other terms by reason of which the payment by the Account Debtor may be conditional,

$_____

Accounts that are not payable in Dollars,

$_____

Accounts with respect to which the Account Debtor either (i) does not maintain its chief executive office in the United States, or (ii) is not organized under the laws of the United States or any state thereof, or (iii) is the government of any foreign country or sovereign state, or of any state, province, municipality, or other political subdivision thereof, or of any department, agency, public corporation, or other instrumentality thereof, unless (y) the Account is supported by an irrevocable letter of credit satisfactory to Agent (as to form, substance, and issuer or domestic confirming bank) that has been delivered to Agent and is directly drawable by Agent, or (z) the Account is covered by credit insurance in form, substance, and amount, and by an insurer, satisfactory to Agent,                                                    $_____

On and after 90 days following the Closing Date, Accounts with respect to which the Account Debtor is either (i) the United States or any department, agency, or instrumentality of the United States (exclusive, however, of Accounts with respect to which the applicable Borrower has complied, to the reasonable satisfaction of Agent, with the Assignment of Claims Act, 31 USC § 3727), or (ii) any state of the United States,                                                    $_____

Accounts with respect to which the Account Debtor is a creditor of any Borrower, has or has asserted a right of setoff, or has disputed its obligation to pay all or any portion of the Account, to the extent of such claim, right of setoff, or dispute,                                                    $_____

Accounts with respect to an Account Debtor whose total
obligations owing to Borrower exceed during the period
commencing on January 31, 2011 and ending on September
30, 2011 (the "Modified Advance Period"), (i) 65% of all
Eligible Accounts, with respect to Accounts owed by the
New York City Board of Education and its Affiliates
(collectively, "NYBOE"), (ii) 50% of all Eligible Accounts,
with respect to Accounts owed by the New York City
Department of Corrections and its Affiliates (collectively,
"NYDOC"), (iii) 50% of all Eligible Accounts, with respect
to Accounts owed by the Federal Bureau of Prisons and its
Affiliates (collectively, "FBOP"), but in no event shall the
aggregate amount of all Eligible Accounts owed by
NYBOE, NYDOC or FBOP 75% of all Eligible Accounts,
(iv) 20% of all Eligible Accounts, with respect to Accounts
owed by Neilsen Media Research, and (v) 12.5% of all
Eligible Accounts in all other cases (such percentage, as
applied to a particular Account Debtor, being subject to
reduction by Agent in its Permitted Discretion if the
creditworthiness of such Account Debtor deteriorates), in
each such case to the extent of the obligations owing by
such Account Debtor in excess of such percentages;
provided, however, that, in each case, the amount of
Eligible Accounts that are excluded because they exceed the
foregoing percentages shall be determined by Agent based
on all of the otherwise Eligible Accounts prior to giving
effect to any eliminations based upon the foregoing
concentration limit,                                                    $_____

Accounts with respect to which the Account Debtor is
subject to an Insolvency Proceeding, is not Solvent, has
gone out of business, or as to which a Borrower has
received notice of an imminent Insolvency Proceeding or a
material impairment of the financial condition of such
Account Debtor,                                                         $_____

Accounts with respect to which the Account Debtor is located in a state or jurisdiction (e.g., New Jersey, Minnesota, and West Virginia) that requires, as a condition to access to the courts of such jurisdiction, that a creditor qualify to transact business, file a business activities report or other report or form, or take one or more other actions, unless the applicable Borrower has so qualified, filed such reports or forms, or taken such actions (and, in each case, paid any required fees or other charges), except to the extent that the applicable Borrower may qualify subsequently as a foreign entity authorized to transact business in such state or jurisdiction and gain access to such courts, without incurring any cost or penalty viewed by Agent to be significant in amount, and such later qualification cures any access to such courts to enforce payment of such Account,     $_____

Accounts, the collection of which, Agent, in its Permitted Discretion, believes to be doubtful by reason of the Account Debtor's financial condition,     $_____

Accounts that are not subject to a valid and perfected first priority Agent's Lien,     $_____

Accounts with respect to which (i) the goods giving rise to such Account have not been shipped and billed to the Account Debtor, or (ii) the services giving rise to such Account have not been performed and billed to the Account Debtor,     $_____

Accounts that represent the right to receive progress payments or other advance billings that are due prior to the completion of performance by the applicable Borrower of the subject contract for goods or services.     $_____

**Total Excluded Accounts**     $_____

**Eligible Accounts** (Total Accounts *less* Total Excluded Accounts):     $_____

## Schedule C-1

### Commitments

| Lender | Revolver Commitment | Term Loan Commitment | Total Commitment |
|---|---|---|---|
| Wells Fargo Capital Finance, Inc. | $2,500,000 | $1,086,971 | $3,586,971 |

# Exhibit A

Budget

See Attached

## Exhibit B

### Pre-Payment Procedures

#### Approach

An Escrow account will be established and all Pre-Payments will be directed to that account. These funds will not be part of the Borrowing Base calculations. Borrower will disburse funds only for materials or services that are required for the Pre-Paid orders. Also only when an order is shipped will it then be entered into the AR system and become part of the AR collateral. The Gross AR billing will be invoiced net of the Pre-Payment.

#### Procedures

**Pre-Payment Requested**
Company will prepare MEMO billings for Pre-Payments when it receives a Pre-Payment order and send to the customer requesting a payment per the terms of the Pre-Payment.
NO AR or accounting entries are made at this time.

**Pre-Payment Received**
Check or wire is sent directly to the Escrow account.
NO entry is made into the AR system.
An entry is made to a Pre-Payment Liability account.

*Escrow DR*
*    Pre-Payment Liability CR*

**Supplier Payments**
Payments to the supplier for materials related to Pre-Payments are made directly from this account and are referenced to the Pre-Payment they relate to. The related accounting entry is as follows.

*AP DR*
*    Escrow CR*

**Customer Shipment**
When a Pre-Paid order is shipped the Pre-Payment balance will be $0. The AR Invoicing at this time will be for the Gross less immediate credit for the Pre-Payments. The AR open item is now part of "normal "AR.
The accounting entry for this transaction is:

*AR DR (Net)*
*ATK Pre-Payment Liability DR*
*    Sales (Gross)*

**Weekly Reporting**

A weekly accounting by P.O. will provide support for all related balances.

1. **P.O. Gross Order Value**
2. **Pre-Payments Memo Billed**
3. **Pre-Payments Memo Received**
4. **Supplier Payments**
5. **Escrow Balance (3-4)**
6. **Net Shipment Billed (1-3)**
7. **AR Payments**
8. **Open AR Balance (6-7)**

Solutions Management LLC will be responsible for reviewing the accounting each week and reconciling to the Escrow account, Open AR and Loan Ledger and sending the report to the bank.

**Summary**

In summary the Pre-Payment Escrow account will always represent Funds received less AP payments made. The AR Open item for the related Pre-Payment will always represent the unpaid balance for a partial Pre-Payment.