In re:                                          **Chapter 11**

**TELTRONICS, INC.,**                           **Case No. 8:11-bk-12150-KRM**

Debtor.

_____/

**FINAL ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR
AUTHORITY TO (A) OBTAIN POSTPETITION FINANCING FROM WELLS FARGO
CAPITAL FINANCE, INC. AND GRANT SENIOR LIENS, SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS AND ADEQUATE PROTECTION
PURSUANT TO 11 U.S.C. §§ 364(c) AND (d) AND F.R.B.P. 4001, (B) USE CASH
COLLATERAL, AND (C) MAINTAIN ITS EXISTING CASH MANAGEMENT SYSTEM**

**THIS MATTER** came before the Court on September 1, 2011, at 3:00 p.m. (the "Final

Hearing"), upon the Emergency Motion for Authority to (A) Obtain Postpetition Financing from

Wells Fargo Capital Finance, Inc. and Grant Senior Liens, Superpriority Administrative Expense

Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001, (B)

Use Cash Collateral, and (C) Maintain its Existing Cash Management System [Doc. No. 18] (the

"Motion") filed by Teltronics, Inc. (the "Debtor"), seeking entry of a final order (this "Final

Order") authorizing, *inter alia*, the Debtor to (or, at (ix) below, requesting that the Court):

        (i)      enter into the DIP Facility pursuant to the Term Sheet and the DIP Loan

Documents,[1] including that certain Credit Agreement and that certain Security Agreement, each

as amended by that certain Amendment Number 15 to Credit Agreement [DIP Financing] filed

with the Court on July 11, 2011 [Doc. No. 58], and Amendment Number 16 to Credit Agreement

---

[1]    Capitalized terms used in this Final Order but not defined herein shall have the meanings ascribed to such
terms in the Motion and the DIP Loan Documents to the extent defined therein.

[DIP Financing] (the "<u>DIP Amendment 16</u>"), a copy of which is attached hereto as <u>Exhibit 1</u>, dated as of September 1, 2011, by and between the Debtor and Wells Fargo Capital Finance, Inc., as the DIP Lender (the "<u>DIP Lender</u>");

        (ii)     borrow, pursuant to the DIP Loan Documents, one or more advances in an aggregate amount not to exceed the amounts set forth in the Budget attached to <u>Exhibit 1</u> and the Borrowing Base, up to a maximum borrowing of $2,750,000.00 (the "<u>Maximum Advance Amount</u>");

        (iii)     grant to the DIP Lender, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code and the terms of the DIP Loan Documents, but subject in all events to the Carve Out (as defined below), perfected and enforceable liens comprised of (a) a first priority lien and security interest, pursuant to section 364(c)(2) of the Bankruptcy Code, on all tangible and intangible assets and property of the Debtor that are unencumbered by liens, (b) a first priority lien and security interest, pursuant to section 364(c)(3) of the Bankruptcy Code, on all tangible and intangible assets and property of the Debtor that are not encumbered by liens in favor of the Prepetition Lender (as defined below), which liens and security interests granted to the DIP Lender would, however, be junior only to Permitted Liens (as defined in the DIP Loan Documents), and (c) a superpriority priming first lien, pursuant to section 364(d) of the Bankruptcy Code, in all other tangible and intangible assets and property of the Debtor, whether now owned or hereafter acquired, subject only to Permitted Liens, and senior to the liens held by the Prepetition Lender;

        (iv)     incur the obligations under the DIP Facility (the "<u>DIP Obligations</u>") and pay all amounts contemplated to be paid thereunder, including all fees and expenses set forth therein;

(v)     use the proceeds of the DIP Facility in a manner consistent with the terms and conditions of the DIP Loan Documents, and in accordance with the Budget, subject to the Permitted Budget Variance (as defined below), solely for the purposes set forth in the Budget;

(vi)    grant to the DIP Lender, pursuant to section 364(c)(1) of the Bankruptcy Code, a superpriority administrative expense claim in respect of all DIP Obligations with priority over all administrative expenses, subject to the Carve Out and the other terms and conditions contained herein;

(vii)   use the Cash Collateral (as defined below) of the Prepetition Lender and grant adequate protection in connection therewith as more fully set forth below;

(viii)  maintain its existing cash management system with Wells Fargo Bank, N.A. and other banks; and

(ix)    vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order.

The Court having considered the Motion, the evidence presented, submitted and/or admitted into evidence in connection with each of the Interim Orders (as defined herein) and at the hearings with respect to such Interim Orders (collectively, the "Interim Hearings") and the Final Hearing, and in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the local rules of the Court; due and proper notice of the Motion, the Interim Hearings and the Final Hearing having been given; it appearing that approval of the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor; and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.     **Petition Date.**   On June 27, 2011 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.   The Debtor has continued in the management and operation of its business and property as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.   No trustee or examiner has been appointed in this Chapter 11 case (the "Chapter 11 Case").

B.     **Jurisdiction and Venue**.   This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§157(b) and 1334, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).   Venue for the Chapter 11 Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

C.     **Committee**.   On June 30, 2011, the Office of the United States Trustee appointed an Unsecured Creditors Committee (the "**Committee**") in this case pursuant to Section 1102 of the Bankruptcy Code [Doc. No. 33].   On July 1, 2011, the Office of the United States Trustee filed a notice with the Court amending the membership of the Committee [Doc. No. 37].   On July 5, 2011, the Office of the United States Trustee filed a second notice with the Court further amending the membership of the Committee [Doc. No. 41]..

