UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                         Chapter 11

TELTRONICS, INC.,                              Case No. 8:11-bk-12150-KRM

    Debtor.
_____/

# DEBTOR'S PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF TITLE 11, UNITED STATES CODE

STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
Charles A. Postler (Florida Bar No. 455318)
Elena Paras Ketchum (Florida Bar No. 0129267)
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone:    (813) 229-0144
Facsimile:    (813) 229-1811
Email:    cpostler@srbp.com
        eketchum@srbp.com
Counsel for Debtor and Debtor in Possession

Tampa, Florida
Dated as of September 23, 2011

### Introductory Statement

**This Plan and the accompanying Disclosure Statement contemplate a sale of substantially all of the assets of (or, in the alternative, a new equity interest in) the Debtor. As of the date of the filing of the Plan, the Debtor is in the process of marketing its business to prospective purchasers. Accordingly, the Debtor intends to make significant modifications to the Plan and the Disclosure Statement upon entering into a definitive agreement with a purchaser. The Debtor intends to file such modifications with the Bankruptcy Court at or before the hearing scheduled for October 21, 2011, at 2:30 p.m., to consider approval of the Disclosure Statement.**

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN OF REORGANIZATION (THE "PLAN") SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THE PLAN UNTIL SUCH TIME AS THE DEBTOR'S DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN APPROVED BY AN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THE PLAN. THE DEBTOR RESERVES THE RIGHT TO FILE AN AMENDED OR AN AMENDED AND RESTATED PLAN AND AN AMENDED OR AN AMENDED AND RESTATED DISCLOSURE STATEMENT FROM TIME TO TIME HEREAFTER. REFERENCE IS MADE TO SUCH DISCLOSURE STATEMENT FOR A DISCUSSION OF THE DEBTOR'S HISTORY, BUSINESS, PROPERTIES, AND OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE BANKRUPTCY CASE, A SUMMARY OF THE MEANS OF IMPLEMENTING AND FUNDING THE PLAN, AND THE PROCEDURES FOR VOTING ON THE PLAN. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THE PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

# TABLE OF CONTENTS

ARTICLE 1 INTRODUCTION ...............................................................................................................1

ARTICLE 2 DEFINED TERMS; RULES OF CONSTRUCTION...................................................2
    2.1    Defined Terms. ........................................................................................................2
    2.2    Rules of Construction.............................................................................................21

ARTICLE 3 TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS
            AND DIP LOAN CLAIMS..............................................................................................22
    3.1    Administrative Expense Claims. .............................................................................22
    3.2    Priority Tax Claims.................................................................................................23
    3.3    DIP Loan Claims.....................................................................................................23

ARTICLE 4 DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS .........................23
    4.1    Class 1: Priority Claims..........................................................................................24
    4.2    Class 2: Secured Claims and Other Claims of Wells Fargo. .........................................24
    4.3    Class 3: Secured Tax Claims of Governmental Units.....................................................24
    4.4    Class 4: Other Secured Claims. ...............................................................................24
    4.5    Class 5: Unsecured Convenience Claims. ..................................................................24
    4.6    Class 6: Unsecured Claims (Unsecured Claims Not Otherwise Classified). .................24
    4.7    Class 7: Intercompany Claims. ................................................................................24
    4.8    Class 8: Subordinated Securities Claims....................................................................24
    4.9    Class 9: Series A Preferred Stock. ...........................................................................24
    4.10   Class 10: Series B Preferred Stock. ..........................................................................24
    4.11   Class 11: Series C Preferred Stock. ..........................................................................25
    4.12   Class 12: Equity Interests. .......................................................................................25
    4.13   Class 13: Subsidiary Equity Interests. ......................................................................25

ARTICLE 5 TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS .............................25
    5.1    Unclassified Claims.................................................................................................25
    5.2    Class 1: Priority Claims..........................................................................................25
    5.3    Class 2: Secured Claims and Other Claims of Wells Fargo. .........................................25
    5.4    Class 3: Secured Tax Claims of Governmental Units.....................................................26
    5.5    Class 4: Other Secured Claims. ...............................................................................26
    5.6    Class 5: Unsecured Convenience Claims. ..................................................................26
    5.7    Class 6: Unsecured Claims (Unsecured Claims Not Otherwise Classified). .................27
    5.8    Class 7: Intercompany Claims. ................................................................................27
    5.9    Class 8: Subordinated Securities Claims....................................................................27
    5.10   Class 9: Series A Preferred Stock. ...........................................................................28
    5.11   Class 10: Series B Preferred Stock. ..........................................................................28
    5.12   Class 11: Series C Preferred Stock. ..........................................................................28
    5.13   Class 12: Equity Interests. .......................................................................................29
    5.14   Class 13: Subsidiary Equity Interests. ......................................................................29

ARTICLE 6 ACCEPTANCE OR REJECTION OF THE PLAN .................................................................29
    6.1    Each Impaired Class Entitled to Vote Separately. ......................................................29
    6.2    Acceptance by Impaired Classes. .............................................................................29
    6.3    Presumed Acceptance of Plan by Unimpaired Classes. ...............................................30
    6.4    Deemed Non-Acceptance of Plan.............................................................................30

| | 6.5 | Impairment Controversies. | 30 |
|---|---|---|---|

ARTICLE 7 TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............30
| | 7.1 | Assumption or Rejection of Executory Contracts and Unexpired Leases. | 30 |
| | 7.2 | Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases. | 31 |
| | 7.3 | Inclusiveness. | 31 |
| | 7.4 | Cure of Defaults. | 31 |
| | 7.5 | Claims under Rejected Executory Contracts and Unexpired Leases. | 32 |
| | 7.6 | Insurance Policies. | 32 |
| | 7.7 | Indemnification Rights. | 32 |

ARTICLE 8 MEANS OF IMPLEMENTATION OF THE PLAN..............................................33
| | 8.1 | General Overview of the Plan. | 33 |
| | 8.2 | Summary of Purchase Agreement. | 34 |
| | 8.3 | Effective Date Transactions. | 34 |
| | 8.4 | Liquidating Trust. | 34 |
| | 8.5 | Corporate Existence; Dissolution. | 35 |
| | 8.6 | Corporate Action. | 35 |
| | 8.7 | Selection, Duties and Compensation of the Liquidating Trustee. | 35 |
| | 8.8 | Dissolution of the Committee. | 36 |
| | 8.9 | Section 1146 Exemption. | 36 |
| | 8.10 | Effectuating Documents; Further Transactions. | 36 |
| | 8.11 | Pursuit of Causes of Action. | 37 |
| | 8.12 | Exclusivity Period. | 38 |

ARTICLE 9 PROVISIONS GOVERNING DISTRIBUTIONS..............................................38
| | 9.1 | Cash Distributions. | 38 |
| | 9.2 | Determination of Claims. | 38 |
| | 9.3 | Distributions as to Allowed Claims in Class 6. | 39 |
| | 9.4 | Unclaimed Distributions. | 40 |
| | 9.5 | Transfer of Claim. | 40 |
| | 9.6 | One Distribution Per Holder. | 41 |
| | 9.7 | Effect of Pre-Confirmation Distributions. | 41 |
| | 9.8 | No Interest on Claims. | 41 |
| | 9.9 | Compliance with Tax Requirements. | 41 |

ARTICLE 10 CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE
EFFECTIVE DATE ................................................41
| | 10.1 | Condition Precedent to Confirmation of the Plan. | 41 |
| | 10.2 | Condition Precedent to the Effective Date. | 42 |
| | 10.3 | Effective Date Notice. | 42 |

ARTICLE 11 DISCHARGE, EXCULPATION FROM LIABILITY, AND GENERAL INJUNCTION ....42
| | 11.1 | Discharge of Claims and Termination of Equity Interests. | 42 |
| | 11.2 | Exculpation from Liability. | 43 |
| | 11.3 | General Injunction. | 43 |
| | 11.4 | Term of Certain Injunctions and Automatic Stay. | 44 |
| | 11.5 | No Liability for Tax Claims. | 44 |

ARTICLE 12 RETENTION OF JURISDICTION .....................................44
| | 12.1 | General Retention. | 44 |

iv

| 12.2 | Specific Purposes. | 45 |
| 12.3 | Closing of the Bankruptcy Case. | 47 |

ARTICLE 13 MODIFICATION OF PLAN AND CONFIRMATION OVER OBJECTIONS ...... 47

| 13.1 | Modification of Plan. | 47 |
| 13.2 | Confirmation Over Objections. | 48 |

ARTICLE 14 MISCELLANEOUS PROVISIONS ...... 48

| 14.1 | No Admissions. | 48 |
| 14.2 | Revocation or Withdrawal of the Plan. | 49 |
| 14.3 | Standard for Approval of the Bankruptcy Court. | 49 |
| 14.4 | Further Assurances. | 49 |
| 14.5 | Headings. | 49 |
| 14.6 | Notices. | 49 |
| 14.7 | Governing Law. | 50 |
| 14.8 | Limitation on Allowance. | 50 |
| 14.9 | Estimated Claims. | 50 |
| 14.10 | Consent to Jurisdiction. | 50 |
| 14.11 | Setoffs. | 50 |
| 14.12 | Successors and Assigns. | 51 |
| 14.13 | Modification of Payment Terms. | 51 |
| 14.14 | Entire Agreement. | 51 |
| 14.15 | Severability of Plan Provisions. | 51 |
| 14.16 | Confirmation Order and Plan Control. | 51 |
| 14.17 | Computation of Time. | 52 |
| 14.18 | Substantial Consummation. | 52 |
| 14.19 | No Liability for Solicitation. | 52 |

## INDEX TO EXHIBITS TO PLAN

Following on the Introductory Statement hereinabove on page ii, the exhibits referenced below will be furnished at the time an amended plan and amended disclosure statement are filed with the Bankruptcy Court.

Exhibit A      --      Assumed Contracts

Exhibit B      --      Bid Procedures Order

Exhibit C      --      Intercompany Claims

Exhibit D      --      Liquidating Trust Agreement

# ARTICLE 1
## INTRODUCTION

Teltronics, Inc., as Debtor and Debtor in Possession in the Bankruptcy Case, hereby proposes the following Plan for the reorganization of the Debtor and the resolution of the outstanding Claims against and Equity Interests in the Debtor pursuant to the provisions of Chapter 11 of the Bankruptcy Code, and requests Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article 2.1 of the Plan. The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

In summary, but subject to more specific details provided herein, the Plan provides for (i) the sale of substantially all of the assets of the Debtor (or, in the alternative, the sale of new equity in the Debtor) to the Purchaser or such other winning bidder as approved by order of the Bankruptcy Court, and (ii) the distribution of the proceeds of any such sale together with any other assets retained by the Debtor's Estate to its Creditors. In the event there are any additional funds remaining after the payment in full of all Allowed Claims against the Debtor, then such additional funds will be distributed to the Holders of Allowed Equity Interests as provided in Article 5 of the Plan.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim or Equity Interest until such time as the Debtor's Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Equity Interests. The Debtor's Disclosure Statement was approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and has been distributed simultaneously with the Plan to all Holders of Claims and Equity Interests whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtor's history, business, properties, and operations, (b) a summary of significant events which have occurred to date in the Bankruptcy Case, (c) a summary of the means of implementing and funding the Plan, and (d) the procedures for voting on the Plan. Unless otherwise ordered by the Bankruptcy Court, no materials, other than the Plan and the accompanying Disclosure Statement, Disclosure Statement Approval Order, Ballot, and Committee Support Letter, have been approved by the Debtor or the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT, AND ANY EXHIBITS ATTACHED THERETO, IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications to the Plan set forth in Article 13 of the Plan, the Debtor expressly reserves the right to alter, amend, modify, revoke or withdraw the Plan, one or more times, prior to the Plan's substantial consummation.

THE PLAN IS SUBJECT TO APPROVAL BY THE BOARD OF DIRECTORS OF THE DEBTOR. IN THE OPINION OF THE DEBTOR, THE TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY

THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR. ACCORDINGLY, THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND HOLDERS OF EQUITY INTERESTS, AND THE DEBTOR RECOMMENDS THAT CREDITORS AND HOLDERS OF EQUITY INTERESTS VOTE TO ACCEPT THE PLAN.

IN ADDITION, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF UNSECURED CREDITORS AND RECOMMENDS THAT UNSECURED CREDITORS VOTE TO ACCEPT THE PLAN. UNSECURED CREDITORS ARE ENCOURAGED TO READ THE COMMITTEE SUPPORT LETTER INCLUDED WITH THE DISCLOSURE STATEMENT AND THE PLAN.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THE PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT TO ANY OTHER PARTY.

THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING OR SELLING OR TRANSFERRING SECURITIES OF THE DEBTOR SHOULD EVALUATE THE PLAN AND THE DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

## ARTICLE 2
## DEFINED TERMS; RULES OF CONSTRUCTION

### 2.1 **Defined Terms**.

2.1.1      As used in the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings set forth below:

"**Administrative Expense**" means (a) any cost or expense of administration of the Bankruptcy Case under Section 503(b) or 507(a)(1) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, motion, request or other Bankruptcy Court-approved pleading seeking such expense in the Bankruptcy Case on or before the applicable Administrative Expense Claim Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estate or operating the business of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the

ordinary course of its business, (iii) any payment required to be made to cure a default under an Assumed Contract or a Purchased Contract, including any Cure Claim, to the extent allowed by a Final Order of the Bankruptcy Court, (iv) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (v) any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtor for any Postpetition tax year or period, and (vi) compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court or pursuant to the procedures set forth in the Interim Compensation Order); (b) any Superpriority Claim; (c) all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (d) any and all other costs or expenses of administration of the Bankruptcy Case that are allowed by a Final Order of the Bankruptcy Court; provided, however, that, when used in the Plan, the term "Administrative Expense" shall not include the DIP Loan Claims, any Priority Tax Claim, any Environmental Claim, any Disallowed Claim, any Claim of the Purchaser under the Purchase Agreement, any Claim under any Assumed Contract or any Purchased Contract for the period following the Closing, any Assumed Liabilities, or, unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 8. In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtor for any Postpetition tax year or period).