D.     **Notice**.   Each Interim Hearing and the Final Hearing were held pursuant to the authorization of Bankruptcy Rule 4001 and Administrative Order FLMB 2009-1(C)(2).   Notice of each Interim Hearing, the Final Hearing, and the relief requested in the Motion was adequate and sufficient.

E.     **Prepetition Secured Obligations and Prepetition Liens.**   The DIP Lender is also a prepetition secured creditor of the Debtor (in that capacity, the "Prepetition Lender") and asserts a lien on virtually all assets and property owned by the Debtor (the alleged "Prepetition

Liens") for prepetition obligations incurred by the Debtor to the Prepetition Lender (the "Prepetition Secured Obligations").

F.     **Need for Postpetition Financing.**  An immediate need exists for the Debtor to obtain funds from the DIP Facility and to use Cash Collateral in order to continue operations and to administer and preserve the value of its estate.

G.     **No Credit Available on More Favorable Terms.**  The Debtor has been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor has also been unable to obtain secured credit, allowable only under sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on more favorable terms and conditions than those provided in the DIP Loan Documents and this Final Order.  The Debtor is unable to obtain credit for borrowed money without granting to the DIP Lender the DIP Protections (as defined below).

H.     **Use of Cash Collateral.**  The Debtor requires the use of cash proceeds of or derived from the Collateral securing the obligations of the Debtor to the Prepetition Lender (the "Cash Collateral").

I.     **Extension of Financing.**  The DIP Lender has indicated a willingness to provide financing to the Debtor in accordance with the DIP Loan Documents and subject to (i) the entry of this Final Order, and (ii) findings by the Court that such financing is essential to the Debtor's estate, that the DIP Lender is a good faith financier, and that the DIP Lender's claims, superpriority claims, senior security interests and priming liens and other protections granted pursuant to this Final Order and the DIP Facility will not be affected by any subsequent reversal, modification, vacatur or amendment of any Interim Order, this Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

J.     **Business Judgment and Good Faith Pursuant to Section 364(e).**  (i) The terms and conditions of the DIP Facility and the DIP Loan Documents, and the fees and costs to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration; (ii) the DIP Facility, the Interim Orders and this Final Order were negotiated in good faith and at arms' length between the Debtor and the DIP Lender; and (iii) use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lender is entitled to the full protection and benefits of section 364(e) of the Bankruptcy Code.

K.     **Relief Essential; Best Interest.**  The relief requested in the Motion is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of the Debtor's integrated assets and real and personal property.  It is in the best interest of the Debtor's estate to be allowed to establish the DIP Facility contemplated by the DIP Loan Documents subject to the terms of the Interim Orders and this Final Order.

L.     **Adequate Protection.**  With respect to the Maximum Advance Amount, the Court finds that the Prepetition Lender is adequately protected in respect of its rights and claims in, to and against the Collateral.

M.     **Interim Orders.**

(i)     On June 29, 2011, the Court held a hearing with respect to the Motion on an interim basis and, on June 30, 2011, the Court entered its Interim Order Granting Debtor's Emergency Motion for Authority to (A) Obtain Postpetition Financing From Wells Fargo Capital

Finance, Inc. and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001, (B) Use Cash Collateral, and (C) Maintain Its Existing Cash Management System [Doc. No. 32] (the "First Interim Order").

(ii)    On July 21, 2011, the Court held a hearing with respect to the Motion on a further interim basis and, on August 3, 2011, the Court entered its Second Interim Order (1) Granting Debtor's Emergency Motion for Authority to (A) Obtain Postpetition Financing From Wells Fargo Capital Finance, Inc. and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001, (B) Use Cash Collateral, and (C) Maintain Its Existing Cash Management System and (2) Continuing Final Hearing [Doc. No. 105] (the "Second Interim Order").

(iii)    On August 18, 2011, the Court held a hearing with respect to the Motion on a further interim basis and, on August 18, 2011, the Court entered its Third Interim Order (1) Granting Debtor's Emergency Motion for Authority to (A) Obtain Postpetition Financing From Wells Fargo Capital Finance, Inc. and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001, (B) Use Cash Collateral, and (C) Maintain Its Existing Cash Management System and (2) Continuing Final Hearing [Doc. No. 123] (the "Third Interim Order").

(iv)    On August 30, 2011, the Court held a hearing with respect to the Motion on a further interim basis and, on September 1, 2011, the Court entered its Fourth Interim Order (1) Granting Debtor's Emergency Motion for Authority to (A) Obtain Postpetition Financing From Wells Fargo Capital Finance, Inc. and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P.

4001, (B) Use Cash Collateral, and (C) Maintain Its Existing Cash Management System and (2) Continuing Final Hearing [Doc. No137] (the "Fourth Interim Order,") and collectively with the First Interim Order, the Second Interim Order and the Third Interim Order, the "Interim Orders").

N. **Derivative Actions; Committee Standing. At the Final Hearing**. The Debtor consented to the vesting in the Committee of standing to bring any Lender Objection as a derivative action in the name of the Debtor without seeking further order of the Court. The request fosters judicial economy, is reasonable considering the foregoing consents and the Challenge Deadlines imposed by paragraph 14, *infra*, and is legally appropriate pursuant to 11 U.S.C. §1109(b) and 11 U.S.C. §1103(c)(5).

**NOW, THEREFORE**, on the Motion and the record before this Court with respect to the Motion including the foregoing findings and conclusions, and the findings of fact and conclusions of law set forth in the Interim Orders, which are hereby incorporated herein as set forth in full in support of this Final Order, and with the consent of the Debtor and the DIP Lender to the form and entry of this Final Order, and good and sufficient cause appearing, it is:

**ORDERED** that:

1. **Motion Granted.** The Motion is granted on a final basis in accordance with and limited to the terms and conditions set forth in this Final Order and the DIP Loan Documents.