"**Administrative Expense Claim**" means any Claim for the payment of an Administrative Expense.

"**Administrative Expense Claim Bar Date**" means the date(s) established by one or more orders of the Bankruptcy Court as the deadline for the filing by any Creditor, Professional or other party in interest of an application, motion, request or other Bankruptcy Court-approved pleading for allowance of any Administrative Expense Claim, including as established in the Disclosure Statement Approval Order. Any Holder of an Administrative Expense Claim (including a Holder of a Claim for Postpetition federal, state or local taxes) that does not file an application, motion, request or other Bankruptcy Court-approved pleading by the applicable Administrative Expense Claim Bar Date shall be forever barred, estopped and enjoined from ever asserting such Administrative Expense Claim against the Debtor or any of its Property or the Estate, and such Holder shall not be entitled to participate in any Distribution under the Plan on account of any such Administrative Expense Claim.

"**Affiliate**" means, with respect to any Person (other than the Debtor), (a) any other Person which, directly or indirectly, is in control of, is controlled by, or is under common control with such Person, (b) any other Person that, directly or indirectly, owns or controls, whether beneficially, or as trustee, guardian or other fiduciary, twenty-five percent (25%) or more of the equity interests having ordinary voting power in the election of directors of such Person, or (c) any other Person who is a director, officer, joint venturer or partner (i) of such Person, (ii) of any subsidiary of such Person, or (iii) of any Person described in clause (a) above. For the purposes of this definition, control of a Person shall mean the power (direct or indirect) to direct or cause the direction of the management and policies of such Person whether by contract or otherwise. When

3

used in the Plan as relating to the Debtor, the term "Affiliate" has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

**"Allowed Amount"** means the dollar amount in which a Claim is allowed.

**"Allowed Claim"** means a Claim or that portion of a Claim which is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date or the Governmental Unit Bar Date, as applicable, or, by order of the Bankruptcy Court, was not required to be so filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date or the Governmental Unit Bar Date, as applicable, but which has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) and (b) above, as to which either (i) no objection to the allowance of such Claim has been filed within the time allowed for the making of objections to Claims as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court, or (ii) any objection as to the allowance of such Claim has been settled or withdrawn or has been overruled by a Final Order. "Allowed Claim" shall also include a Claim that is allowed by the Bankruptcy Court in a Final Order. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a corresponding meaning.

**"Allowed Class ... Claim"** means an Allowed Claim in the particular Class described.

**"Allowed Class ... Equity Interest"** means an Allowed Equity Interest in the particular Class described.

**"Allowed Equity Interest"** means any Equity Interest (a) which is registered as of the Record Date in a stock register that is maintained by the Debtor or the Transfer Agent and (b) which either (i) is not a Disputed Equity Interest or (ii) has been Allowed by a Final Order of the Bankruptcy Court.

**"Assumed Contracts"** has the meaning ascribed to such term in Article 7.1 of the Plan. A list of the Assumed Contracts is set forth on Exhibit A attached to the Plan.

**"Assumed Liabilities"** has the meaning ascribed to such term in the Purchase Agreement.

**"Auction"** means the auction of the Purchased Assets or the New Equity Interest to be conducted in accordance with the terms of the Plan and the Bid Procedures.

**"Available Cash"** means Cash on hand with, or in bank or other accounts controlled by, the Debtor as of the Effective Date, but excluding the Sale Proceeds.

**"Avoidance Actions"** means any and all actions to avoid or recover a transfer of Property of the Debtor's Estate or an interest of the Debtor in Property, which a trustee, debtor in possession or other appropriate party in interest may assert on behalf of the Debtor's Estate under

4

Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Section 542, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or under any other similar applicable federal, state or common law, regardless of whether or not such action has been commenced prior to the Effective Date.

**"Ballot"** means the Ballot, accompanying the Disclosure Statement and the Plan, on which (a) Holders of Impaired Claims entitled to vote on the Plan may indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions and (b) certain Holders of Unsecured Claims may make the Convenience Class Opt-In Election or the Convenience Class Opt-Out Election.

**"Balloting Agent"** means the company to be retained by the Debtor to (a) provide service of the Plan Solicitation Package upon the Common Stockholders, (b) receive and tabulate the Common Stockholder Ballots and the Master Ballots, and (c) certify to the Bankruptcy Court the results of the votes for acceptance and rejection of the Plan by the Common Stockholders.

**"Bankruptcy Case"** means the case of the Debtor currently pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, which case was commenced by the Debtor on the Petition Date and presently bears Case No. 8:11-bk-12150-KRM.

**"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

**"Bankruptcy Counsel"** means Stichter, Riedel, Blain & Prosser, P. A.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Bankruptcy Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as promulgated under Section 2075 of title 28 of the United States Code, and the Local Rules, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

**"Bar Date"** means September 12, 2011, the date set by the Bankruptcy Court as the last day for filing a Proof of Claim against the Debtor in the Bankruptcy Case, excluding (a) a Prepetition Claim of a Governmental Unit, for which a Proof of Claim must be filed with the Bankruptcy Court by the Governmental Unit Bar Date, (b) an Administrative Expense Claim, for which a request for payment of an Administrative Expense must be filed with the Bankruptcy Court by the Administrative Expense Claim Bar Date, (c) a Claim for which a bar date may have been otherwise established by a Final Order of the Bankruptcy Court, for which a Proof of Claim must be filed with the Bankruptcy Court by the date set forth in such Final Order, and (d) a Claim with respect to an executory contract or unexpired lease that is rejected pursuant to the Plan (as to which the bar date shall be as set forth in Article 7.5 of the Plan) or a Final Order of the Bankruptcy Court (as to which the bar date shall be as set forth in such Final Order).

"**Bid Procedures**" means the written procedures for soliciting bids for the Purchased Assets or the New Equity Interest, as the case may be, and conducting the Auction as approved by the Bankruptcy Court in the Bid Procedures Order.

"**Bid Procedures Motion**" means the Debtor's Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of Its Assets or, in the Alternative, All of Its Equity Interests, (II) Establishing Procedures for the Assumption and/or Assignment by the Debtor of Certain Executory Contracts and Unexpired Leases, (III) Approving Minimum Overbid Amount and an Expense Reimbursement Amount, (IV) Approving Form and Manner of Notice of Bidding Procedures, and (V) Setting Objection Deadlines filed with the Bankruptcy Court on _____, 2011 (Docket No. _____).

"**Bid Procedures Order** " means the Order Granting Debtor's Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of Its Assets or, in the Alternative, All of Its Equity Interests, (II) Establishing Procedures for the Assumption and/or Assignment by the Debtor of Certain Executory Contracts and Unexpired Leases, (III) Approving Minimum Overbid Amount and an Expense Reimbursement Amount, (IV) Approving Form and Manner of Notice of Bidding Procedures, and (V) Setting Objection Deadlines dated _____, 2011, entered in the Bankruptcy Case (Docket No. _____). A copy of the Bid Procedures Order is attached to the Plan as Exhibit B.

"**Board of Directors** " means the Board of Directors of the Debtor.

"**Business Day**" means any day other than (a) a Saturday, (b) a Sunday, (c) a "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)), or (d) a day on which commercial banks in Tampa, Florida are required or authorized to close by law.

"**Cash**" means cash, cash equivalents and other readily marketable direct obligations of the United States, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a Distribution under the Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from the Debtor or the Liquidating Trust, as the case may be, drawn on a domestic bank.

"**Causes of Action**" means any and all of the Debtor's or the Debtor's Estate's actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, against any Creditor or other third party, including (a) the Avoidance Actions, and (b) any and all other claims or rights or proceedings of any value whatsoever, at law or in equity, against any Creditor or other third party, including turnover actions and claims of the type referred to in the Disclosure Statement or in Article _____ of the Plan. The Causes of Action shall vest in the Liquidating Trust on the Effective Date. When used in the Plan, the term "Causes of Action" shall not include any claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived by the Debtor pursuant to an order of the Bankruptcy Court, unless such Cause of Action has been retained

by the Committee. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Liquidating Trust or the Liquidating Trustee, as a result of such failure, be estopped or precluded under any theory from pursuing such Cause of Action. Nothing in the Plan operates as a release of any of the Causes of Action.

"**Causes of Action Recoveries**" means the proceeds, benefits and other recoveries of any Causes of Action received by the Liquidating Trust or the Liquidating Trustee.

"**Certificate of Incorporation**" means the certificate of incorporation of the Debtor on file with the Secretary of State of Delaware as of the Petition Date.

"**Claim**" has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Claim" shall be given the broadest possible meaning permitted by applicable law and shall include all manner and type of claim, whenever and wherever such claim may arise, including Administrative Expense Claims, Environmental Claims, and claims based upon or arising under any federal or state securities laws.

"**Class**" means a category of Claims or Equity Interests classified together as described in Article 4 of the Plan.

"**Clerk**" means the Clerk of the Bankruptcy Court.

"**Clerk's Office**" means the Office of the Clerk of the Bankruptcy Court located at the Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, 5th Floor, Tampa, Florida 33602.

"**Closing**" means the closing of the sale and purchase of the Purchased Assets or the New Equity Interest and the other transactions contemplated by the Purchase Agreement.

"**Closing Date**" means the date of the Closing under the Purchase Agreement.

"**Collateral**" means Property in which the Estate has (or had) an interest and that secures (or secured), in whole or part, whether by agreement, statute, or judicial decree, the payment of a Claim.

"**Committee**" means the Official Committee of the Unsecured Creditors appointed by the United States Trustee in the Bankruptcy Case pursuant to Section 1102 of the Bankruptcy Code on June 30, 2011 (Docket No. 33), as such appointment was amended by the United States Trustee on July 1, 2011 (Docket No. 37) and on July 5, 2011 (Docket No. 41), and as the membership of such Committee may hereafter be further amended or modified by the United States Trustee.

"**Committee Support Letter**" means a letter from the Committee to Unsecured Creditors dated October ___, 2011, recommending that Unsecured Creditors vote to accept the Plan.

"**Common Stock**" means the common stock, par value $.001 per share, of the Debtor.

"**Common Stockholder**" means a Holder of Existing Common Stock.

"**Common Stockholder Ballot**" means the Ballot to be distributed in the Plan Solicitation Package to each Common Stockholder as of the Record Date, on which the Common Stockholders may indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

"**Confirmation**" or "**Confirmation of the Plan**" means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

"**Confirmation Date**" means the date on which the Confirmation Order is entered on the Docket by the Clerk pursuant to Bankruptcy Rule 5003(a).

"**Confirmation Hearing**" means the hearing which will be held before the Bankruptcy Court to consider Confirmation of the Plan and related matters pursuant to Section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time. The date of the Confirmation Hearing is set forth in the Disclosure Statement Approval Order.

"**Confirmation Order**" means the order of the Bankruptcy Court in the Bankruptcy Case confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, as such order may be amended, modified or supplemented.

"**Convenience Class Opt-In Election**" means the irrevocable election by a Holder of an Unsecured Claim in an amount greater than $_____ to have such Unsecured Claim reduced to $_____ and treated as an Unsecured Convenience Claim under the Plan. The election must be made by the Holder on the Ballot and filed with the Bankruptcy Court on or before the Voting Deadline.

"**Convenience Class Opt-Out Election**" means the irrevocable election by a Holder of an Unsecured Claim in an amount less than or equal to $_____ to have such Unsecured Claim treated as a Class 6 Unsecured Claim under the Plan. The election must be made by the Holder on the Ballot and filed with the Bankruptcy Court on or before the Voting Deadline.

"**Creditor**" means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, and Creditors with Administrative Expense Claims, Priority Tax Claims, Priority Claims, and Cure Claims.

"**CRO**" means Solutions Management, LLC in its capacity as chief restructuring officer of the Debtor as appointed pursuant to the CRO Order.

"**CRO Order**" means the Final Order Granting Debtor's Emergency Motion to Approve Employment of Michael J. Worrall and Solutions Management, LLC as Chief Restructuring Officer Pursuant to Sections 105 and 363 of the Bankruptcy Code, or Alternatively, Section 327 of

the Bankruptcy Code *Nunc Pro Tunc* as of June 27, 2011 dated July 25, 2011, entered in the Bankruptcy Case (Docket No. 88).

"**Cure Claim**" means any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, due and owing by the Debtor pursuant to Section 365(b) of the Bankruptcy Code or otherwise and any Claim for a default (monetary or non-monetary), arising from, relating to or in connection with the assumption by the Debtor of any Assumed Contract or any Purchased Contract (provided such Claim is filed with the Bankruptcy Court by the Cure Claim Submission Deadline). In no event shall any Claim set out in a Proof of Claim be deemed to be a Cure Claim.

"**Cure Claim Submission Deadline**" means, and shall occur on the same day as, the Voting Deadline.