2. **DIP Loan Documents.**

(a) **Approval of Entry Into DIP Loan Documents.** The terms and conditions of the DIP Loan Documents are hereby approved on a final basis. Effective immediately upon the entry of the First Interim Order, the DIP Lender shall receive such protections and be entitled to such rights as are set forth in the DIP Loan Documents, and such

rights and protections are hereby approved and incorporated by reference into this Final Order. Effective immediately upon the entry of the First Interim Order, the Debtor and all other relevant parties are expressly and immediately authorized, empowered and directed (i) to execute and deliver to the DIP Lender the DIP Loan Documents, (ii) to consummate the transactions described therein and incur and perform on a final basis the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Loan Documents, and (iii) to execute and deliver all instruments and documents which reasonably may be required or necessary for the performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Final Order and the DIP Loan Documents. Effective immediately upon the entry of the First Interim Order, the Debtor is hereby authorized to perform all acts, and subject to the provisions of this Final Order, pay all amounts provided for in the DIP Loan Documents as such become due.

(b)     **Authorization to Borrow.**  Subject to the terms and conditions of this Final Order, the DIP Loan Documents and the Budget, the Debtor is hereby authorized under the DIP Facility to borrow up to the Maximum Advance Amount.

(c)     **Grant of DIP Liens**.  Effective immediately upon the entry of the First Interim Order, the DIP Lender is hereby granted, pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code (i) a first priority lien on and first priority senior security interest in all now owned and hereafter acquired tangible and intangible assets and property of the Debtor that are not encumbered by any liens; (ii) a first priority lien and security interest, pursuant to section 364(c)(3) of the Bankruptcy Code, on all tangible and intangible assets and property of the Debtor that are not encumbered by Prepetition Liens in favor of the Prepetition Lender, which liens and security interests granted to the DIP Lender would, however, be junior

only to Permitted Liens; and (iii) priming first priority liens on and priming first priority security interests in favor of the DIP Lender in all tangible and intangible assets and property of the Debtor that are subject to the Prepetition Liens in favor of the Prepetition Lender, subject only to the Permitted Liens (collectively, the "Collateral"). The DIP Lender's liens and security interests in the Collateral are collectively referred to as the "DIP Liens." Notwithstanding anything herein to the contrary, the DIP Liens shall at all times be subject to the Carve Out, and the Collateral securing the DIP Facility shall exclude any and all causes of action arising under sections 544, 546, 547, 548 and 550 of the Bankruptcy Code (the "Avoidance Actions").

(d) **Superpriority Administrative Claim Status.** Except with respect to the Carve Out, all DIP Obligations shall be an allowed superpriority administrative expense claim (the "DIP Superpriority Claim" and, together with the DIP Liens, the "DIP Protections") with priority in the Chapter 11 Case under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code.

3. **Authorization to Use Proceeds of DIP Loan Documents.** Without further order of the Court, the Debtor is not authorized to make or incur any expenditures except in accordance with the Budget and this Final Order, provided that, actual cumulative expenditures may exceed the cumulative permitted amount of such expenditures for each line item for each weekly period by up to 10% (the "Permitted Budget Variance"). Notwithstanding the foregoing, the Debtor is authorized to pay timely all obligations of the Debtor arising after the Petition Date under any unexpired lease of non-residential real property.

4. **The Carve Out.** Notwithstanding the DIP Liens and the DIP Superpriority Claim granted to the DIP Lender hereunder, the DIP Liens and the DIP Superpriority Claim shall at all times be junior and subject to (i) payment from the DIP Facility of those professional fees and

disbursements of Stichter, Riedel, Blain & Prosser, P.A., as counsel for the Debtor ("Stichter Riedel"), and GrayRobinson, P.A., as counsel for the Committee, both professionals having been retained pursuant to sections 327 or 1103(a) of the Bankruptcy Code (together, the "Professionals") incurred and accrued by such Professionals through the date immediately prior to the date of the occurrence of an Event of Default, but in an amount not to exceed $100,000, plus the amount of payments actually paid to the Professionals prior to the date of the occurrence of an Event of Default (to the extent such fees are ultimately approved by the Court) (the "Predefault Paid Professional Fees"), and (ii) fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a), title 28, United States Code (collectively, the "Carve Out"). Advances under the DIP Facility for payment of Predefault Paid Professional Fees may be made at any time prior to the occurrence of an Event of Default in weekly installments in the aggregate sum of $40,000.00 each week, which such advances shall be made directly to Stichter Riedel, to be held in trust by Stichter Riedel for the benefit of both Professionals and to be disbursed by Stichter Riedel to such Professionals, provided, however, such advances are subject to (a) the terms and conditions of this Final Order and the DIP Loan Documents, and (b) the existence of sufficient availability under the Borrowing Base at the time of each such installment advance request. The fees and costs of Solutions Management, LLC shall be paid separate and apart from the Predefault Paid Professional Fees and Carve Out. The Carve Out and any installments advanced to Stichter Riedel as described above shall be utilized exclusively to pay the fees and costs of the Professionals, with neither (i) the Prepetition Lender and DIP Lender having a lien or claim to those funds having released their lien and claim to same nor (ii) a trustee, including a Chapter 7 trustee, having a claim, right or interest in those funds.