"**D & O Policy**" means any insurance policy in effect at any time on or before the Effective Date (and as such policy may be continued following the Effective Date) under which any Person carrying on an insurance business may be liable to satisfy, or to indemnify or reimburse for payments made to satisfy, part or all of a judgment rendered against, or a settlement made to resolve claims made against, or defense costs incurred by, the Debtor or any past, present or future director, officer, trustee or employee of the Debtor, including the policies issued to the Debtor by _____ _____ (Policy Number _____) and _____ (Policy Number _____).

"**Debt**" has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

"**Debtor**" means Teltronics, Inc., a Delaware corporation.

"**Debtor in Possession**" means Teltronics, Inc., as debtor in possession in the Bankruptcy Case.

"**Delaware General Corporation Law**" means Title 8 of the Delaware Code, as now in effect or hereafter amended.

"**Determination Date**" means the later of (i) the Effective Date and (ii) the date the order of the Bankruptcy Court allowing a Claim becomes a Final Order (if applicable).

"**DIP Advances**" means the aggregate outstanding Postpetition advances extended to the Debtor by the DIP Lender pursuant to the DIP Loan Documents and in accordance with and subject to the terms and conditions of the DIP Financing Order.

"**DIP Financing Order**" means, collectively, (a) the Interim Order Granting Debtor's Emergency Motion for Authority to (A) Obtain Postpetition Financing from Wells Fargo Capital Finance, Inc. and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001, (B) Use Cash Collateral, and (C) Maintain its Existing Cash Management System dated June 30, 2011, entered in the Bankruptcy

Case (Docket No. 32), (b) the Second Interim Order (1) Granting Debtor's Emergency Motion for Authority to (A) Obtain Postpetition Financing from Wells Fargo Capital Finance, Inc. and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001, (B) Use Cash Collateral, and (C) Maintain its Existing Cash Management System and (2) Continuing Final Hearing dated August 3, 2011, entered in the Bankruptcy Case (Docket No. 105), (c) the Third Interim Order (1) Granting Debtor's Emergency Motion for Authority to (A) Obtain Postpetition Financing from Wells Fargo Capital Finance, Inc. and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001, (B) Use Cash Collateral, and (C) Maintain its Existing Cash Management System and (2) Continuing Final Hearing dated August 18, 2011, entered in the Bankruptcy Case (Docket No. 123), (d) the Fourth Interim Order (1) Granting Debtor's Emergency Motion for Authority to (A) Obtain Postpetition Financing from Wells Fargo Capital Finance, Inc. and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001, (B) Use Cash Collateral, and (C) Maintain its Existing Cash Management System and (2) Continuing Final Hearing dated September 1, 2011, entered in the Bankruptcy Case (Docket No. 137), (e) the Final Order Granting Debtor's Emergency Motion for Authority to (A) Obtain Postpetition Financing from Wells Fargo Capital Finance, Inc. and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. § 364(c) and (d) and F.R.B.P. 4001, (B) Use Cash Collateral, and (C) Maintain its Existing Cash Management System dated September 23, 2011, entered in the Bankruptcy Case (Docket No. 155), and (f) any other orders entered by the Bankruptcy Court in the Bankruptcy Case after the date of the Plan authorizing any DIP Advances.

**"DIP Lender"** means Wells Fargo in its capacity as lender under the DIP Loan Documents.

**"DIP Loan Claims"** means any and all Claims of the DIP Lender represented by, relating to, or arising under or in connection with the DIP Loan Documents and the DIP Financing Order, whether Administrative Expense Claims or Secured Claims, including the DIP Advances and accrued and unpaid interest.

**"DIP Loan Documents"** means all of the documents evidencing the DIP Loan Claims, and all other documents executed in connection therewith, as any such document has been amended, modified or supplemented thereafter in accordance with its terms.

**"Disallowed Claim"** means any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

**"Disclosure Statement"** means the Disclosure Statement for Debtor's Plan of Reorganization under Chapter 11 of Title 11, United States Code dated as of September 23, 2011, including all Exhibits attached thereto, as submitted and filed by the Debtor pursuant to Section 1125 of the Bankruptcy Code in respect of the Bankruptcy Case and approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and as such Disclosure Statement may be amended, supplemented, modified or amended and restated from time to time.

**"Disclosure Statement Approval Order"** means the Order Approving Disclosure Statement, Fixing Time to File Applications for Administrative Expenses, Setting Hearing on Confirmation of Plan, and Setting Deadlines with Respect to Confirmation Hearing, dated October ___, 2011, entered in the Bankruptcy Case (Docket No. ___).

**"Disputed Claim"** means any Claim or portion thereof (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules, and, in the case of subparagraph (a) and (b) above, as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court and any such objection has not been (i) withdrawn, (ii) overruled by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court. In addition to the foregoing, a Disputed Claim shall also mean a Claim that is not an Allowed Claim, whether or not an objection has been or may be timely filed, if (a) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (c) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Schedules, or (e) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection. "Disputed," when used as an adjective herein (such as Disputed Administrative Expense Claim, Disputed Priority Tax Claim, Disputed Priority Claim, Disputed Secured Claim, and Disputed Unsecured Claim), has a corresponding meaning.

**"Disputed Equity Interest"** means any Equity Interest (a) which is not registered as of the Record Date in a stock register that is maintained by the Debtor or the Transfer Agent, or (b) as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court and any such objection has not been (i) withdrawn, (ii) overruled by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court.

**"Distribution"** means a distribution of Cash to a Creditor or to the Holder of an Equity Interest on account of an Allowed Claim or an Allowed Equity Interest, as the case may be, pursuant to the terms of the Plan.

**"Distribution Date"** means, when used with respect to an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals), the date which is as soon as reasonably practicable (as determined by the Liquidating Trustee) after the Determination Date. "Distribution Date," when used with respect to an Allowed Priority Tax Claim or Allowed Claims in Classes 1, 3, 4, 5 and 6 or Allowed Equity Interests, means the date or dates selected by the Liquidating Trustee for any Distribution to Holders of Allowed Priority Tax Claims or Allowed Claims in Classes 1, 3, 4, 5 and 6 or Allowed Equity Interests as provided in the Plan or as otherwise reasonably determined by the Liquidating Trustee, unless such date or dates have been otherwise established by an order of the Bankruptcy Court.

**"Docket"** means the docket in the Bankruptcy Case maintained by the Clerk.

**"Docket No."** means the number of the referenced document reflected on the docket in the Bankruptcy Case.

**"Effective Date"** means, and shall occur on, the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date contained in Article 10.2 of the Plan have been satisfied or waived by the Debtor; provided, however, that the Effective Date shall occur by no later than December 6, 2011.

**"Effective Date Notice"** has the meaning ascribed to such term in Article 10.3 of the Plan.

**"Entity"** has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

**"Environmental Claim"** means any Claim or demand now existing or hereafter arising (including all thereof in the nature of or sounding in tort, contract, warranty or under any other theory of law or equity) against the Debtor, its predecessors, successors or assigns, or Affiliates, or its present or former officers, directors, or employees, arising out of, or related to, any Environmental Laws or the Purchased Assets, including any Claim or demand: (a) to restrict or enjoin, or recover damages, costs or expenses to remedy, any release, environmental pollution, contamination or nuisance or to require the Debtor to remedy or to reimburse, pay or incur costs to remedy any release, environmental pollution, contamination or nuisance, (b) to remedy, reimburse, compensate or pay any damage, penalty, fine or forfeiture for, or to restrict or enjoin, any violation of or alleged violation of any Environmental Laws, (c) to pay any contractual claim with respect to any Environmental Laws, or (d) to pay or reimburse any Person or Entity for personal injury (including worker's compensation, sickness, disease or death), tangible or intangible property damage or natural resource damage arising out of, or relating to, any release, environmental pollution, contamination or nuisance, whether or not contemplated in subparagraphs (a) through (c) above, or whether or not such Claim or demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, or whether or not the facts of or legal basis for such Claim or demand are known or unknown, or whether or not the injury or damage giving rise to such Claim or demand was diagnosable, undiagnosable, detectable or undetectable before the Confirmation of the Plan or before the Final Decree Date. Notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Environmental Claim" shall be broadly construed and shall include (a) claims that may or may not presently constitute "claims" within the meaning of Section 101(5) of the Bankruptcy Code and (b) demands that may or may not presently constitute "demands" within the meaning of Section 524(g) (5) of the Bankruptcy Code.

**"Environmental Laws"** means all federal, state, local and foreign laws, statutes, ordinances, codes, rules, standards and regulations, now or hereafter in effect, and any judicial or administrative interpretation thereof, including any judicial or administrative order, consent decree, or judgment, imposing liability or standards of conduct for or relating to the regulation and protection of human health, safety, the environment and natural resources (including ambient air, surface water, groundwater, wetlands, land surface or subsurface strata, wildlife, aquatic species and

vegetation). As used in this Plan, the term "Environmental Laws" shall include (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601, et seq., (b) the Resource Conservation and Recovery Act, as amended by the Hazardous and Solid Waste Amendment of 1984, 42 U.S.C. §§ 6901, et seq., (c) the Clean Air Act, 42 U.S.C. §§ 7401, et seq., (d) the Clean Water Act of 1977, 33 U.S.C. §§ 1251, et seq., (e) the Toxic Substances Control Act, 15 U.S.C. §§ 2601, et seq., (f) the Oil Pollution Act of 1990 (OPA 90), (g) the Hazardous Materials Transportation Authorization Act of 1994, 49 U.S.C. §§ 5101, et seq., (h) the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136, et seq., (i) the Solid Waste Disposal Act, 42 U.S.C. §§ 6901, et seq., (j) the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, et seq., (k) the Occupational Safety and Health Act, 29 U.S.C. §§ 651, et seq., (l) the Safe Drinking Water Act, 42 U.S.C. §§ 300(f), et seq., (m) all other statutes or laws issued or promulgated by any Governmental Unit, as they may be amended from time to time, relating to environmental contamination or pollution, air pollution, water pollution, noise control and/or the handling, transportation, discharge, existence, release, disposal or recovery of on-site or off-site hazardous, toxic or dangerous wastes, substances, chemicals or materials (including petroleum), including any transfer of ownership notification or approval statutes, and (n) the ordinances, rules, regulations, orders, notices of violation, requests, demands and requirements issued or promulgated by any Governmental Unit in connection with such statutes or laws.

**"Equity Interests"** means the equity interests in the Debtor held by all Holders of Preferred Stock and all Holders of Existing Common Stock, including any and all options, warrants or similar instruments for the acquisition of such equity interests and any and all rights to subscribe to or convert into shares of such equity interests.

**"Estate"** means the estate created for the Debtor by Section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Case, which Estate shall remain open, even if the Bankruptcy Case shall have been closed, as to any and all Causes of Action until such time as the Causes of Action have been fully administered.

**"Estimation Hearing"** means a hearing for the estimation of Claims under Section 502(c) of the Bankruptcy Code.

**"Exchange Act"** means the Securities Exchange Act of 1934, as it has been or may be amended from time to time, and the rules and regulations promulgated thereunder.

**"Excluded Assets"** has the meaning ascribed to such term in the Purchase Agreement.

**"Exculpated Parties"** has the meaning ascribed to such term in Article 11.2 of the Plan.

**"Exhibit"** means an exhibit annexed to the Plan or to the Disclosure Statement, as the context requires.

13

"**Existing Common Stock**" means the _____ shares of Common Stock issued and outstanding on the Petition Date. As used in the Plan, the term "Existing Common Stock" shall not include any shares of Common Stock held in treasury by the Debtor.

"**Final Decree**" means the final decree for the Bankruptcy Case entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

"**Final Decree Date**" means the date on which the Final Decree, obtained after a hearing on notice to the Notice Parties and to such other Persons and Entities as the Bankruptcy Court may direct, is entered on the Docket.

"**Final Order**" means (a) an order, judgment, ruling or other decree (or any revision, modification or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Bankruptcy Case for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and as to which (i) no appeal, petition for review, reargument, rehearing, reconsideration or certiorari has been taken and is pending and the time for the filing of such appeal, petition for review, reargument, rehearing, reconsideration or certiorari has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

"**Governmental Unit**" has the meaning ascribed to such term in Section 101(27) of the Bankruptcy Code.

"**Governmental Unit Bar Date**" means December 23, 2011, the date established by Section 502(a)(9) of the Bankruptcy Code as the last day for a Governmental Unit to file a Proof of Claim against the Debtor in the Bankruptcy Case.

"**Holder**" means (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtor or the Liquidating Trustee, as the case may be, has received sufficient written evidence of such assignment or transfer, the assignee or transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as of the Record Date as shown on the stock register that is maintained by the Debtor or the Transfer Agent or as otherwise determined by order of the Bankruptcy Court.

"**Impaired**" refers to any Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

"**Indemnification Rights**" means any obligations or rights of the Debtor to indemnify, reimburse, advance, or contribute to the losses, liabilities or expenses of an Indemnitee

pursuant to the Debtor's certificate of incorporation, bylaws, or policy of providing indemnification, applicable law, or a specific agreement in respect of any claims, demands, suits, causes of action or proceedings against an Indemnitee based upon any act or omission related to an Indemnitee's service with, for, or on behalf of the Debtor.

**"Indemnitee"** means all present and former directors, officers, employees, agents or representatives of the Debtor who are entitled to assert Indemnification Rights.

**"Intercompany Claim"** means any Claim which a Subsidiary holds against the Debtor. A schedule of the Intercompany Claims is set forth in Exhibit C attached to the Plan.