5.     **Termination Date.**  All DIP Obligations shall be immediately due and payable, and authority to use the proceeds of the DIP Loan Documents shall cease on the date that is the earliest to occur of:   (i) December 6, 2011, (ii) the effective date and consummation of a confirmed Strategic Chapter 11 Plan (as such terms are defined in the DIP Amendment 16) that provides for and in fact accomplishes the satisfaction of the Obligations in full in cash, (iii) the occurrence of an Event of Default under any DIP Loan Document and a determination by the DIP Lender to terminate it's commitment, or (iv) the closing of a Strategic 363 Sale (as such terms are defined in the DIP Amendment 16) that provides for and in fact accomplishes the satisfaction of the Obligations in full in cash (such date, the "Termination Date").

6.     **Postpetition Lien Perfection**.  Each Interim Order and this Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the DIP Liens, or to entitle the DIP Lender to the priorities granted herein.  Notwithstanding the foregoing, the Debtor and the DIP Lender are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to the DIP Lender hereunder.  Whether or not the DIP Lender shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens

and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge or dispute or subordination, at the time and on the date of entry of this Final Order. The Debtor shall execute and deliver to the DIP Lender all such agreements, financing statements, instruments and other documents as the DIP Lender may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens and DIP Obligations. All such documents will be deemed to have been recorded and filed as of the Petition Date. A certified copy of this Final Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording.

7.      **Section 506(c) Claims.**  Upon satisfaction of all of the Obligations, no costs or expenses of administration that have been or may be incurred in the Chapter 11 Case at any time shall be charged against the DIP Lender. Nothing contained in the Interim Orders or this Final Order shall be deemed a consent by the DIP Lender to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise, and the DIP Lender reserves all rights in connection therewith.

8.      **Collateral Rights.**  Unless the DIP Lender has provided its prior, written consent or all the DIP Obligations have been paid in full in cash (or will be paid in full in cash upon entry of an order approving the indebtedness described in subparagraph (a) below), there shall not be entered, any order that authorizes any of the following:

(a)      Except as permitted in the DIP Loan Documents, the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral which is equal or senior to those granted to the

DIP Lender and which is granted administrative status equal or *pari passu* to the DIP Superpriority Claim;

(b)     Relief from stay by any person other than the DIP Lender with respect to the foreclosure on any portion of the Collateral unless the DIP Lender also is given relief from the stay, provided however that this provision shall not prohibit any party in interest from seeking stay relief or impair the ability of any party in interest to obtain stay relief; or

(c)     The Debtor's abandonment of Collateral, except as permitted in the DIP Loan Documents.

9.     **Application of Proceeds.** The proceeds of the Prepetition Collateral shall be applied first to satisfy outstanding Prepetition Secured Obligations until paid in full, and thereafter to repay the DIP Obligations. The proceeds of the Postpetition Collateral shall be applied first to satisfy the outstanding DIP Obligations until paid in full. In the event any proceeds cannot be conclusively identified by the Debtor as Prepetition Collateral or Postpetition Collateral, the DIP Lender shall be entitled to treat such proceeds as Prepetition Collateral; .

10.     **Payment of Postpetition Interest and Expenses.** The Debtor is authorized to pay, and the DIP Lender is entitled to receive, (a) any and all interest and fees (including reasonable attorneys fees) under the DIP Facility and in addition, (b) the reasonable costs and expenses of the DIP Lender in connection with the Chapter 11 Case; provided, however, the Committee reserves rights and claims against the Prepetition Lender under section 506(b) of the Bankruptcy Code, which rights and claims must be asserted by the Committee within the challenge period set forth in section 14 of this Order (December 6, 2011), to the extent applicable.

11. **Events of Default.**

(a)     The occurrence of any of the following events, shall constitute an "Event of Default" under this Final Order:

(i)     the occurrence of an Event of Default (or any condition or event that would be a breach of or a default) under any of the DIP Loan Documents (and the expiration of any period of cure, grace or notice, if any, set forth in such DIP Loan Documents relating to such default);

(ii)    the occurrence of any condition or event that would be a breach of or a default under this Final Order, or which entitles the DIP Lender to exercise any of the rights or remedies granted, authorized, acknowledged or recognized in this Final Order, including, without limitation, any Event of Default as defined in this Final Order;

(iii)   the entry by the Court or another court of competent jurisdiction of an order disallowing any of the DIP Obligations or determining that any provision of the DIP Loan Documents is not enforceable according to its terms; or

(iv)    the entry by the Court of an order determining that the DIP Liens are invalid or do not have the priority and extent provided in the DIP Loan Documents and this Final Order.

(b)     Unless and until the DIP Obligations are irrevocably repaid in full, and all DIP Obligations that survive termination have been cash collateralized to the reasonable satisfaction of the DIP Lender, the protections afforded to the DIP Lender pursuant to the Interim Orders, this Final Order and under the DIP Loan Documents, and any actions taken pursuant thereto, shall survive the entry of any order confirming a plan or converting the Chapter 11 Case, or dismissing the Chapter 11 Case, and the DIP Liens and DIP Superpriority Claim shall

continue and such DIP Liens and DIP Superpriority Claim shall maintain their priority as provided by the Interim Orders and this Final Order.

12. **Rights and Remedies Upon Event of Default.**

(a)     The DIP Lender shall not have any obligation to make any further loans or advances to the Debtor under the DIP Loan Documents following the occurrence of an Event of Default; and

(b)     The DIP Lender shall be entitled to a hearing on a motion for relief from stay upon shortened notice. Nothing herein shall be deemed a waiver by the Debtor of any rights, claim and defenses which may be raised in connection with the DIP Lender's seeking of relief from the automatic stay.