**"Interim Compensation Motion** " means the Debtor's Motion to Establish Procedures to Permit Monthly Payment of Interim Fee Applications of Chapter 11 Professionals filed with the Bankruptcy Court on _____, 2011 (Docket No. _____).

**"Interim Compensation Order** " means the Order Granting Debtor's Motion to Establish Procedures to Permit Monthly Payment of Interim Fee Applications of Chapter 11 Professionals dated _____, 2011, entered in the Bankruptcy Case (Docket No. _____).

**"Liabilities"** means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor or any predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any predecessor, successor or assign thereof, any Property of the Debtor (including the Retained Assets), the business or operations of the Debtor, the Purchased Assets, the Bankruptcy Case, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, when used in the Plan, the term "Liabilities" shall not include (i) any obligation under the Purchase Agreement of one party thereunder to another party thereunder or (ii) any obligation of the Debtor or the Liquidating Trustee expressly set forth in the Plan.

**"Lien"** means, with respect to any Property, any mortgage, pledge, security interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such Property, whether voluntary or involuntary and whether arising by law, contract or otherwise.

**"Liquidating Trust"** means the irrevocable trust to be established on the Effective Date to hold and distribute the Liquidating Trust Assets and perform other duties, all as more particularly described in Article 8.4 of the Plan and in the Liquidating Trust Agreement.

**"Liquidating Trust Agreement"** means the agreement specifying the rights and obligations of the Liquidating Trust and the Liquidating Trustee, to be executed by the Debtor and the

Liquidating Trustee as of the Effective Date, which shall be substantially in the form of Exhibit D attached hereto.

**"Liquidating Trust Assets"** means, collectively, (a) the Retained Assets, (b) the Causes of Action Recoveries, and (c) any interest earned through the investment of the items described in subparagraphs (a) and (b) above.

**"Liquidating Trustee"** means the Person appointed pursuant to the provisions of the Plan or an order of the Bankruptcy Court to take possession of and liquidate the Liquidating Trust Assets.

**"Local Rules"** means the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

**"Master Ballot"** means the Master Ballot to be distributed to brokers, proxy intermediaries, custodian banks or other nominees, on which such parties shall indicate the acceptance or rejection of the Plan by Common Stockholders in accordance with the Voting Instructions.

**"New Equity Interest"** means the equity interest in the Reorganized Debtor issued to the winning bidder at the Auction.

**"Notice Parties"** means (a) the Debtor, (b) Bankruptcy Counsel, (c) the United States Trustee, (d) the Liquidating Trustee and his counsel, and (e) all parties then set forth on the Local Rule 1007(d) Parties in Interest List for the Bankruptcy Case.

**"Person"** means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

**"Petition Date"** means June 27, 2011, the date on which the Debtor commenced the Bankruptcy Case by filing its voluntary petition under Chapter 11 of the Bankruptcy Code.

**"Plan"** means the Debtor's Plan of Reorganization under Chapter 11 of Title 11, United States Code dated as of September 23, 2011, and all Exhibits to the Plan, as the same may be amended, supplemented, modified or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

**"Plan Documents"** means the documents that aid in effectuating the Plan, including the Liquidating Trust Agreement, the Reorganized Debtor Charter, and _____
_____.

**"Plan Solicitation Package"** means, collectively, the Disclosure Statement, the Plan, the Disclosure Statement Approval Order, and the Common Stockholder Ballot, unless otherwise ordered by the Bankruptcy Court.

**"Plan Supplement"** means the document containing the Plan Documents (to the extent not already on file with the Bankruptcy Court), which shall be filed with the Bankruptcy Court in accordance with Article _____ of the Plan.

**"Postpetition"** means arising or accruing on or after the Petition Date and before the Effective Date.

**"Preferred Stock"** means collectively, the Series A Preferred Stock, the Series B Preferred Stock, and the Series C Preferred Stock.

**"Prepetition"** means arising or accruing prior to the Petition Date.

**"Priority Claim"** means a Claim that is entitled to a priority in payment pursuant to Sections 507(a)(4), (5) and (7) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Tax Claim, a Secured Claim, a Secured Tax Claim or an Unsecured Claim.

**"Priority Tax Claim"** means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Claim, a Secured Claim, a Secured Tax Claim or an Unsecured Claim.

**"Professional"** means any professional employed in the Bankruptcy Case pursuant to an order of the Bankruptcy Court, pursuant to Section 327 or 1103 of the Bankruptcy Code.

**"Proof of Claim"** means a proof of claim filed with the Bankruptcy Court with respect to a Claim against the Debtor pursuant to Bankruptcy Rule 3001, 3002 or 3003.

**"Property"** means any property or asset of any kind, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located, and any interest of any kind therein.

**"Pro Rata Share"** means, with respect to any Distribution under the Plan to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims and all Reserved Claims in such Class and, if applicable, other Classes, all determined as of the applicable Distribution Date. With respect to any Distribution under the Plan to the Holder of an Allowed Equity Interest in a particular Class, "Pro Rata Share" means a fraction, the numerator of which shall be the amount of such Holder's Allowed Equity Interest and the denominator of which shall be the sum of all Allowed Equity Interests and all Disputed Equity Interests in that Class.

**"Purchase Agreement"** means the Purchase Agreement by and between the Debtor, as seller, and _____, as purchaser, dated as of October ___, 2011, and as amended, modified or supplemented thereafter in accordance with its terms and the Sale Order. As used in the Plan, the term "Purchase Agreement" shall also include all exhibits and schedules attached thereto. An executed copy of the Purchase Agreement is on file with the Bankruptcy Court at Docket No. ____.

**"Purchased Assets"** means the assets previously owned by the Debtor and acquired by the Purchaser at the Closing pursuant to the Purchase Agreement and the Sale Order, including the Purchased Contracts. For purposes of the Plan, the term "Purchased Assets" has the meaning ascribed to the term "Assets" in the Purchase Agreement.

**"Purchased Contracts"** means the unexpired leases of nonresidential real property and executory contracts assumed by the Debtor and assigned to the Purchaser at the Closing pursuant to the Purchase Agreement and the Sale Order. For purposes of the Plan, the term "Purchased Contracts" has the meaning ascribed to the term "Purchased Contracts" in the Purchase Agreement.

**"Purchaser"** means _____.

**"Record Date"** means the date of the Disclosure Statement Approval Order, which shall be the date for determination of the ownership of the Class 12 Equity Interests for the purpose of voting on acceptance or rejection of the Plan by the Holders of the Class 12 Equity Interests.

**"Rejected Contracts"** has the meaning ascribed to such term in Article 7.1 of the Plan.

**"Reorganized Debtor"** means the Debtor on and after the Effective Date as reorganized pursuant to the Plan, including any successor thereto by merger, consolidation or otherwise.

**"Reorganized Debtor Charter"** means the certificate of incorporation of the Reorganized Debtor, as amended or amended and restated pursuant to the Plan, the Confirmation Order, the Delaware General Corporation Law or otherwise and filed with the Office of the Secretary of State of the State of Delaware. The final form of the Reorganized Debtor Charter shall be included in the Plan Supplement.

**"Reserved Claims"** means all Disputed Claims as of the applicable determination date in the full amount listed in the Schedules, unless (a) a Proof of Claim was timely filed with respect to any such Claim, in which case in the face amount of such Proof of Claim, or (b) such Claim has been estimated by the Bankruptcy Court for the purpose of allowance pursuant to Section 502(c) of the Bankruptcy Code, in which case in such estimated amount. Unless any order of the Bankruptcy Court estimating a Claim provides otherwise, the amount so estimated shall apply both for voting and distribution purposes and for purposes of computing Reserved Claims. As used in the Plan, the term "Reserved Claims" shall not include any Disallowed Claims.

**"Retained Assets"** means all Property of the Debtor and its Estate of any nature whatsoever as of the Effective Date that is not sold to or retained by the Purchaser, including the Available Cash, the Sale Proceeds (after the payment of Wells Fargo as provided in the Plan), the Causes of Action, the Excluded Assets, all rights under the D&O Policy, and all rights of the Debtor under the Purchase Agreement.

**"Sale Order"** means the Order _____ dated _____, 2011, entered in the Bankruptcy Case (Docket No. ___).

**"Sale Proceeds"** means the purchase price received by the Debtor from the Purchaser at the Closing under the Purchase Agreement. The Sale Proceeds will be deposited into the trust account of Bankruptcy Counsel at the Closing.

**"Schedules"** means, collectively, Schedules D, E, F, G, and H filed by the Debtor in the Bankruptcy Case pursuant to Bankruptcy Rule 1007, as any of such Schedules has been or may hereafter be amended or supplemented from time to time.

**"SEC"** means the United States Securities and Exchange Commission.

**"Secured Claim"** means any Claim of a Creditor that is (a) secured in whole or in part, as of the Petition Date, by a Lien (i) on Collateral and (ii) which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Section 553 of the Bankruptcy Code, but, with respect to both (a) and (b) above, only to the extent of the value of such Creditor's interest in the Estate's interest in such Collateral or the amount subject to setoff, as the case may be. Except as otherwise provided in the Plan, if the value of a Creditor's interest in the Estate's interest in such Collateral or the amount subject to setoff is less than the amount of the Allowed Claim, then such deficiency shall constitute an Unsecured Claim.

**"Secured Creditor"** means any Creditor holding a Secured Claim.

**"Secured Tax Claim"** means a Secured Claim of a Governmental Unit for Prepetition taxes.

**"Securities Act"** means the Securities Act of 1933, as it has been or may be amended from time to time, and the rules and regulations promulgated thereunder.

**"Security"** has the meaning ascribed to such term in Section 101(49) of the Bankruptcy Code.

**"Series A Preferred Stock"** means the Series A Preferred Stock, par value $.001 per share, of the Debtor.

**"Series B Preferred Stock "** means the Series B Convertible Preferred Stock, par value $_____ per share, of the Debtor.

**"Series C Preferred Stock "** means the Series C Convertible Preferred Stock, par value $_____ per share, of the Debtor.

**"Subordinated Securities Claim"** means any Claim subject to subordination under Section 510(b) of the Bankruptcy Code, including any Claim that arises from the rescission of a purchase or sale of a Security of the Debtor (including the Preferred Stock and the Existing Common Stock), or for damages arising from the purchase or sale of such a Security, or for reimbursement, indemnification, or contribution allowed under Section 502 of the Bankruptcy Code on account of such Claim; provided that, in each such case, such Claim is filed with the Bankruptcy Court by the Bar Date.

**"Subsidiaries"** means, collectively, Teltronics Limited (UK), Teltronics Technical Services Limited (UK), 36371 Yukon Inc., and TTG Acquisition Corp.

**"Subsidiary Equity Interests"** means the equity interests (including common stock and membership interests) issued by any of the Subsidiaries and held, directly or indirectly, by the Debtor.

**"Superpriority Claim"** means any Claim created by a Final Order of the Bankruptcy Court providing for a priority senior to that provided in Section 507(a)(1) of the Bankruptcy Code, including any such Claims granted under Sections 364(c)(1) of the Bankruptcy Code.

**"Transfer Agent"** means _____ _____ or any successor transfer agent engaged by the Debtor.

**"Unimpaired"** refers to a Claim that is not Impaired.

**"United States"** means the United States of America.

**"United States Trustee"** means the Office of the United States Trustee for the Middle District of Florida.

**"Unsecured Claim"** means any Claim which is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Secured Tax Claim, Secured Claim, Cure Claim, or Intercompany Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, (b) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the Estate's interest in the Collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, (c) any Claim arising from the provision of goods or services to the Debtor prior to the Petition Date, (d) any Unsecured Claim in the Allowed Amount of $_____ or less to the extent the Holder thereof has made the Convenience Class Opt-Out Election, and (e) any Claim designated as an Unsecured Claim elsewhere in the Plan.

**"Unsecured Convenience Claim"** means an Unsecured Claim (a) in an amount less than or equal to $_____ and the Holder of such Claim has not made the Convenience Class Opt-Out Election, or (b) in an amount greater than $_____ and the Holder of such Claim has agreed to reduce the amount of its Claim to $_____ by making the Convenience Class Opt-In Election.

**"Unsecured Creditor"** means any Creditor holding an Unsecured Claim.

**"Voting Deadline"** means the last day to file, with the Bankruptcy Court, a Ballot, Common Stockholder Ballot, or Master Ballot accepting or rejecting the Plan as fixed by the Disclosure Statement Approval Order.

**"Voting Instructions"** means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "Voting Instructions" and in the Ballot, the Common Stockholder Ballot, or the Master Ballot, as the case may be.

**"Wells Fargo"** means Wells Fargo Capital Finance, Inc., a California corporation, and its successors or assigns.

**"Wells Fargo Allowed Secured Claim"** has the meaning ascribed to such term in Article 5.3 of the Plan.

**"Wells Fargo Prepetition Claims"** means any and all Secured Claims and other Claims of Wells Fargo represented by, relating to, or arising under or in connection with the Wells Fargo Prepetition Loan Documents, including all of the Claims of Wells Fargo described or referenced in the Wells Fargo Proof of Claim.

**"Wells Fargo Prepetition Loan Documents"** means all of the Prepetition documents evidencing the Wells Fargo Prepetition Claims and any and all other documents executed by the Debtor or Wells Fargo in any way relating to the Wells Fargo Prepetition Claims, as any such documents have been amended, modified or supplemented thereafter in accordance with their terms.