13. **Cash Collateral.**   In connection with the proposed use of Cash Collateral hereunder and in order to provide the Prepetition Lender with adequate protection for the aggregate diminution of the Cash Collateral resulting from the Debtor's use thereof, (i) the Prepetition Lender shall have, *nunc pro tunc* as of the commencement of the Chapter 11 Case, a replacement lien pursuant to 11 U.S.C. §361(2) on and in all property of the Debtor, but solely to the same extent and priority, and of the same kind and nature, as the property of the Debtor securing the prepetition obligations owed to the Prepetition Lender (the "Cash Collateral Replacement Liens"), provided however, that in all events, such Cash Collateral Replacement Liens shall be junior and subordinate to the DIP Liens granted to the DIP Lender hereunder, in the DIP Loan Documents and in this Final Order in respect of the DIP Facility. The Prepetition Lender shall not have or be granted a Cash Collateral Replacement Lien on or against any Avoidance Actions or on or against the proceeds of the Avoidance Actions. In the event that diminution occurs in the value of Cash Collateral from and after the Petition Date as a result of

the use thereof in an amount in excess of the value of the Cash Collateral Replacement Liens granted herein, then the Prepetition Lender shall have the right to assert an administrative expense claim under section 507(b) of the Bankruptcy Code with priority over all other administrative expense claims, subject in all events to the Carve Out and the DIP Superpriority Claim.

14. **Challenge Deadlines**. (a) Any objection to the prepetition claims, liens or interests of the Prepetition Lender with respect to the Debtor or property of the Debtor's bankruptcy estate (a "Prepetition Lender Claim and Lien Objection") shall be filed with the Court by the Committee or any other party in interest (including any stockholder of the Debtor), on or before October 31, 2011, and (b) any demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever, against the Prepetition Lender (other than a Prepetition Lender Claim and Lien Objection) (collectively with a Prepetition Lender Claim and Lien Objection, a "Lender Objection") shall be filed with the Court by the Committee or any other party in interest (including any stockholder of the Debtor), by December 6, 2011. Any Lender Objection that is not timely filed with the Court shall be deemed waived, and the Prepetition Lender and the DIP Lender shall be deemed released and forever discharged from any such Lender Objection. Pursuant to 11 U.S.C §1109(b) and 11 U.S.C. §1103(c)(5), the Committee is vested with standing to initiate and prosecute any Lender Objection as a derivative action on behalf of the Debtor's estate and against the Prepetition Lender in the name of the Debtor without further order of the Court.

15. **Cash Management Provisions.**

(a)     The Debtor is authorized (i) to continue to utilize its existing cash management system, as such system is described in the Motion, with the Debtor giving prior written notice to the U.S. Trustee with respect to any proposed changes therein; (ii) to continue to use its existing bank accounts in the name and with the account numbers existing immediately before the Petition Date, deposit funds in and withdraw funds from such accounts by all usual means, including without limitation checks, wire transfers, electronic funds transfers, and other debits, and treat its prepetition bank accounts for all purposes as debtor in possession accounts, provided, however, that the signature card on any accounts shall reflect that they are now debtor in possession accounts; (iii) to maintain and continue to use the credit card processing system existing immediately prior to the Petition Date, which system is connected to its prepetition bank accounts; and (iv) to continue to use its existing business forms;

(b)     Any existing deposit agreements between the Debtor and its existing depository and disbursement banks (collectively, the "Banks") shall continue to govern the postpetition cash management relationship between the Debtor and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect; and the Debtor and the Banks may, without further order of this Court, agree to and implement changes to the cash management systems and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts;

(c)     Each of the Debtor's Banks is authorized to debit the Debtor's accounts in the ordinary course of  business without the need for further order of this Court for:  (i) all checks drawn on the Debtor's accounts which are cashed at such Bank's counters or exchanged

for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of the Debtor's accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the cash management system; and

(d)     Any of the Banks may rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to any Interim Order, this Final Order or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtor as provided for herein.

16.     **Other Provisions.**

(a)     **Binding Effect**.  The provisions of this Final Order shall be binding upon and inure to the benefit of the Prepetition Lender, the DIP Lender, the Debtor, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor).

(b)     **No Waiver**.  The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under the DIP Loan Documents, the DIP Facility, the Interim Orders, the Final Order, or otherwise, as applicable, shall not constitute a waiver of any of the DIP Lender's rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of the Interim Orders and this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the DIP Lender under the

Bankruptcy Code or under non-bankruptcy law, including without limitation, (i) the rights of the DIP Lender to (a) request conversion of the Chapter 11 Case to a case under Chapter 7, dismissal of the Chapter 11 Case, or the appointment of a trustee in the Chapter 11 Case, or (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan or (ii) enforce any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lender.

(c)  **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Final Order, the provisions of this Final Order shall govern and control.

17.  **Effective on Entry**.  This Final Order shall be effective immediately upon entry.

**DONE** and **ORDERED** in Chambers at Tampa, Florida on _____September 23, 2011_____.

K. Rodney May
United States Bankruptcy Judge

Copies provided by CM/ECF Service to:

Local Rule 1007-2 Parties in Interest List

# EXHIBIT 1

## AMENDMENT NUMBER SIXTEEN TO CREDIT AGREEMENT

## [DIP FINANCING]

This Amendment Number Sixteen to Credit Agreement [DIP Financing] (this "Second DIP Amendment") is entered into as of September 1, 2011, by and among the lenders identified on the signature pages hereof (such lenders, together with their respective successors and permitted assigns, are referred to hereinafter each individually as a "Lender" and collectively as the "Lenders"), and WELLS FARGO CAPITAL FINANCE, INC., a California corporation, formerly known as Wells Fargo Foothill, Inc., as the arranger and administrative agent for the Lenders (in such capacity, together with its successors and assigns in such capacity, "Agent"), on the one hand, and TELTRONICS, INC., a Delaware corporation, as debtor in possession in the Bankruptcy Case ("Borrower"), on the other hand, with reference to the following facts:

A.     On or about May 31, 2007, Borrower, Agent and Lenders have previously entered into the Agreement, the Security Agreement and the other Loan Documents.