**"Wells Fargo Proof of Claim"** means claim number _____ filed by Wells Fargo in the Bankruptcy Case, which asserts an aggregate Secured Claim against the Debtor of $_____.

2.1.2       Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or in the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or in the Bankruptcy Rules, as the case may be (with the Bankruptcy Code or the Bankruptcy Rules, as the case may be, controlling in the case of a conflict or ambiguity).

2.2     **Rules of Construction**.

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document shall be substantially in such form or substantially on such

terms and conditions; (c) any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented; (d) if the Plan's description of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit shall control; (e) unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan; (f) unless the context requires otherwise, the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular Article or section or subsection of the Plan; (g) any phrase containing the term "include" or "including" shall mean including without limitation; (h) all of the Exhibits referred to in the Plan shall be deemed incorporated herein by any such reference and made a part hereof for all purposes; (i) any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; and (j) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in the construction of the Plan, to the extent such rules are not inconsistent with any other provision in this Article 2.2.

## ARTICLE 3
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND DIP LOAN CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims, and the DIP Loan Claims have not been classified in the Plan. The treatment accorded to Administrative Expense Claims, Priority Tax Claims, and the DIP Loan Claims is set forth below in this Article 3.

3.1   **Administrative Expense Claims**.

3.1.1   Except as otherwise provided in Articles 3.1.2, 3.1.3 and 3.1.4 below, each Holder of an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals) shall be paid (a) on the Distribution Date, an amount, in Cash, by the Liquidating Trustee out of the Liquidating Trust Assets equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtor or the Liquidating Trustee, as the case may be, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

3.1.2   All unpaid fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, for any calendar quarter ending prior to the Effective Date shall be paid to the United States Trustee by the Liquidating Trustee out of the Liquidating Trust Assets by no later than thirty (30) days following the Effective Date. At the time of such payment, the Liquidating Trustee shall provide to the United States Trustee an affidavit indicating the disbursements made by the Debtor for the relevant periods, if requested by the United States Trustee. Following the Effective Date, any such fees required to be paid to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6) arising or accruing from distributions made by the Liquidating Trustee or the Liquidating Trust under the Plan or otherwise shall be paid by the Liquidating Trustee out of the Liquidating Trust Assets, until the earlier of (i) the closing of the Bankruptcy Case by the issuance of a Final Decree by the Bankruptcy Court, or (ii) the entry of an order by the Bankruptcy Court

dismissing the Bankruptcy Case or converting the Bankruptcy Case to another chapter under the Bankruptcy Code. All such payments to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements by the Liquidating Trustee or the Liquidating Trust for the relevant periods and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6). The Liquidating Trustee shall provide to the United States Trustee at the time of each such payment an appropriate affidavit indicating the disbursements made by the Liquidating Trustee or the Liquidating Trust for the relevant period, if requested by the United States Trustee.

3.1.3    All Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid by the Liquidating Trustee out of the Liquidating Trust Assets (a) in the ordinary course of business in accordance with contract terms, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Liquidating Trustee, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

3.1.4    All Allowed Administrative Expense Claims representing Assumed Liabilities shall not be the responsibility of the Debtor or the Liquidating Trustee or be paid under Article 3.1.1 or 3.1.3 of the Plan, but shall be paid by the Purchaser in accordance with the terms and conditions of the Purchase Agreement and the Sale Order.

3.2    **Priority Tax Claims**.

Each Holder of an Allowed Priority Tax Claim shall be paid (a) on the Distribution Date, an amount, in Cash, by the Liquidating Trustee out of the Liquidating Trust Assets equal to the Allowed Amount of its Priority Tax Claim, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Liquidating Trustee, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

3.3    **DIP Loan Claims**.

The DIP Lender shall be paid, on the Closing Date, an amount, in Cash, by the Debtor out of the Sale Proceeds equal to the Allowed Amount of its DIP Loan Claims. By no later than the Voting Deadline, the DIP Lender shall file an affidavit with the Bankruptcy Court setting forth the calculation of the DIP Loan Claims. The Confirmation Order shall set forth the Allowed Amount of the DIP Loan Claims.

## ARTICLE 4
## DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Equity Interests. A Claim or Equity Interest (a) is classified in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and (b) is classified in a different Class to the extent the Claim or Equity Interest qualifies within the

description of that different Class. For purposes of the Plan, the Claims and Equity Interests are classified as follows:

4.1   **Class 1: Priority Claims**.

    Class 1 consists of all Priority Claims.

4.2   **Class 2: Secured Claims and Other Claims of Wells Fargo**.

    Class 2 consists of all of the Wells Fargo Prepetition Claims.

4.3   **Class 3: Secured Tax Claims of Governmental Units**.

    Class 3 consists of all Secured Tax Claims of Governmental Units.

4.4   **Class 4: Other Secured Claims**.

    Class 4 consists of all Secured Claims not otherwise specifically classified in the Plan. In the event there is more than one Secured Claim in this Class, such Secured Claims shall be separated into subclasses in Class 4.

4.5   **Class 5: Unsecured Convenience Claims**.

    Class 5 consists of all Unsecured Convenience Claims.

4.6   **Class 6: Unsecured Claims (Unsecured Claims Not Otherwise Classified)**.

    Class 6 consists of all Unsecured Claims not otherwise classified in the Plan.

4.7   **Class 7: Intercompany Claims**.

    Class 7 consists of all Intercompany Claims.

4.8   **Class 8: Subordinated Securities Claims**.

    Class 8 consists of all Subordinated Securities Claims.

4.9   **Class 9: Series A Preferred Stock**.

    Class 9 consists of all Series A Preferred Stock.

4.10   **Class 10: Series B Preferred Stock**.

    Class 10 consists of all Series B Preferred Stock.

4.11    **Class 11: Series C Preferred Stock**.

Class 11 consists of all Series C Preferred Stock.

4.12    **Class 12: Equity Interests**.

Class 12 consists of all Equity Interests.

4.13    **Class 13: Subsidiary Equity Interests**.

Class 13 consists of all Subsidiary Equity Interests.

## ARTICLE 5
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

Claims and Equity Interests shall be treated under the Plan in the manner set forth in this Article 5. Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever) and Allowed Equity Interests.

5.1    **Unclassified Claims**.

Holders of Allowed Administrative Expense Claims and Allowed Priority Tax Claims and the DIP Lender (with respect to the DIP Loan Claims) shall receive the treatment set forth in Article 3 of the Plan.

5.2    **Class 1: Priority Claims**.

Class 1 consists of all Priority Claims. Each Holder of an Allowed Priority Claim shall be paid (a) on the Distribution Date, an amount, in Cash, by the Liquidating Trustee out of the Liquidating Trust Assets equal to the Allowed Amount of its Priority Claim in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, (b) under such other terms as may be agreed upon by both the Holder of such Allowed Priority Claim and the Liquidating Trustee, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court. Class 1 is Unimpaired by the Plan. Each Holder of an Allowed Priority Claim in Class 1 conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

5.3    **Class 2: Secured Claims and Other Claims of Wells Fargo**.

Class 2 consists of all of the Wells Fargo Prepetition Claims. By no later than the Voting Deadline, Wells Fargo shall file an affidavit with the Bankruptcy Court setting forth the calculation of the Wells Fargo Prepetition Claims. The Confirmation Order shall set forth the Allowed Amount of the Wells Fargo Prepetition Claims (the "Wells Fargo Allowed Secured Claim"). Pursuant to the

Sale Order and the Plan, the Wells Fargo Allowed Secured Claim shall be paid in full in connection with the Closing under the Purchase Agreement. As of the Closing, without any further action by any party, and to the extent not already released, the Liens that secure the Class 2 Claims shall be deemed released, null and void, and unenforceable for all purposes. Any Proof of Claim filed by Wells Fargo with respect to the Class 2 Claims (or any Claim related thereto and listed in the Schedules) shall be deemed stricken and disallowed in its entirety as of the Closing. Class 2 is Unimpaired by the Plan. Wells Fargo, as the Holder of the Class 2 Claims, conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

5.4     **Class 3: Secured Tax Claims of Governmental Units**.

Class 3 consists of all Secured Tax Claims of Governmental Units. On the Distribution Date, the Liquidating Trustee shall pay to a Governmental Unit, in Cash, out of the Liquidating Trust Assets, the Allowed Amount of its Secured Tax Claim. Class 3 is Unimpaired by the Plan. Each Holder of a Class 3 Claim conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

5.5     **Class 4: Other Secured Claims**.

Class 4 consists of all Secured Claims not otherwise specifically classified in the Plan. In the event there is more than one Secured Claim in this Class, such Secured Claims shall be separated into subclasses in Class 4. Within thirty (30) days following the Effective Date, the Liquidating Trustee shall either (a) return to the Secured Creditor any Property securing its Secured Claim in full satisfaction of such Secured Claim, or (b) pay the Allowed Amount of the Secured Claim in full, out of the Liquidating Trust Assets, in accordance with the terms of any agreement governing such Secured Claim. If the obligation comprising the Secured Claim is assumed in connection with the Purchase Agreement as approved and authorized by entry of the Sale Order, the Class 4 Claim shall be deemed fully satisfied, settled, released, extinguished and discharged. Any deficiency owing to a Secured Creditor with respect to a Class 4 Claim shall be classified and treated as a Class 6 Unsecured Claim to the extent Allowed by a Final Order of the Bankruptcy Court. Class 4 is Unimpaired by the Plan. Each Holder of a Class 4 Claim conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

5.6     **Class 5: Unsecured Convenience Claims**.

5.6.1     Class 5 consists of all Unsecured Convenience Claims. Notwithstanding anything to the contrary contained in the Plan, each Holder of a Class 6 Unsecured Claim (i) in an amount greater than $_____ may have its Unsecured Claim treated as an Unsecured Convenience Claim under the Plan by making the Convenience Class Opt-In Election, or (ii) in an amount less than or equal to $_____ may have its Unsecured Claim treated as a Class 6 Unsecured Claim under the Plan by making the Convenience Class Opt-Out Election. The Convenience Class Opt-In Election or the Convenience Class Opt-Out Election is irrevocable and must be made by such Holder on the Ballot and filed with the Bankruptcy Court on or before the Voting Deadline.

5.6.2     On the Distribution Date, the Holder of an Allowed Unsecured Convenience Claim shall receive Cash from the Liquidating Trustee, out of the Liquidating Trust Assets, in an amount

equal to (a) _____ percent ( _____ %) of the amount of such Allowed Claim if the amount of such Allowed Claim is less than or equal to $_____, or (b) $____ if the amount of such Allowed Claim is greater than $_____ and the Holder of such Allowed Claim has agreed to reduce the Allowed Amount of its Claim to $_____ by making the Convenience Class Opt-In Election. With respect to a Class 5 Claim, the "Distribution Date" shall mean the date which is as soon as reasonably practicable (as determined by the Liquidating Trustee) after the later to occur of (a) the Effective Date or (b) thirty (30) days after the date the order of the Bankruptcy Court allowing any such Claim as an Unsecured Convenience Claim becomes a Final Order.

5.6.3    Class 5 is Impaired by the Plan. Each Holder of an Unsecured Convenience Claim in Class 5 is entitled to vote to accept or reject the Plan.

## 5.7    **Class 6:  Unsecured Claims (Unsecured Claims Not Otherwise Classified)**.

5.7.1    Class 6 consists of all Unsecured Claims not otherwise classified in the Plan, including any Unsecured Claim in the amount of $_____ or less to the extent the Holder thereof has made the Convenience Class Opt-Out Election.

5.7.2    On the Distribution Date, each Holder of an Allowed Unsecured Claim in Class 6 shall receive such Holder's Pro Rata Share of the Liquidating Trust Assets.  The timing and procedures for, and amount of, Distributions to Holders of Allowed Class 6 Claims shall be in accordance with Article 9 of the Plan and the Confirmation Order.

5.7.3    Class 6 is Impaired by the Plan. Each Holder of an Unsecured Claim in Class 6 is entitled to vote to accept or reject the Plan.

## 5.8    **Class 7: Intercompany Claims**.

Class 7 consists of all Intercompany Claims. On the Effective Date, all of the Intercompany Claims shall be deemed cancelled, annulled and extinguished without any further action by any party and shall be of no further force and effect, as the amount of any Intercompany Claims held by any Subsidiary is less than the amount of any claim the Debtor has against such Subsidiary. The Holders of the Class 7 Intercompany Claims will not receive or retain any Property under the Plan on account of such Intercompany Claims. Accordingly, the Liquidating Trustee will not make any Distribution or establish any reserve under the Plan for the Intercompany Claims.  The treatment set forth in this Article 5.8 shall have no effect on any claim that the Debtor may have against any of the Subsidiaries. Class 7 is Impaired by the Plan.  Pursuant to Section 1126(g) of the Bankruptcy Code, Class 7 is deemed not to have accepted the Plan and, thus, the Holders of the Class 7 Intercompany Claims are not entitled to vote to accept or reject the Plan.

## 5.9    **Class 8: Subordinated Securities Claims**.

5.9.1    Class 8 consists of all Subordinated Securities Claims. Pursuant to Section 510(b) of the Bankruptcy Code, each Allowed Class 8 Claim, if any, shall be subordinated to all Claims (including Class 6 Unsecured Claims) or Equity Interests that are senior to or equal to the Claim or Equity Interest represented by the Security of the Debtor in question; provided, however, that if such

Security is Preferred Stock such Allowed Class 8 Claim shall have the same priority as that provided herein for such Class of Preferred Stock; provided further, however, that if such Security is Existing Common Stock, such Allowed Class 8 Claim shall have the same priority as Class 12 Equity Interests.