B.     On or about June 29, 2011, Borrower, Agent and Lenders entered into that certain Amendment Number Fifteen to Credit Agreement [DIP Financing] pursuant to which Lender agreed to provide financing to Borrower during the Bankruptcy Case pursuant to the terms therein and the Financing Orders relating thereto.

C.     Borrower has requested that Lenders continue to provide financing to Borrower during the Bankruptcy Case under the Agreement and the Security Agreement, each as amended by this Second DIP Amendment and the Financing Orders, and Agent and Lenders have agreed with such requests on the condition that Borrower execute and deliver this Second DIP Amendment and comply with all of the terms and conditions set forth herein.

D.     Agent and Lenders have agreed to amend the Loan Documents, as previously amended by the DIP Amendment, pursuant to this Second DIP Amendment and the Financing Orders to continue to provide loans and financing to Borrower during the Bankruptcy Case upon the terms and conditions set forth in the Loan Documents, as previously amended by the DIP Amendment, and amended by this Second DIP Amendment, and the Financing Orders.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby amend and supplement the Loan Documents as follows:

**1.     DEFINITIONS.**     All initially capitalized terms used in this Second DIP Amendment shall have the meanings given to them in the Loan Documents unless specifically defined herein.

**2.     AMENDMENTS TO AGREEMENT.**

(a)     **Definitions – New**.     Schedule 1.1 to Section 1.1 of the Agreement is amended by adding the following new definitions thereto in alphabetical order:

"Strategic Chapter 11 Plan" shall mean a Chapter 11 plan of reorganization in the Bankruptcy Case that provides for the payment in full, in cash, of all Obligations owed to Lenders and Agent on or before December 6, 2011, and all documents relating thereto, including without limitation orders issued by the Bankruptcy Court, each on terms and in form and substance acceptable to Agent, and all proceedings before the Bankruptcy Court relating thereto.

"Strategic 363 Sale" shall mean a sale of all or substantially all assets of Borrower pursuant to section 363 of the Bankruptcy Code that provides for the payment in full, in cash, of all Obligations owed to Lenders and Agent on or before December 6, 2011, and all documents relating thereto, including without limitation orders issued by the Bankruptcy Court, each on terms and in form and substance acceptable to Agent, and all proceedings before the Bankruptcy Court relating thereto.

"Strategic Transaction" shall mean (i) the refinancing of the Obligations, (ii) a Strategic 363 Sale or such other sale of all or a portion of the assets (other than in the ordinary course) of Borrower that will satisfy the Obligations, (iii) a recapitalization of Borrower in an amount that will satisfy all Obligations, or (iv) the confirmation by the Bankruptcy Court and consummation of a Strategic Chapter 11 Plan.

(b)     **Definitions – Amended**. Schedule 1.1 of Section 1.1 of the Agreement is amended by replacing the applicable definitions therein (or portions thereof) with the following new definitions in alphabetical order:

Clause (b)(ii) of "Borrowing Base" is amended by deleting that clause in its entirety and replacing it as follows:

(ii) 15% of the value of Eligible Inventory valued at cost; provided that notwithstanding anything to the contrary, the advance rate provided in this clause (ii) has always been with respect to Eligible Inventory, *minus*

"Loan Documents" means the Agreement, the DIP Amendment, the Second DIP Amendment, the Financing Orders, the Disclosure Statement, the Bank Product Agreements, any Borrowing Base Certificate, the Cash Management Agreements, the Control Agreements, the Copyright Security Agreement, the Fee Letter, the Guaranty, the Intercompany Subordination Agreement, the Letters of Credit, the Mortgages, the Patent Security Agreement, the Security Agreement, the Trademark Security Agreement, any note or notes executed by Borrower in connection with the Agreement and payable to a member of the Lender Group, and any other agreement entered into, now or in the future, by Borrower or any of its Subsidiaries and the Lender Group in connection with the Agreement.

"Maximum Revolver Amount" means $2,750,000.00.

(c)     **Conditions Precedent (DIP)**. Section 3.2(A)(aa) of the Agreement is amended as follows:

(aa) <u>Final Financing Order</u>. The Final Financing Order shall have been entered by the Bankruptcy Court on or before September 23, 2011.

(d)     **Term**. Section 3.3 of the Agreement is amended as follows:

3.3     Term. This Agreement shall continue in full force and effect until the earliest to occur of (the "<u>Maturity Date</u>"): (i) December 6, 2011, (ii) the effective date and consummation of a confirmed Strategic Chapter 11 Plan that provides for and in fact accomplishes the satisfaction of the Obligations in full in cash, (iii) the occurrence of an Event of Default under the DIP Amendment and a determination by Agent to terminate its commitment, or (iv) the closing of a Strategic 363 Sale that provides for and in fact accomplishes the satisfaction of the Obligations in full in cash.