5.9.2    Under the Plan, each Holder of an Allowed Class 8 Claim will receive a Distribution, in Cash, in an amount equal to one hundred percent (100%) of such Holder's Allowed Class 8 Claim. Such Distribution will be made to such Holder by the Liquidating Trustee on the Distribution Date and only after the payment in full of the Allowed Claims of any and all Classes hereinabove.

5.9.3    Class 8 is Impaired by the Plan. Each Holder of a Subordinated Securities Claim in Class 8 is entitled to vote to accept or reject the Plan.

5.10    **Class 9: Series A Preferred Stock**.

5.10.1  Class 9 consists of all Series A Preferred Stock.

5.10.2  On the Distribution Date and only after the payment in full of the Allowed Claims of any and all of the Classes of Claims hereinabove, each Holder of Series A Preferred Stock shall receive the distribution (in amount and priority) such Holder is entitled to under the Certificate of Incorporation of the Debtor.

5.10.3  Class 9 is Impaired by the Plan. Each Holder of Series A Preferred Stock is entitled to vote to accept or reject the Plan.

5.11    **Class 10: Series B Preferred Stock**.

5.11.1  Class 10 consists of all Series B Preferred Stock.

5.11.2  On the Distribution Date and only after the payment in full of the Allowed Claims of any and all of the Classes of Claims hereinabove, each Holder of Series B Preferred Stock shall receive the distribution (in amount and priority) such Holder is entitled to under the Certificate of Incorporation of the Debtor.

5.11.3  Class 10 is Impaired by the Plan. Each Holder of Series B Preferred Stock is entitled to vote to accept or reject the Plan.

5.12    **Class 11: Series C Preferred Stock**.

5.12.1  Class 11 consists of all Series C Preferred Stock.

5.12.2  On the Distribution Date and only after the payment in full of the Allowed Claims of any and all of the Classes of Claims hereinabove, each Holder of Series C Preferred Stock shall receive the distribution (in amount and priority) such Holder is entitled to under the Certificate of Incorporation of the Debtor.

5.12.3 Class 11 is Impaired by the Plan. Each Holder of Series C Preferred Stock is entitled to vote to accept or reject the Plan.

## 5.13 **Class 12: Equity Interests**.

Class 12 consists of all Equity Interests. On the Effective Date, all of the Class 12 Equity Interests shall be deemed cancelled, annulled, extinguished and surrendered without any further action by any party and shall be of no further force and effect. The Holders of the Class 12 Equity Interests will not receive or retain any Property or equity interest under the Plan on account of such Equity Interests. Accordingly, the Liquidating Trustee will not make any Distribution or establish any reserve under the Plan for the Class 12 Equity Interests. Class 12 is Impaired by the Plan. Pursuant to Section 1126(g) of the Bankruptcy Code, Class 12 is deemed not to have accepted the Plan and, thus, the Holders of the Class 12 Equity Interests are not entitled to vote to accept or reject the Plan.

## 5.14 **Class 13: Subsidiary Equity Interests**.

Class 13 consists of all Subsidiary Equity Interests. The Subsidiary Equity Interests will not be affected by the Plan and the Reorganized Debtor or the Liquidating Trustee will retain the Subsidiary Equity Interests. No Distributions will be made under the Plan on account of the Subsidiary Equity Interests. Class 13 is Unimpaired by the Plan. The Debtor, as the Holder of the Class 13 Subsidiary Equity Interests, conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

## ARTICLE 6
## ACCEPTANCE OR REJECTION OF THE PLAN

## 6.1 **Each Impaired Class Entitled to Vote Separately**.

Except as otherwise provided in Article 6.4, the Holders of Claims or Equity Interests in each Impaired Class of Claims or Impaired Class of Equity Interests shall be entitled to vote separately to accept or reject the Plan.

## 6.2 **Acceptance by Impaired Classes**.

Classes 5, 6, 8, 9, 10 and 11 are Impaired under the Plan, and Holders of Claims and Equity Interests in such Classes are entitled to vote to accept or reject the Plan. Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan. Pursuant to Section

1126(d) of the Bankruptcy Code, an Impaired Class of Equity Interests shall have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

6.3    **Presumed Acceptance of Plan by Unimpaired Classes**.

Classes 1, 2, 3, 4 and 13 are Unimpaired under the Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, such Classes and the Holders of Claims and Equity Interests in such Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan. Accordingly, votes of Holders of Claims and Equity Interests in such Classes are not being solicited by the Debtor. Except as otherwise expressly provided in the Plan, nothing contained herein or otherwise shall affect the rights and legal and equitable claims or defenses of the Debtor or the Liquidating Trustee in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

6.4    **Deemed Non-Acceptance of Plan**.

Holders of Class 7 Intercompany Claims and Class 12 Equity Interests will not receive or retain any Property or equity interest under the Plan on account of such Intercompany Claims and Equity Interests and, therefore, Classes 7 and 12 are deemed not to have accepted the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Accordingly, votes of Holders of Class 7 Intercompany Claims and Class 12 Equity Interests are not being solicited by the Debtor.

6.5    **Impairment Controversies**.

If a controversy arises as to whether any Claim or Equity Interest, or any Class of Claims or Class of Equity Interests, is Impaired under the Plan, such Claim, Equity Interest or Class shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Equity Interest, or a particular Class of Claims or Class of Equity Interests, under the Plan.

**ARTICLE 7**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

7.1    **Assumption or Rejection of Executory Contracts and Unexpired Leases**.

Pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtor and another Person or Entity and listed on Exhibit A attached hereto (collectively, the "Assumed Contracts") shall be deemed assumed by the Debtor as of the Effective Date; provided, however, that the Debtor reserves the right, on or prior to the Confirmation Date, to amend Exhibit A to add any executory contract or unexpired lease thereto or to delete any executory contract or unexpired lease therefrom, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be assumed (if added) or rejected (if deleted). The Debtor shall provide notice of any amendments to Exhibit A to the parties to the executory

contracts and unexpired leases affected thereby. The listing of a document on Exhibit A shall not constitute an admission by the Debtor that such document is an executory contract or an unexpired lease or that the Debtor has any liability thereunder. Any other executory contract or unexpired lease that exists between the Debtor and another Person or Entity and that has not been expressly assumed or rejected by the Debtor with the Bankruptcy Court's approval on or prior to the Confirmation Date shall be deemed rejected by the Debtor as of the Confirmation Date, including any executory contract or unexpired lease that has been rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date or as to which a motion for approval of the rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date (all of the foregoing, collectively, the "Rejected Contracts").

7.2    **Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases**.

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (i) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article 7.1 hereof, (ii) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Article 7.1 hereof, and (iii) the extension of time, pursuant to Section 365(d)(4) of the Bankruptcy Code, within which the Debtor may assume, assume and assign, or reject any unexpired lease of nonresidential real property through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such unexpired lease. The assumption by the Debtor of an Assumed Contract shall be binding upon any and all parties to such Assumed Contract as a matter of law, and each such Assumed Contract shall be fully enforceable in accordance with its terms, except as modified by the provisions of the Plan or an order of the Bankruptcy Court.

7.3    **Inclusiveness.**

Unless otherwise specified on Exhibit A, each executory contract and unexpired lease listed or to be listed on Exhibit A shall include modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on Exhibit A.

7.4    **Cure of Defaults.**

Any lessor or other party to an Assumed Contract (except those lessors or other parties whose leases or executory contracts have been previously assumed by a Final Order of the Bankruptcy Court) asserting a Cure Claim in connection with the assumption of any unexpired lease or executory contract under Article 7.1, as contemplated by Section 365(b) of the Bankruptcy Code, must file such Cure Claim with the Bankruptcy Court on or before the Cure Claim Submission Deadline asserting all alleged amounts accrued or alleged defaults through the Effective Date. Any lessor or other party to an Assumed Contract failing to submit a Cure Claim by the Cure Claim Submission Deadline shall be forever barred from asserting, collecting or seeking to collect any amounts or defaults relating thereto against the Debtor or the Liquidating Trustee. The Liquidating Trustee shall have thirty (30) days from the Effective Date to file an objection to any Cure Claim. Any disputed Cure

Claims shall be resolved either consensually or by the Bankruptcy Court. Except as may otherwise be agreed to by the parties, within thirty (30) days after the Effective Date, the Liquidating Trustee shall cure any and all undisputed Cure Claims. All disputed Cure Claims shall be cured either within five (5) Business Days after the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto or as may otherwise be agreed to by the parties.

## 7.5    **Claims under Rejected Executory Contracts and Unexpired Leases.**

Unless otherwise ordered by the Bankruptcy Court, any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease or such Claim shall be forever barred and unenforceable against the Debtor and/or the Liquidating Trustee. With respect to any executory contract or unexpired lease rejected pursuant to the Plan, the Bar Date for filing rejection damage Claims with the Bankruptcy Court shall be thirty (30) days after the Effective Date. Such Claims, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed Unsecured Claims in Class 6. Any such Claims that become Disputed Claims shall be Disputed Claims in Class 6 for purposes of administration of Distributions under the Plan to Holders of Allowed Unsecured Claims in Class 6. The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

## 7.6    **Insurance Policies.**

All of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto are treated as executory contracts under the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or the Liquidating Trust may hold against any Person or Entity, including the insurers under any of the Debtor's insurance policies or under the D&O Policy.

## 7.7    **Indemnification Rights.**

All Claims for Indemnification Rights against the Debtor by an Indemnitee for defense and indemnification shall be reinstated against the Liquidating Trust and rendered Unimpaired to the extent that such Indemnitee is entitled to defense or indemnification under applicable law, agreement or past policy of the Debtor, but only to the extent that any such reinstated Claim for defense and indemnification in response to a claim against such Indemnitee is covered under any of the Debtor's insurance policies, including the D&O Policy. The reinstated Claim against the Liquidating Trust, and the Liquidating Trust's corresponding defense and indemnification obligation, shall not be for any deductible or self-insured retention amount and shall not exceed the amount of available insurance coverage.

## ARTICLE 8
## MEANS OF IMPLEMENTATION OF THE PLAN

8.1    **General Overview of the Plan**.

The Plan provides for the sale of substantially all of the assets of the Debtor (or, in the alternative, the sale of the New Equity Interest in the Debtor) to the Purchaser or such other winning bidder as approved by order of the Bankruptcy Court. On the Closing Date, substantially all of the Debtor's assets (or, in the alternative, the New Equity Interest) will be sold to the Purchaser. Thus, the Plan provides for either the liquidation or the reorganization of the Debtor and for Cash payments to Holders of Allowed Claims primarily out of the Sale Proceeds received by the Debtor under the Purchase Agreement. On the Closing Date, the DIP Loan Claims of Wells Fargo and the Wells Fargo Allowed Secured Claim in Class 2 will be paid in full from the Sale Proceeds. Thereafter, the net Sale Proceeds following payment to Wells Fargo will be transferred into the Liquidating Trust, which will be managed by the Liquidating Trustee who will implement the terms of the Plan, including making Distributions to Creditors.

The Plan provides for Cash payments to be made by the Liquidating Trustee to Holders of Allowed Claims out of the Liquidating Trust Assets. The source of the funds to make such Cash payments will primarily be the Sale Proceeds. At the present time, the Debtor is unable to predict with certainty the ultimate amount of the Sale Proceeds which will result from a sale of the Debtor's assets (or, in the alternative, the sale of the New Equity Interest in the Debtor). It is contemplated, however, that the Sale Proceeds will be in an amount sufficient to (i) fund in full, in Cash, the expected payments required under the Plan to the Holders of Allowed Administrative Expense Claims (including Allowed Administrative Expense Claims of Professionals), the DIP Loan Claims, Allowed Priority Tax Claims, Allowed Priority Claims, the Secured Claims of Wells Fargo in Class 2, the Allowed Secured Tax Claims of Governmental Units in Class 3, the Allowed Other Secured Claims in Class 4, and the Allowed Unsecured Convenience Claims in Class 5, and (ii) provide a Distribution to the Holders of Allowed Unsecured Claims in Class 6. Each Holder of an Allowed Class 8 Claim will receive a Distribution, in Cash, in an amount equal to the sum of one hundred percent (100%) of such Holder's Allowed Class 8 Claim; provided that, such Distribution will be made to such Holder only after the payment of the Claims of any and all Classes higher in priority under the Plan. The Debtor does not expect there will be any Class 8 Claims. As of the Effective Date, all of the Class 7 Intercompany Claims and the Class 12 Equity Interests will automatically be deemed cancelled, annulled, and extinguished without any further action by any party and will be of no further force and effect. The Holders of the Class 7 Intercompany Claims and the Class 12 Equity Interests will not receive any Distribution or retain any Property or equity interest under the Plan on account of such Intercompany Claims and Equity Interests. As of the Distribution Date and only after the payment of the Allowed Claims of any and all Classes of higher priority, each Holder of Preferred Stock in Class 9, Class 10, and Class 11 shall receive, to the extent of available funds, a distribution (in amount and priority) to which such Holders are entitled under the Certificate of Incorporation of the Debtor. Class 13 Subsidiary Equity Interests will not receive any Distribution under the Plan.

8.2 **Summary of Purchase Agreement**.

As noted in the "Introductory Statement" on page ii hereinabove, as of the date of the filing of this Plan and the accompanying Disclosure Statement, the Debtor is in the process of marketing its business to prospective purchasers. Accordingly, the Debtor intends to make significant modifications to the Plan and the Disclosure Statement upon entering into a definitive agreement with a purchaser. Such modifications will include a brief summary of the material terms of a definitive agreement with a purchaser.