(e)     **Affirmative Covenants (DIP)**. Section 5 of the Agreement is amended by adding a new section 5.20(k) as follows:

(k) <u>Strategic Transaction Milestones</u>. Accomplish each of the following events on or before each of the following dates:

| MILESTONE | EVENT | DATE |
|---|---|---|
| First Milestone | Complete and distribute offering materials regarding the Strategic Transaction | 9/2/2011 |
| Second Milestone | File the Strategic Chapter 11 Plan and related Disclosure Statement | 9/23/2011 |
| Third Milestone | File motion to approve bid procedures relating to the Strategic Chapter 11 Plan or, in the alternative, the Strategic 363 Sale | 10/14/2011 |
| Fourth Milestone | Indentify a stalking horse bidder relating to the Strategic Chapter 11 Plan or, in the alternative, the Strategic 363 Sale | 10/14/2011 |
| Fifth Milestone | Hearing before the Bankruptcy Court regarding a motion to approve bid procedures relating to the Strategic Chapter 11 Plan or, in the alternative, the Strategic 363 Sale | 10/21/2011 |
| Sixth Milestone | Hearing before the Bankruptcy Court on a motion to approve a Disclosure Statement relating to the Strategic Chapter 11 Plan | 10/21/2011 |
| Seventh Milestone | Entry of an order by the Bankruptcy Court approving the Disclosure Statement relating to the Strategic Chapter 11 Plan | 10/21/2011 |
| Eighth Milestone | Completion of an auction regarding new value equity for Borrower as the "reorganized debtor" under the Strategic | 11/21/2011 |

| | Chapter 11 Plan or in the alternative, the Strategic 363 Sale | |
|---|---|---|
| Ninth Milestone | Hearing before the Bankruptcy Court regarding confirmation of the Strategic Chapter 11 Plan or, in the alternative, approval of the Strategic 363 Sale | 11/28/2011 |
| Tenth Milestone | Entry of an order approving the confirmation of a Strategic Chapter 11 Plan or, in the alternative, the Strategic 363 Sale | 11/28/2011 |
| Eleventh Milestone | Payment in full, in cash, of all Obligations owed to Agent and Lenders pursuant to the Strategic Chapter 11 Plan or the Strategic 363 Sale | 12/6/2011 |

(f)     **Events of Default (DIP)**.  Section 7 of the Agreement is amended by adding a new section 7.14 as follows:

7.14  Events of Default (DIP).

(n)  Strategic Transaction.  Borrower fails to accomplish, to Agent's satisfaction, of any of the events on or before the last date by which Borrower is to accomplish such event as set forth in section 5.20(k) (unless otherwise agreed to by the DIP Lender).

(g)     Exhibit A [Budget] currently attached to the Agreement is hereby amended by deleting such exhibit in its entirety and replacing it with Exhibit A attached hereto.

## 3.     **REPRESENTATIONS AND WARRANTIES**.

(a)     **Acknowledgment of Representations and Warranties**.     Borrower hereby affirms to Agent and Lenders that all of Borrower's representations and warranties set forth in the Agreement are true, complete and accurate in all respects as of the date hereof.

**4.     CONDITIONS PRECEDENT.**  The effectiveness of this Amendment is hereby conditioned upon receipt by Agent of (i) a copy of this Second DIP Amendment duly executed by each party hereto, and (ii) entry of the Final Financing Order in the Bankruptcy Case.

## 5.     **RELEASE**.

(a)     In consideration of the agreements of Lenders and Agent contained in this Amendment and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged by Borrower, Borrower, on behalf of itself and its successors, and assigns, but expressly not on behalf of the Committee (Borrower and all such other persons, excluding the Committee, being referred to collectively as "Releasors" and individually as a "Releasor"), absolutely, unconditionally and irrevocably releases, remises and forever discharges each Lender and Agent, and each of their successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents

and other representatives (Lenders, Agent and all such other persons being referred to collectively as "Releasees" and individually as a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which Releasors may now or hereafter own, hold, have or claim to have against Releasees or any of them for, upon, or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to the date of this Amendment, for or on account of, or in relation to, or in any way in connection with any of the Loan Documents or transactions arising out of or in connection with any of the Loan Documents.

(b)     It is the intention of Borrower that this Amendment and the release set forth above constitute a full and final accord and satisfaction of all claims that may have or hereafter be deemed to have against Releasees as set forth in this Amendment. In furtherance of this intention, Borrower, on behalf of itself and each other Releasor, expressly waives any statutory or common law provision that would otherwise prevent the release set forth above from extending to claims that are not currently known or suspected to exist in any Releasor's favor at the time of executing this Amendment and which, if known by Releasors, might have materially affected the agreement as provided for hereunder. Borrower, on behalf of itself and each other Releasor, acknowledges that it is familiar with Section 1542 of California Civil Code:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.

Borrower, on behalf of itself and each other Releasor, waives and releases any rights or benefits that it may have under Section 1542 to the full extent that it may lawfully waive such rights and benefits, and Borrower, on behalf of itself and each other Releasor, acknowledges that it understands the significance and consequences of the waiver of the provisions of Section 1542 and that it has been advised by its attorney as to the significance and consequences of this waiver.

(c)     Borrower understands, acknowledges and agrees that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

(d)     Borrower agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered will affect in any manner the final, absolute and unconditional nature of the release set forth above.

(e)     Borrower, on behalf of itself and each other Releasor, absolutely, unconditionally and irrevocably, covenants and agrees with and in favor of each Releasee that it

will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Claim released, remised and discharged by Borrower pursuant to Section 5(a) above. If Borrower or any of its successors, assigns or other legal representations violates the foregoing covenant, Borrower, for itself and each other Releasor, agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

6.    **COSTS AND EXPENSES.** Borrower shall pay to Agent and Lenders all of Agent's and Lenders' out-of-pocket costs and expenses (including, without limitation, the fees and expenses of its counsel, which counsel may include any local counsel deemed necessary, search fees, filing and recording fees, documentation fees, appraisal fees, travel expenses, and other fees) arising in connection with the preparation, execution, and delivery of this Second DIP Amendment and all related documents and the Bankruptcy Case.