8.3 **Effective Date Transactions**.

8.3.1 Subject to the approval of the Bankruptcy Court and the satisfaction or waiver of the conditions precedent to the occurrence of the Effective Date contained in Article 10.2 of the Plan, on or as of the Effective Date, the Plan shall be implemented and the following actions shall occur in the following order:

8.3.1.1 the Closing shall occur under the Purchase Agreement, including the payment to Wells Fargo of the amounts provided herein;

8.3.1.2 the appointment of the Liquidating Trustee shall become effective;

8.3.1.3 the Debtor and the Liquidating Trustee shall execute the Liquidating Trust Agreement;

8.3.1.4 the Liquidating Trustee shall be automatically substituted for the Debtor as a party to all contested matters, adversary proceedings, claims, administrative proceedings and lawsuits, both within and outside of the Bankruptcy Court, involving the Retained Assets, Claims against the Debtor, the Causes of Action, and the resolution of Disputed Claims;

8.3.1.5 all of the Retained Assets shall be transferred to the Liquidating Trust; and

8.3.1.6 the Committee shall cease to exist.

8.4 **Liquidating Trust**.

On the Effective Date, the Liquidating Trust shall be established and the Debtor or the Reorganized Debtor, as the case may be, shall thereafter transfer all of its rights, title and interests in the Retained Assets to the Liquidating Trust free and clear of all Liens, including any and all Claims of Wells Fargo. The Liquidating Trust shall be a distinct legal entity from the Debtor and the Reorganized Debtor, each of which shall have no liability whatsoever for any obligations of the Liquidating Trust except as otherwise provided for in the Plan, the Liquidating Trust or otherwise. The Liquidating Trust is intended to quality as a qualified settlement fund pursuant to Internal Revenue Code Section 468B. The terms for the operation of the Liquidating Trust shall be set forth

in the Liquidating Trust Agreement which shall be finalized on or before the Effective Date. Documents establishing the Liquidating Trust will be filed by amendment to the Plan.

On the Effective Date, all Unsecured Claims shall be automatically channeled, transferred and attached solely and exclusively to the Liquidating Trust, and the sole and exclusive right and remedy available to Unsecured Creditors shall be the entitlement, in accordance with the Plan and the Liquidating Trust Agreement, to assert Unsecured Claims solely and exclusively against the Liquidating Trust and the Liquidating Trust Assets. The transfer to, vesting in and assumption by the Liquidating Trust of the Liquidating Trust Assets, as contemplated in the Plan and the Liquidating Trust Agreement, shall, as of the Effective Date, discharge, release and extinguish all obligations and Liabilities of the Debtor and the Reorganized Debtor for and in respect of all Unsecured Claims. The Liquidating Trust shall assume sole responsibility and liability for all Unsecured Claims and such Unsecured Claims shall be paid from the Liquidating Trust Assets as described in this Plan. The Confirmation Order shall contain appropriate language incorporating the foregoing and permanently enjoining any Holder of an Unsecured Claim from taking any action in violation of this Article 8.4. The entry of the Confirmation Order will act as a full and complete discharge of all Claims, Debts, Liabilities, and/or interests arising from, relating to or in connection with Unsecured Claims, except to the extent that the Liquidating Trust Agreement or the Plan provides a mechanism for the payment or resolution thereof.

8.5   **Corporate Existence; Dissolution**.

The corporate existence of the Debtor will be determined based on terms of the Purchase Agreement, that is whether the Purchase Agreement contemplates (a) a sale of assets or (b) a sale of New Equity Interest.

8.6   **Corporate Action**.

All matters provided for under the Plan involving the corporate structure of the Debtor, or any corporate action to be taken by or required of the Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the stockholders or Board of Directors of the Debtor.

8.7   **Selection, Duties and Compensation of the Liquidating Trustee**.

8.7.1   The initial Liquidating Trustee shall be selected by the Debtor with the approval of the Committee.

8.7.2   The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan and in the Confirmation Order. The responsibilities of the Liquidating Trustee shall include (i) the receipt, management, supervision, and protection of the Sale Proceeds on behalf of and for the benefit of the Creditors; (ii) the pursuit of objections to Claims and estimations and settlements of Disputed Claims; (iii) the investigation, analysis, prosecution and, if necessary and appropriate, compromise of the claims and Causes of Action included among the Retained Assets; (iv) the calculation and implementation of all Distributions to be made under the

Plan to Holders of Allowed Claims; (v) the marketing, selling, leasing, or otherwise disposing of any of the Retained Assets; (vi) filing all required tax returns and paying taxes and all other obligations of the Liquidating Trust; and (vii) such other responsibilities as may be vested in the Liquidating Trustee pursuant to the Plan or the Liquidating Trust Agreement, by orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan.

8.7.3    Compensation to the Liquidating Trustee shall be as determined in the Confirmation Order.

8.7.4    The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of his duties unless otherwise ordered by the Bankruptcy Court. If otherwise so ordered, all costs and expenses of procuring any such bond shall be paid out of the Liquidating Trust Assets.

8.7.5    The Liquidating Trustee shall serve from and after the Effective Date until his successor is duly appointed and qualified or until his or her earlier death, resignation or removal. In the event of the death, resignation or removal of the Liquidating Trustee, any successor thereto shall be appointed as set forth in the Liquidating Trust Agreement following notice to the Notice Parties and a hearing before the Bankruptcy Court.

## 8.8    **Dissolution of the Committee**.

The Committee shall be deemed dissolved on the Effective Date and the members of the Committee shall be deemed discharged from all rights, duties and liabilities arising from, or related to, the Bankruptcy Case.

## 8.9    **Section 1146 Exemption**.

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any Security, or the making, delivery or recording of any instrument of transfer, pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or the vesting, re-vesting, transfer or sale of any Property of, by or in the Debtor, its Estate or the Liquidating Trust pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## 8.10    **Effectuating Documents; Further Transactions**.

Each of the president or secretary of the Debtor, prior to the Effective Date (and the Liquidating Trustee on and after the Effective Date), shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, and take

such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law.

## 8.11 **Pursuit of Causes of Action**.

8.11.1 On the Effective Date, the Causes of Action shall be vested in the Liquidating Trust, except to the extent a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Plan or by a Final Order of the Bankruptcy Court. The Causes of Action shall be pursued by the Liquidating Trustee. The Debtor is currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Debtor states that any party in interest that engaged in business or other transactions with the Debtor Prepetition or that received payments from the Debtor Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation. The Liquidating Trust Assets will fund the expenses of the Liquidating Trustee to pursue the Causes of Action, including fees of counsel for the Liquidating Trustee.

8.11.2 No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE LIQUIDATING TRUSTEE AND THE LIQUIDATING TRUST. Creditors are advised that legal rights, claims and rights of action the Debtor may have against them, if they exist, are retained under the Plan for prosecution unless a Final Order of the Bankruptcy Court authorizes the Debtor to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtor or the Liquidating Trustee does not possess or does not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of the Liquidating Trust and the Debtor's Creditors. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement; nor shall the Liquidating Trust, as a result of such failure, be estopped or precluded under any theory from pursuing such Causes of Action. Nothing in the Plan operates as a release of any of the Causes of Action.

8.11.3 The Debtors do not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Liquidating Trustee will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically

identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect which would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

8.11.4 The Debtor and the Liquidating Trustee reserve all rights under Section 506(c) of the Bankruptcy Code with respect to any and all Secured Claims.

8.11.5 The Liquidating Trust shall remain open, even if the Bankruptcy Case shall have been closed, as to any and all Causes of Action until such time as the Causes of Action have been fully administered and the Causes of Action Recoveries have been received by the Liquidating Trustee.

8.12 **Exclusivity Period**.

The Debtor will retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the Effective Date.

## ARTICLE 9
## PROVISIONS GOVERNING DISTRIBUTIONS

9.1 **Cash Distributions**.

Within the times provided elsewhere in the Plan, the Liquidating Trustee shall make the Cash distributions required by the Plan to the Holders of Allowed Claims and Allowed Equity Interests.

9.2 **Determination of Claims**.

9.2.1 From and after the Effective Date, the Liquidating Trustee shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate to judgment all objections to Claims. Except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than one hundred twenty (120) days following the Effective Date (unless such period is extended by the Bankruptcy Court upon motion of the Debtor or the Liquidating Trustee), and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve notice of any request to the Bankruptcy Court for allowance to file late Unsecured Claims on (i) the Liquidating Trustee and (ii) such other parties as the Bankruptcy Court may direct. If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as a Class 6 Unsecured Claim. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) ninety (90) days following the Effective Date or (b) the date sixty (60) days after the Liquidating Trustee receives actual notice of the filing of such Claim.

9.2.2 Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtor or the Liquidating Trustee effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim.

9.2.3 Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Bankruptcy Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and Distribution. The Debtor or the Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

## 9.3     **Distributions as to Allowed Claims in Class 6**.

9.3.1     Each Holder of an Allowed Unsecured Claim in Class 6 shall receive, on the applicable Distribution Date (as determined by the Liquidating Trustee in its sole discretion), a Cash Distribution in the amount of such Holder's Pro Rata Share of the Liquidating Trust Assets.

9.3.2     Notwithstanding any provision herein to the contrary, no Distribution shall be made to the Holder of a Disputed Claim in Class 6 unless and until such Disputed Claim becomes an Allowed Claim. If, on any applicable Distribution Date, any Disputed Claims in Class 6 remain, then the Liquidating Trustee shall withhold from any such Distribution the amount of funds that would be necessary to make the same proportionate distribution to the Holders of all Class 6 Claims which are Disputed Claims as if each such Disputed Claim were an Allowed Class 6 Claim. At such time that such Disputed Claim becomes an Allowed Class 6 Claim, the Holder of such Allowed Class 6 Claim shall receive the Distribution to which such Holder is then entitled under the Plan.

9.3.3　Notwithstanding any provision herein to the contrary, if, on any applicable Distribution Date, the Holder of a Class 6 Claim is subject to a proceeding against it by the Liquidating Trustee, the Liquidating Trustee (in its sole discretion) may withhold a Distribution to such Holder until the final resolution of such proceeding.

9.3.4　A Distribution to a Holder of an Allowed Class 6 Claim shall be made at the address of such Holder set forth in the Schedules or on the books and records of the Debtor at the time of the Distribution, unless the Debtor or the Liquidating Trustee has been notified in writing of a change of address, including by the filing of a Proof of Claim or statement pursuant to Bankruptcy Rule 3003 by such Holder that contains an address for such Holder different than the address for such Holder as set forth in the Schedules. Neither the Debtor nor the Liquidating Trustee shall be liable for any Distribution sent to the address of record of a Holder in the absence of the written change thereof as provided herein.

9.4　**Unclaimed Distributions**.

9.4.1　If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder within thirty (30) days of the date such check was issued, then the Liquidating Trustee shall provide written notice to such Holder stating that, unless such Holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

9.4.2　If a check for a Distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to the Liquidating Trustee due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Liquidating Trustee as to such check within thirty (30) days of the date such Distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

9.4.3　Any unclaimed Distribution as described above shall become property of the Liquidating Trust Assets.

9.5　**Transfer of Claim**.

In the event that the Holder of any Claim shall transfer such Claim on and after the Effective Date, such Holder shall immediately advise the Liquidating Trustee in writing of such transfer and provide sufficient written evidence of such transfer. The Liquidating Trustee shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Liquidating Trustee shall have received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the

Liquidating Trustee shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

9.6    **One Distribution Per Holder**.

If the Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of Distributions hereunder, and only one Distribution shall be made with respect to the single aggregated Claim.

9.7    **Effect of Pre-Confirmation Distributions**.

Nothing in the Plan shall be deemed to entitle the Holder of a Claim that received, prior to the Effective Date, full or partial payment of such Holder's Claim, by way of settlement or otherwise, pursuant to an order of the Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Plan; and all such full or partial payments shall be deemed to be payments made under the Plan for purposes of satisfying the obligations of the Debtor or the Liquidating Trustee to such Holder under the Plan.

9.8    **No Interest on Claims**.

Except as expressly stated in the Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition interest or the payment of Postpetition interest, penalties, or late charges on account of such Allowed Claim for any purpose. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

9.9    **Compliance with Tax Requirements**.

In connection with the Plan, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, and all Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution.

**ARTICLE 10**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**OF THE PLAN AND THE EFFECTIVE DATE**

10.1    **Condition Precedent to Confirmation of the Plan**.

The following is a condition precedent to Confirmation of the Plan, which condition may be waived by the Debtor:

10.1.1 The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan.

10.2 **Condition Precedent to the Effective Date**.

The Plan shall not be consummated and the Effective Date shall not occur unless each of the following conditions has been satisfied following the Confirmation Date or waived by the Debtor:

10.2.1 The Confirmation Order shall be a Final Order.

10.2.2 All conditions precedent to the Closing under the Purchase Agreement shall have been satisfied or waived in accordance with the terms thereof.

10.3 **Effective Date Notice**.

Within ten (10) Business Days after the Effective Date, the Liquidating Trustee shall file a notice with the Bankruptcy Court designating the Effective Date and shall mail such notice to the Notice Parties.

## ARTICLE 11
## DISCHARGE, EXCULPATION FROM LIABILITY, AND GENERAL INJUNCTION

11.1 **Discharge of Claims and Termination of Equity Interests**.

Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of the Debtor and its Estate from any and all Debts of, Claims of any nature whatsoever against and Equity Interests in the Debtor that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date. Except as otherwise expressly provided in the Plan or in the Confirmation Order, but without limiting the generality of the foregoing, on the Effective Date, the Debtor, its successors or assigns, and its Estate shall be discharged, to the fullest extent permitted by applicable law, from any Claim or Debt that arose prior to the Effective Date and from any and all Debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of Claims or Equity Interests, shall be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor, its successors or assigns, and its Estate, or the assets or Properties of any of them, any other or further Claims, Debts, rights, causes of action, remedies, Liabilities or Equity Interests based upon any act, omission, document,

instrument, transaction, event, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan, and the Confirmation Order shall contain appropriate injunctive language to that effect. As of the Effective Date, Holders of cancelled Equity Interests shall have no rights arising from or relating to such Equity Interests, or the cancellation thereof. In accordance with the foregoing, except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall be a judicial determination of the discharge or termination of all such Claims and other Debts and Liabilities against, or Equity Interests in, the Debtor, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor, at any time, to the extent that such judgment relates to a discharged or terminated Claim, Liability, Debt or Equity Interest. Notwithstanding the foregoing, the Liquidating Trustee shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan. The provisions of this Article 11.1 shall also be applicable to the Reorganized Debtor and its Properties.

11.2  **Exculpation from Liability**.

**The Debtor and its Postpetition directors and officers (including the CRO) and Board, the Professionals for the Debtor (acting in such capacity), the Committee and its members, and the Professionals for the Committee (acting in such capacity) (collectively, the "Exculpated Parties") shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, the Purchase Agreement, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Case, in each case for the period on and after the Petition Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case. Any such claims shall be governed by the standard of care otherwise applicable to the standard of negligence claims outside of bankruptcy. The rights granted under this Article 11.2 are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under Section 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase or securities. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article 11.2 shall not release any of the Causes of Action.**

11.3  **General Injunction**.

**Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the**

**Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, Liability or Equity Interest that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated Claims, Debts, Liabilities, or Equity Interests, other than actions brought to enforce any rights or obligations under the Plan: (a) commencing or continuing in any manner any action or other proceeding against the Debtor or its Property or Estate; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or its Property or Estate; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor or its Property or Estate; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or its Estate; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor or its Estate under the Plan and the documents executed in connection therewith. The Debtor shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation. The provisions of this Article 11.3 shall also be applicable to the Reorganized Debtor and its Properties.**

11.4    **Term of Certain Injunctions and Automatic Stay**.

All injunctions or automatic stays provided for in the Bankruptcy Case pursuant to Sections 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect following the Confirmation Date and until the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

11.5    **No Liability for Tax Claims**.

Unless a taxing Governmental Unit has asserted a Claim against the Debtor before the Governmental Unit Bar Date or Administrative Expense Claim Bar Date established therefor, no Claim of such Governmental Unit shall be Allowed against the Debtor or its directors, officers or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of its Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period or (ii) an audit of any return for a period before the Petition Date.

## ARTICLE 12
## RETENTION OF JURISDICTION

12.1    **General Retention**.

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Bankruptcy Case is closed, the Bankruptcy Court shall retain the fullest and most

extensive jurisdiction of the Bankruptcy Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

12.2  **Specific Purposes**.

    In addition to the general retention of jurisdiction set forth in Article 12.1, after Confirmation of the Plan and until the Bankruptcy Case is closed, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case for the following specific purposes:

    12.2.1    to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any application for an Administrative Expense Claim, and to determine any and all objections to the allowance or priority of Claims or Equity Interests;

    12.2.2    to determine any and all cases, controversies, suits or disputes arising under or relating to the Bankruptcy Case, the Plan or the Confirmation Order (including regarding the effect of any discharge, exculpation, limitation of liability, or injunction provisions provided for herein or affected hereby and regarding whether the conditions to the consummation and/or Effective Date of the Plan have been satisfied);

    12.2.3    to determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under Section 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the Bankruptcy Case; provided, however, that this retention of jurisdiction shall not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of Professionals after Confirmation of the Plan unless an objection to such fees and expenses has been made by the Debtor;

    12.2.4    to determine any and all motions pending as of the date of the Confirmation Hearing (including pursuant to the Plan) for the rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to determine the allowance of any Claims resulting from the rejection thereof;

    12.2.5    to determine any and all motions, applications, adversary proceedings, contested or litigated matters, and any other matters involving the Debtor commenced in connection with, or arising during, the Bankruptcy Case and pending on the Effective Date, including approval of proposed settlements thereof;

    12.2.6    to enforce, interpret and administer the terms and provisions of the Plan;

    12.2.7    to modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

    12.2.8    to consider and act on the compromise and settlement of any Claim against or Equity Interest in the Debtor, the Estate or the Liquidating Trust;

12.2.9    to assure the performance by the Liquidating Trustee of his obligations under the Plan;

12.2.10    to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Disclosure Statement, the Plan, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

12.2.11    to enforce all orders, judgments, injunctions and rulings entered in connection with the Bankruptcy Case;

12.2.12    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

12.2.13    to review and approve any sale or transfer of assets or Property by the Debtor, including prior to or after the date of the Plan, and to determine all questions and disputes regarding such sales or transfers, including any disputes with respect to the Purchase Agreement;

12.2.14    to determine all questions and disputes regarding title to the assets of the Debtor, the Estate or the Liquidating Trust;

12.2.15    to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtor arising on or prior to the Effective Date or arising on account of transactions contemplated by the Plan;

12.2.16    to resolve any determinations which may be requested by the Debtor of any unpaid or potential tax liability or any matters relating thereto under Sections 505 and 1146 of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the Effective Date;

12.2.17    to resolve any disputes concerning any exculpation of or limitation of liability as to a nondebtor hereunder or the injunction against acts, employment of process or actions against such nondebtor arising hereunder;

12.2.18    to determine any and all matters, disputes and proceedings relating to the Causes of Action, whether arising before or after the Effective Date;

12.2.19    to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

12.2.20 to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

12.2.21 to determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, or the Confirmation Order;

12.2.22 to enter such orders as are necessary to implement and enforce the injunctions described herein;

12.2.23 to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications to, or to enforce the obligations of the Purchaser, the Debtor or any other party relating to or arising under, the Purchase Agreement and the Sale Order, as may be necessary or appropriate to carry out the purposes and intent of the Purchase Agreement and the Sale Order;

12.2.24 to enforce the obligations of the Purchaser under the Purchase Agreement;

12.2.25 to determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

12.2.26 to enter an order concluding and terminating the Bankruptcy Case.

12.3 **Closing of the Bankruptcy Case**.

In addition to the retention of jurisdiction set forth in Articles 12.1 and 12.2, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case to enter an order reopening the Bankruptcy Case after it has been closed.

## ARTICLE 13
## MODIFICATION OF PLAN AND CONFIRMATION OVER OBJECTIONS

13.1 **Modification of Plan**.

13.1.1 The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rules requirements.

13.1.2 After the entry of the Confirmation Order, the Debtor (prior to the Effective Date) or the Liquidating Trustee (on and after the Effective Date) may modify the Plan to remedy any defect or omission herein, or to reconcile any inconsistencies between the Plan and the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (a) the Debtor or the Liquidating Trustee (as the case may be) obtain Bankruptcy Court approval for such modification, after notice to the Notice Parties and a hearing, and (b) such modification does not materially adversely affect the interests, rights, or treatment of any Class of Claims under the Plan.

13.1.3    After the Confirmation Date and before substantial consummation of the Plan, the Debtor (prior to the Effective Date) or the Liquidating Trustee (on and after the Effective Date) may modify the Plan in a way that materially adversely affects the interests, rights, or treatment of a Class of Claims, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements; (b) the Debtor or the Liquidating Trustee (as the case may be) obtains Bankruptcy Court approval for such modification, after notice to the Notice Parties and a hearing; (c) such modification is accepted by at least two-thirds in dollar amount, and more than one-half in number, of Allowed Claims actually voting in each Class adversely affected by such modification; and (d) the Debtor or the Liquidating Trustee complies with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

13.1.4    Notwithstanding anything to the contrary contained in this Article 13.1 or elsewhere in the Plan, the Plan may not be altered, amended or modified without the written consent of the Debtor (prior to the Effective Date) or the Liquidating Trustee (on and after the Effective Date).

13.2    **Confirmation Over Objections**.

In the event any Impaired Class of Claims votes against the Plan, and the Plan is not revoked or withdrawn in accordance with Article 14.2, the Debtor hereby requests, and shall be allowed, to modify the terms of the Plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting Distributions to all Classes at or below the level of the objecting Class, or reallocating such Distributions, until such impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code. The Debtor may make such modifications or amendments to the Plan and such modifications or amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice prior to the Confirmation Hearing. No such modifications shall require any resolicitation of acceptances as to the Plan by any Class of Claims unless the Bankruptcy Court shall require otherwise. Notwithstanding any provision of the Plan to the contrary, the Debtor reserves any and all rights it may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

### ARTICLE 14
### MISCELLANEOUS PROVISIONS

14.1    **No Admissions**.

The Plan provides for the resolution, settlement and compromise of Claims against and Equity Interests in the Debtor. Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Debtor in any manner prior to the Effective Date.

14.2 **Revocation or Withdrawal of the Plan**.

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to (a) constitute a waiver or release of any Claims against, or Equity Interests in, the Debtor or any other Person, or (b) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

14.3 **Standard for Approval of the Bankruptcy Court**.

In the event any of the matters described herein are brought for approval before the Bankruptcy Court, then any such approval shall mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 debtor in possession.

14.4 **Further Assurances**.

The Debtor agrees, and is hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the terms and conditions of the Plan.

14.5 **Headings**.

The headings and table of contents used in the Plan are for convenience and reference only and shall not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

14.6 **Notices**.

All notices, requests or other communications in connection with, or required to be served by, the Plan shall be in writing and shall be sent by United States first class mail, postage prepaid, or by overnight delivery by a recognized courier service, and addressed as follows: (i) if to the Debtors, c/o Charles A. Postler, Esq., Stichter, Riedel, Blain & Prosser, P.A., 110 East Madison Street, Suite 200, Tampa, Florida 33602, (ii) if to the Committee, c/o Frank Terzo, Esq., GrayRobinson, 1221 Brickell Avenue, Suite 1600, Miami, Florida 33131, (iii) if to Wells Fargo, c/o Williams Brody, Esq., Buchalter Nemer, 1000 Wilshire Boulevard, Suite 1500, Los Angeles, California 90017-2457, and (iv) if to the Liquidating Trustee, c/o _____. Copies of all notices under the Plan to any party shall be given to each of the parties listed above contemporaneously with the giving of such notice. Any of the parties listed above may change the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court

14.7 **Governing Law**.

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

14.8 **Limitation on Allowance.**

No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim or Equity Interest except as otherwise specified in the Plan or as Allowed by a Final Order of the Bankruptcy Court.

14.9 **Estimated Claims**.

To the extent any Claim is estimated for any purpose other than for voting on the Plan, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

14.10 **Consent to Jurisdiction**.

Upon any default under the Plan, the Liquidating Trustee consents to the jurisdiction of the Bankruptcy Court and agrees that it shall be the preferred forum for all proceedings relating to any such default.

By accepting any Distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any Administrative Expense Claim, by voting on the Plan, by reason of being served with notice of the filing of the Bankruptcy Case or the Confirmation Hearing, or by entering an appearance in the Bankruptcy Case, all Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Debtor, the Plan or the Bankruptcy Case, including the matters and purposes set forth in Article 12 of the Plan. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 12 of the Plan.

14.11 **Setoffs**.

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor may, but shall not be required to, set off against any Claim and any Distribution to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtor or the Liquidating Trustee may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such claim that the Debtor or the Liquidating Trustee may have against the Holder of such Claim.

14.12 **Successors and Assigns**.

The rights, benefits, duties and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

14.13 **Modification of Payment Terms**.

The Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

14.14 **Entire Agreement**.

The Plan sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents. No Person or Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by such Person or Entity in writing.

14.15 **Severability of Plan Provisions**.

If, prior to Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term or provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

14.16 **Confirmation Order and Plan Control**.

To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, unless otherwise expressly provided in the Plan or the Confirmation Order, the Confirmation Order and the Plan shall control over the Disclosure Statement and any such agreement. The Confirmation Order (and any other Final Orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the Plan; provided, however, to the extent the Confirmation Order is inconsistent with the Plan, the Confirmation Order shall control over the Plan.

### 14.17  Computation of Time.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 14.18  Substantial Consummation.

The Plan shall be deemed to be substantially consummated within the meaning of Section 1101 of the Bankruptcy Code upon commencement by the Liquidating Trustee of the Distributions described in Article 9.1 of the Plan.

### 14.19  No Liability for Solicitation.

Pursuant to Section 1125(e) of the Bankruptcy Code, any Person that solicits acceptances or rejections of the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

Tampa, Florida
Dated as of September 23, 2011

Respectfully submitted,

TELTRONICS, INC.

By: _____
Ewen Cameron, President

/s/ Elena Paras Ketchum
Charles A. Postler (Florida Bar No. 455318)
Elena Paras Ketchum (Florida Bar No. 0129267)
STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone:    (813) 229-0144
Facsimile:    (813) 229-1811
Email:        cpostler@srbp.com
              eketchum@srbp.com
Counsel for Debtor and Debtor in Possession