7.    **LIMITED EFFECT.** In the event of a conflict between the terms and provisions of this Second DIP Amendment and the terms and provisions of the Loan Documents, the terms and provisions of this Second DIP Amendment shall govern. In the event of a conflict between the terms and provisions of this Second DIP Amendment and the terms and provisions of a Financing Order, the terms and provisions of the Financing Order shall govern. In all other respects, the Loan Documents, as amended and supplemented hereby, shall remain in full force and effect.

8.    **COUNTERPARTS; EFFECTIVENESS.** This Second DIP Amendment may be executed in any number of counterparts and by different parties on separate counterparts, each of which when so executed and delivered shall be deemed to be an original.   All such counterparts, taken together, shall constitute but one and the same amendment.  This Second DIP Amendment shall become effective upon the execution of a counterpart of this Second DIP Amendment by each of the parties hereto.  This Second DIP Amendment is a Loan Document and is subject to all the terms and conditions, and entitled to all the protections, applicable to Loan Documents generally.

*[remainder of page left blank intentionally; signatures to follow]*

IN WITNESS WHEREOF, the parties hereto have executed this Second DIP Amendment as of the date first set forth above.

**TELTRONICS, INC.,**
a Delaware corporation, as Debtor in Possession,

By: _____

Name: _____

Title: _____

**WELLS FARGO CAPITAL FINANCE, INC.,**
a California corporation,
as Agent, Lender and Required Lender

By: _____
Name: _____
Title: _____

## Schedule C-1

### Commitments

| Lender | Revolver Commitment | Term Loan Commitment | Total Commitment |
|--------|---------------------|----------------------|------------------|
| Wells Fargo Capital Finance, Inc. | $2,750,000.00 | $1,086,971 | $3,836,971.00 |

# Exhibit A

Budget

See Attached

TL DIP Budget (9-13) v18.xlsx
Court Budget

| Category | Week Ending | | | | | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 26-Aug | 2-Sep | 9-Sep | 16-Sep | 23-Sep | 30-Sep | 7-Oct | 14-Oct | 21-Oct | 28-Oct | 4-Nov | 11-Nov | 18-Nov | 25-Nov | 2-Dec | 9-Dec | |
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | | | |
| Revenue | 770,448 | 113,690 | 285,621 | 176,984 | 440,438 | 680,606 | 334,706 | 315,456 | 152,619 | 1,404,263 | 284,970 | 232,363 | 146,686 | 293,328 | 638,818 | 205,035 | 6,476,012 |
| DIP Loan Advances | | | | | | | | | | | | | | | | | |
| Pre-Petition Employee related | 5,000 | 10,693 | - | - | - | - | - | - | - | - | - | - | - | - | - | 163,314 | 179,007 |
| Payroll | 291,790 | 1,743 | 266,449 | 1,281 | 265,000 | 15,000 | 264,000 | - | 279,000 | - | 266,000 | - | 279,000 | - | 266,000 | - | 2,192,263 |
| Insurance Related | - | 6,354 | - | 17,000 | 80,000 | 102,000 | 5,000 | 17,000 | 22,000 | 80,000 | 5,000 | 17,000 | 22,000 | 80,000 | 5,000 | - | 458,354 |
| Real Estate and Other Leases | 16,220 | - | - | - | 70,533 | 32,435 | 92,993 | 5,000 | 5,000 | 30,000 | 127,593 | 5,200 | 5,000 | - | 30,000 | - | 425,198 |
| Real Estate only | 28,435 | - | 5,000 | - | 20,006 | | | | | | | | | | | | 54,443 |
| Utilities and Telephone | 2,222 | 4,693 | - | 388 | 34,500 | 25,000 | 10,000 | 15,000 | 10,000 | 15,000 | 10,000 | 15,000 | 10,000 | 15,000 | 10,000 | 10,000 | 187,203 |
| Contractor Suppliers and Freight (Cash Management) | 72,812 | 219,513 | 8,551 | 83,357 | 0 | 315,548 | 89,423 | 30,081 | (18,801) | 498,649 | 75,000 | - | 25,000 | 106,928 | 65,000 | 25,000 | 1,589,962 |
| Professionals | 4,300 | 60,000 | 75,000 | 52,300 | 75,000 | 80,000 | 50,000 | 50,000 | 69,500 | 231,500 | 40,000 | 40,000 | 30,000 | 25,000 | 20,000 | 20,000 | 923,200 |
| Other | 1,271 | 7,604 | - | 5,174 | 2,000 | 12,500 | 2,000 | 5,000 | 5,000 | 12,500 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 82,399 |
| DIP Loan Advances | 423,000 | 315,000 | 355,000 | 160,000 | 548,066 | 582,483 | 513,415 | 122,081 | 371,699 | 867,649 | 526,931 | 82,000 | 376,000 | 225,928 | 399,000 | 223,314 | 6,091,629 |
| Revolver Balance | 1,831,468 | 1,983,397 | 2,038,321 | 1,776,357 | 2,069,436 | 2,299,984 | 2,438,091 | 2,115,129 | 2,199,463 | 1,805,870 | 2,194,752 | 1,815,947 | 1,917,341 | 1,818,563 | 1,865,278 | 1,730,517 | |