# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

In re:                                    **Chapter 11**

**TELTRONICS, INC.,**                     **Case No. 8:11-bk-12150-KRM**

    **Debtor.**

_____/

## DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF TITLE 11, UNITED STATES CODE

STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
Charles A. Postler (Florida Bar No. 455318)
Elena Paras Ketchum (Florida Bar No. 0129267)
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone:    (813) 229-0144
Facsimile:    (813) 229-1811
Email:    cpostler@srbp.com
Email:    eketchum@srbp.com
Counsel for Debtor and Debtor in Possession

Tampa, Florida
Dated as of September 23, 2011

## Introductory Statement

**This Disclosure Statement and the accompanying Plan contemplate a sale of substantially all of the assets of (or, in the alternative, a new equity interest in) the Debtor. As of the date of the filing of the Plan and Disclosure Statement, the Debtor is in the process of marketing its business to prospective purchasers. Accordingly, the Debtor intends to make significant modifications to the Plan and the Disclosure Statement upon entering into a definitive agreement with a purchaser. The Debtor intends to file such modifications with the Bankruptcy Court at or before the hearing scheduled for October 21, 2011, at 2:30 p.m., to consider approval of the Disclosure Statement.**

THIS DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT") MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE DEBTOR'S PLAN OF REORGANIZATION UNDER CHAPTER 11 OF TITLE 11, UNITED STATES CODE DATED AS OF SEPTEMBER 23, 2011 (AS AMENDED FROM TIME TO TIME, THE "PLAN"), AND NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR SECURITIES LAWS OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTOR. ANY CREDITOR OR OTHER PARTY BUYING OR SELLING A CLAIM BASED ON THE INFORMATION CONTAINED HEREIN DOES SO AT ITS OWN RISK.

ALL CREDITORS AND HOLDERS OF EQUITY INTERESTS THAT ARE ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THE ENTIRE DISCLOSURE STATEMENT FURNISHED TO THEM AND THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT, PRIOR TO SUBMITTING A BALLOT PURSUANT TO THIS SOLICITATION. THE DESCRIPTION OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED AS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN ITSELF. EACH CREDITOR AND HOLDER OF AN EQUITY INTEREST SHOULD READ, CONSIDER AND CAREFULLY ANALYZE THE TERMS AND PROVISIONS OF THE PLAN.

**THE PLAN PROPOSES EXCULPATION FROM LIABILITY AS TO THE DEBTOR AND VARIOUS NON-DEBTOR PARTIES FOR CERTAIN POSTPETITION ACTIONS IN CONNECTION WITH THE BANKRUPTCY CASE, WHICH PROVISIONS WOULD ENJOIN THE DEBTOR, HOLDERS OF CLAIMS, HOLDERS OF EQUITY INTERESTS, AND OTHER PARTIES FROM PURSUING CERTAIN ACTIONS AGAINST SUCH PARTIES EXCEPT AS OTHERWISE PROVIDED IN THE PLAN. ALL CREDITORS, HOLDERS OF EQUITY INTERESTS AND OTHER PARTIES IN INTEREST ARE URGED TO READ CAREFULLY ARTICLE 11.2 OF THE PLAN ON EXCULPATION FROM LIABILITY.**

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE

SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. IN ADDITION, THE DISCLOSURE STATEMENT AND THE PLAN HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.

NO PERSON IS AUTHORIZED BY THE DEBTOR IN CONNECTION WITH THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED HERETO OR THE ACCOMPANYING DOCUMENTS INCORPORATED BY REFERENCE OR REFERRED TO HEREIN AND, IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR. SUCH ADDITIONAL REPRESENTATIONS SHOULD BE REPORTED TO BANKRUPTCY COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR ACTION AS MAY BE DEEMED APPROPRIATE. THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES IMPLY THAT THE INFORMATION HEREIN IS CORRECT AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF. THIS DISCLOSURE STATEMENT IS DATED AS OF SEPTEMBER 23, 2011, AND CREDITORS AND HOLDERS OF EQUITY INTERESTS ARE ENCOURAGED TO REVIEW THE DOCKET IN THE BANKRUPTCY CASE IN ORDER TO APPRISE THEMSELVES OF EVENTS WHICH OCCUR BETWEEN THE DATE OF THIS DISCLOSURE STATEMENT AND THE DATE OF THE CONFIRMATION HEARING.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THIS DISCLOSURE STATEMENT AND IN THE ACCOMPANYING PLAN CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT TO ANY OTHER PARTY. NONE OF THE ATTORNEYS, ACCOUNTANTS, OR OTHER PROFESSIONALS RETAINED BY THE DEBTOR MAKES ANY REPRESENTATIONS CONCERNING SUCH INFORMATION.

IN THE EVENT THAT ANY IMPAIRED CLASS OF CLAIMS OR EQUITY INTERESTS VOTES TO REJECT THE PLAN, (1) THE DEBTOR MAY ALSO SEEK TO SATISFY THE REQUIREMENTS FOR CONFIRMATION OF THE PLAN WITH RESPECT TO THAT CLASS UNDER THE BANKRUPTCY CODE'S "CRAMDOWN" PROVISIONS AND, IF REQUIRED, MAY AMEND THE PLAN TO CONFORM TO SUCH REQUIREMENTS, OR (2) THE PLAN MAY BE OTHERWISE MODIFIED OR WITHDRAWN.

THE REQUIREMENTS FOR CONFIRMATION, INCLUDING THE VOTE OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS TO ACCEPT THE PLAN AND CERTAIN OF THE STATUTORY FINDINGS THAT MUST BE MADE BY THE BANKRUPTCY COURT, ARE SET FORTH IN THE SECTION OF THIS DISCLOSURE STATEMENT TITLED "VOTING ON AND CONFIRMATION OF THE PLAN."

# TABLE OF CONTENTS

INTRODUCTION.......................................................................................................................1

PURPOSE OF THIS DISCLOSURE STATEMENT..................................................................2

VOTING INSTRUCTIONS ........................................................................................................2
    Who May Vote .........................................................................................................................2
    How to Vote .............................................................................................................................3
    Acceptance of Plan and Vote Required for Class Acceptance ................................................3
    Confirmation Hearing and Objections to Confirmation............................................................4

SUMMARY OF THE PLAN ......................................................................................................4
    Introduction..............................................................................................................................4
    Summary of Purchase Agreement............................................................................................5
    General Overview of the Plan..................................................................................................5
    Classification of Claims and Equity Interests ........................................................................6
    Summary of Plan Distributions...............................................................................................6
        *Administrative Expense Claims*..............................................................................7
        *Priority Tax Claims.* ...............................................................................................8
        *DIP Loan Claim* ....................................................................................................8
        *Class 1:  Priority Claims*........................................................................................8
        *Class 2:  Secured Claims and Other Claims of Wells Fargo Capital Finance, Inc.* ...........8
        *Class 3:  Secured Tax Claims of Governmental Units* .........................................9
        *Class 4:  Other Secured Claims*.............................................................................9
        *Class 5:  Unsecured Convenience Claims*..............................................................9
        *Class 6:  Unsecured Claims (Unsecured Claims Not Otherwise Classified)* ...................10
        *Class 7:  Intercompany Claims*.............................................................................10
        *Class 8:  Subordinated Securities Claims* ............................................................10
        *Class 9:  Series A Preferred Stock.* ......................................................................
        .............................................................................................................................10
        *Class 10:  Series B Preferred Stock*......................................................................11
        *Class 11:  Series C Preferred Stock*......................................................................11
        *Class 12: Equity Interests*.....................................................................................11
        *Class 13:  Subsidiary Equity Interests*..................................................................11
    Effective Date ........................................................................................................................11
        *Condition Precedent to the Effective Date* ...........................................................11
        *Notice of the Effective Date*..................................................................................12
    Treatment of Executory Contracts and Unexpired Leases......................................................12
    Assumption or Rejection of Executory Contracts and Unexpired Leases. ......................12
    Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases. ...12
    Cure of Defaults. ..................................................................................................................13
    Claims under Rejected Executory Contracts and Unexpired Leases. ...............................13
    Insurance Policies..................................................................................................................13
    Indemnification Rights..........................................................................................................14
    Causes of Action ..................................................................................................................14
    Discharge, Exculpation from Liability and Injunction Provisions under the Plan....................15
        Discharge of Claims and Termination of Equity Interests ................................................16

Exculpation from Liability ................................................................................16
General Injunction ...........................................................................................17
Term of Certain Injunctions and Automatic Stay ..........................................18
No Liability for Tax Claims ............................................................................18
Liquidating Trust ..................................................................................................18
Corporate Existence; Dissolution .........................................................................19
Corporate Action ..................................................................................................19
Section 1146 Exemption .......................................................................................19
Distributions under the Plan .................................................................................19
In General ........................................................................................................19
Determination of Claims .................................................................................20
Distributions as to Allowed Claims in Class 6 ...............................................21
Retention of Jurisdiction ......................................................................................21

HISTORY AND BUSINESS OF THE DEBTOR PRIOR TO THE CHAPTER 11 FILING; EVENTS
LEADING TO THE CHAPTER 11 FILING ...............................................................22
History and Business of Teltronics, Inc. .........................................................22
Events Leading to Chapter 11 Filing ..............................................................23

CERTAIN FEDERAL INCOME TAX CONSEQUENCES .........................................24
General ..................................................................................................................24
General Federal Income Tax Consequences to Holders ........................................24
In General. .......................................................................................................24
Tax Consequences to Holders .........................................................................24

VOTING ON AND CONFIRMATION OF THE PLAN .............................................25
Confirmation and Acceptance by All Impaired Classes ........................................25
Feasibility .........................................................................................................25
Best Interests Standard ....................................................................................27
Confirmation Without Acceptance by All Impaired Classes .................................27
Discriminate Unfairly. .....................................................................................27
Fair and Equitable Standard ...........................................................................27
Absolute Priority Rule ..........................................................................................28
Non-Confirmation of the Plan ..............................................................................28

ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ........28
Alternative Plans of Reorganization .....................................................................28
Liquidation under Chapter 7 or Chapter 11 ..........................................................28

SUMMARY, RECOMMENDATION AND CONCLUSION ...........................................29

## DISCLOSURE STATEMENT PURSUANT TO
## SECTION 1125 OF THE BANKRUPTCY CODE

### INTRODUCTION

Teltronics, Inc., as debtor and debtor in possession in the Bankruptcy Case (the "Debtor"), has filed with the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "Bankruptcy Court"), its Plan of Reorganization under Chapter 11 of Title 11, United States Code dated as of September23, 2011 (as amended from time to time, the "Plan"). This Disclosure Statement for Debtor's Plan of Reorganization under Chapter 11 of Title 11, United States Code dated as of September 23, 2011 (the "Disclosure Statement"), is submitted pursuant to Section 1125 of the Bankruptcy Code, 11 U.S.C. Section 101, et. seq. (the "Bankruptcy Code"), in connection with the solicitation of votes on the Plan from Holders of Impaired Claims against, and Impaired Equity Interests in, the Debtor and the hearing on Confirmation of the Plan scheduled for _____, at _____.

This Disclosure Statement has been conditionally approved by the Bankruptcy Court in accordance with Section 1125(b) of the Bankruptcy Code as containing information of a kind and in sufficient detail adequate to enable a hypothetical reasonable investor typical of Holders of Claims in the Voting Class to make an informed judgment whether to accept or reject the Plan. Such approval of this Disclosure Statement by the Bankruptcy Court and the transmittal of this Disclosure Statement do not, however, constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan and should not be interpreted as being a recommendation by the Bankruptcy Court either to accept or reject the Plan.

In summary, but subject to more specific details provided herein, the Plan provides for (i) the sale of substantially all of the assets of the Debtor (or, in the alternative, the sale of new equity in the Debtor) to the Purchaser or such other winning bidder as approved by order of the Bankruptcy Court, and (ii) the distribution of the proceeds of any such sale together with any other assets of the Debtor's Estate to its Creditors. In the event there are any additional funds remaining after the payment in full of all Allowed Claims against the Debtor, then such additional funds will be distributed to the Holders of Allowed Equity Interests as provided in Article 5 of the Plan.

THE PLAN IS SUBJECT TO APPROVAL BY THE BOARD OF DIRECTORS OF THE DEBTOR. IN THE OPINION OF THE DEBTOR, THE TREATMENT OF CLAIMS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR. ACCORDINGLY, THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS, AND THE DEBTOR RECOMMENDS THAT CREDITORS VOTE TO ACCEPT THE PLAN.

Accompanying this Disclosure Statement are copies of the following documents:

(a)     the Plan, including all Exhibits thereto;

(b)      the Bankruptcy Court's Order Conditionally Approving Disclosure Statement, Fixing Time to File Objections to the Disclosure Statement, Fixing Time to File Applications for Administrative Expenses, Setting Hearing on Confirmation of the Plan, and Setting Deadlines with Respect to Confirmation Hearing, dated _____, 2011, entered in the Bankruptcy Case [Docket No. _____](the "Disclosure Statement Approval Order"); and

(c)      in the case of Impaired Classes of Claims (Class ___)(the "Voting Class") entitled to vote on the Plan, a Ballot for acceptance or rejection of the Plan.

## PURPOSE OF THIS DISCLOSURE STATEMENT

The purpose of this Disclosure Statement is to provide the Holders of Claims and Equity Interests with adequate information to make an informed judgment about the Plan. This information includes, among other things, (a) the procedures for voting on the Plan, (b) a summary of the Plan and an explanation of how the Plan will function, including the means of implementing and funding the Plan, (c) general information about the history and business of the Debtor prior to the Petition Date, (d) the events leading to the filing of the Bankruptcy Case, and (e) a brief summary of the sale of the Debtor's assets during the Bankruptcy Case.

This Disclosure Statement contains important information about the Plan and considerations pertinent to a vote for or against the Confirmation of the Plan. All Holders of Claims and Equity Interests are encouraged to review carefully this Disclosure Statement.

Unless otherwise defined herein, all capitalized terms used in this Disclosure Statement have the meanings ascribed to them in the Plan. Any term used in the Plan or herein that is not defined in the Plan or herein and that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. If there is any conflict between the definitions contained in this Disclosure Statement and the definitions contained in the Plan, the definitions contained in the Plan shall control.

## VOTING INSTRUCTIONS

### Who May Vote

Only the Holders of Claims and Equity Interests which are "Impaired" under the terms and provisions of the Plan are permitted to vote to accept or reject the Plan. Holders of Class 7 Intercompany Claims and Equity Interests in Class 12 shall not receive or retain any Property under the Plan on account of such Intercompany Claims and Equity Interests and, therefore, Classes 7 and 12 are deemed not to have accepted the Plan and are not entitled to vote. For purposes of the Plan, only the Holders of Claims in the Voting Class (i.e., Class 5, 6, 8, 9, 10 and 11) are Impaired under the Plan and thus may vote to accept or reject the Plan. ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF UNSECURED CLAIMS IN CLASS 5, 6, 8, 9, 10 and 11.

**How to Vote**

Each Holder of a Claim in a Voting Class should read the Disclosure Statement, together with the Plan and any Exhibits thereto, in their entirety. After carefully reviewing the Plan and this Disclosure Statement and any Exhibits thereto, please complete the enclosed Ballot, including your vote with respect to the Plan, and return it as provided below. If you have an Impaired Claim in more than one Class, you should receive a separate Ballot for each such Claim. If you receive more than one Ballot you should assume that each Ballot is for a separate Impaired Claim and you should complete and return all of them.

If you are a member of a Voting Class and did not receive a Ballot, if your Ballot is damaged or lost, or if you have any questions concerning voting procedures, please contact Charles Postler, counsel to the Debtor, by telephone at (813) 229-0144 or by electronic transmission at cpostler@srbp.com.

**YOU SHOULD COMPLETE AND SIGN EACH ENCLOSED BALLOT AND RETURN IT TO THE ADDRESS FOR THE BANKRUPTCY COURT PROVIDED BELOW. IN ORDER TO BE COUNTED, BALLOTS MUST BE DULY COMPLETED AND EXECUTED AND RECEIVED BY THE CLERK OF THE BANKRUPTCY COURT BY NO LATER THAN _____, 2011.**

All Ballots should be returned either by regular mail, hand delivery or overnight delivery to:

> Clerk, United States Bankruptcy Court
> Sam M. Gibbons United States Courthouse
> 801 N. Florida Avenue, 5th Floor
> Tampa, Florida 33602-3826

**Acceptance of Plan and Vote Required for Class Acceptance**

As the Holder of an Allowed Claim in the Voting Class, your vote on the Plan is extremely important. The Debtor is soliciting acceptances of the Plan only from Holders of Unsecured Claims in Class 6, which is the only Class entitled to vote on the Plan. You may be contacted by the Debtor or its agent with regard to your vote on the Plan.

Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan. Pursuant to Section 1126(d) of the Bankruptcy Code, an Impaired Class of Equity Interests shall have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code)

of at least two-thirds in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

To meet the requirement for confirmation of the Plan under the "cram-down" provisions of the Bankruptcy Code with respect to any Impaired Class of Claims or Equity Interests which votes to reject, or is deemed to vote to reject, the Plan (a "Rejecting Class"), the Debtor would have to show that all Classes junior to the Rejecting Class will not receive or retain any Property under the Plan unless all Holders of Claims or Equity Interests in the Rejecting Class receive or retain under the Plan Property having a value equal to the full amount of their Allowed Claims or Allowed Equity Interests. For a more complete description of the implementation of the "cram down" provisions of the Bankruptcy Code pursuant to the Plan, see "VOTING ON AND CONFIRMATION OF THE PLAN -- Confirmation Without Acceptance by All Impaired Classes."

**Confirmation Hearing and Objections to Confirmation**

The Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan for _____ at _____ of said day (the "Confirmation Hearing"), at the United States Bankruptcy Court, Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Courtroom 9B, Tampa, Florida 33602, which may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing.

Any objection to Confirmation of the Plan must be filed and served in accordance with the Disclosure Statement Approval Order. Pursuant to the Disclosure Statement Approval Order, any such objection must be filed with the Bankruptcy Court by no later than _____, 2011.

## SUMMARY OF THE PLAN

**Introduction**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor is authorized to reorganize and/or liquidate its business for the benefit of itself and its creditors and stockholders. The formulation of a plan is the principal objective of a Chapter 11 case. In general, a Chapter 11 plan (i) divides claims and interests into separate classes, (ii) specifies the property that each class is to receive under such plan, and (iii) contains other provisions necessary to the reorganization and/or liquidation of the debtor. Chapter 11 does not require each holder of a claim or interest to vote in favor of the plan in order for the Bankruptcy Court to confirm the plan. However, a plan must be accepted by the holders of at least one impaired class of claims (unless there are no impaired classes) without considering the votes of "insiders" within the meaning of the Bankruptcy Code.

The summary of the Plan contained herein addresses only certain provisions of the Plan. As a summary, it is qualified in its entirety by reference to the Plan itself. Upon Confirmation and the Effective Date, the Plan shall bind the Debtor, all of the Debtor's Creditors, the Holders

of Equity Interests and other parties in interest except as expressly set forth in the Plan. TO THE EXTENT THAT THE TERMS OF THIS DISCLOSURE STATEMENT VARY OR CONFLICT WITH THE TERMS OF THE PLAN, THE TERMS OF THE PLAN SHALL CONTROL.

## Summary of Purchase Agreement

As noted in the "Introductory Statement" on page ii hereinabove, as of the date of the filing of this Plan and the accompanying Disclosure Statement, the Debtor is in the process of marketing its business to prospective purchasers. Accordingly, the Debtor intends to make significant modifications to the Plan and the Disclosure Statement upon entering into a definitive agreement with a purchaser. Such modifications will include a brief summary of the material terms of a definitive agreement with a purchaser.

## General Overview of the Plan

The Plan provides for the sale of substantially all of the assets of the Debtor (or, in the alternative, the sale of the New Equity Interest in the Debtor) to the Purchaser or such other winning bidder as approved by order of the Bankruptcy Court. On the Closing Date, substantially all of the Debtor's assets (or, in the alternative, the New Equity Interest) will be sold to the Purchaser. Thus, the Plan provides for the liquidation of the Debtor and for Cash payments to Holders of Allowed Claims primarily out of the Sale Proceeds received by the Debtor under the Purchase Agreement. On the Closing Date, the DIP Loan Claims of Wells Fargo and the Wells Fargo Allowed Secured Claim in Class 2 will be paid in full from the Sale Proceeds. Thereafter, the net Sale Proceeds following payment to Wells Fargo will be transferred into the Liquidating Trust, which will be managed by the Liquidating Trustee who will implement the terms of the Plan, including making Distributions to Creditors.

The Plan provides for Cash payments to be made by the Liquidating Trustee to certain Holders of Allowed Claims out of the Liquidating Trust Assets. The source of the funds to make such Cash payments will primarily be the Sale Proceeds. At the present time, the Debtor is unable to predict with certainty the ultimate amount of the Sale Proceeds which will result from a sale of the Debtor's assets (or, in alternative, the sale of the New Equity Interest in the Debtor). It is contemplated, however, that the Sale Proceeds will be in an amount sufficient to (i) fund in full, in Cash, the expected payments required under the Plan to the Holders of Allowed Administrative Expense Claims (including Allowed Administrative Expense Claims of Professionals), the DIP Loan Claims, Allowed Priority Tax Claims, Allowed Priority Claims, the Secured Claims of Wells Fargo in Class 2, the Allowed Secured Tax Claims of Governmental Units in Class 3, the Allowed Other Secured Claims in Class 4, and the Allowed Unsecured Convenience Claims in Class 5, and (ii) provide a Distribution to the Holders of Allowed Unsecured Claims in Class 6. Each Holder of an Allowed Class 8 Claim will receive a Distribution, in Cash, in an amount equal to the sum of one hundred percent (100%) of such Holder's Allowed Class 8 Claim; provided that, such Distribution will be made to such Holder only after the payment of the Claims of any and all Classes higher in priority under the Plan. As of the Effective Date, all of the Class 7 Intercompany Claims and the Class 12 Equity Interests will automatically be deemed cancelled, annulled, and extinguished without any further action by

any party and will be of no further force and effect. The Holders of the Class 7 Intercompany Claims and the Class 12 Equity Interests will not receive any Distribution or retain any Property or equity interest under the Plan on account of such Intercompany Claims and Equity Interests. As of the Distribution Date and only after the payment of the Allowed Claims of any and all Classes of higher priority, each Holder of Preferred Stock in Class 9, Class 10, and Class 11 shall receive whatever rights, claims or amounts to which the Holders are entitled under the Certificate of Incorporation of Debtor. Class 13 Subsidiary Equity Interests will not receive any Distribution under the Plan.

## Classification of Claims and Equity Interests

Section 1123 of the Bankruptcy Code provides that a plan of liquidation shall classify the claims of a debtor's creditors and interests of a debtor's equity holders. The Plan divides the Claims and Equity Interests into thirteen (13) Classes.

Section 101(5) of the Bankruptcy Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured," or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." The Debtor is required under Section 1122 of the Bankruptcy Code to classify the Claims and Equity Interests into separate Classes which contain Claims and Equity Interests that are substantially similar to the other Claims and Equity Interests within such Classes.

The Debtor believes that it has classified all Claims and Interests in compliance with the provisions of Section 1122 of the Bankruptcy Code. However, it is possible that a Holder of a Claim or another interested party may challenge the classification of Claims and Interests contained in the Plan and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. In such event, it is the present intent of the Debtor, to the extent permitted by the Bankruptcy Court, to make such reasonable modifications of the classifications under the Plan to provide for whatever classification might be required by the Bankruptcy Court for Confirmation and to use the Plan acceptances received in this solicitation for the purpose of obtaining the approval of the Class or Classes of which the accepting Holder is ultimately deemed to be a member. Any such reclassification could adversely affect the Class in which such Holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required of that Class for approval of the Plan. A reclassification of Claims after approval of the Disclosure Statement might necessitate a resolicitation of acceptances or rejections of the Plan.

## Summary of Plan Distributions

Set forth below is a summary of each Class of Claims and Equity Interests and the expected Distributions under the Plan to Holders of Allowed Claims against the Debtor. Any estimates of Claims set forth in this Disclosure Statement are approximate and are based on amounts scheduled by the Debtor and asserted by Creditors as of the date of this Disclosure

Statement. Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever) and Allowed Equity Interests.

*Administrative Expense Claims.* The holders of Administrative Expense Claims are entitled to be paid in full under a plan of liquidation pursuant to the Bankruptcy Code. The Administrative Expense Claims will consist primarily of Postpetition operating expenses incurred by the Debtor, fees and costs of Professionals, fees required to be paid to the United States Trustee, the costs of solicitation of votes on the Plan (including photocopying and postage charges), and any Administrative Expense Claims filed with the Bankruptcy Court by the deadline set forth in the Disclosure Statement Approval Order.

The Plan provides that, except as otherwise provided below, each Holder of an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals) shall be paid (a) on the Distribution Date, an amount, in Cash, by the Liquidating Trustee out of the Liquidating Trust Assets equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtor or the Liquidating Trustee, as the case may be, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

All unpaid fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, for any calendar quarter ending prior to the Effective Date shall be paid to the United States Trustee by the Liquidating Trustee out of the Liquidating Trust Assets by no later than thirty (30) days following the Effective Date. At the time of such payment, the Liquidating Trustee shall provide to the United States Trustee an affidavit indicating the disbursements made by the Debtor for the relevant periods, if requested by the United States Trustee. Following the Effective Date, any such fees required to be paid to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6) arising or accruing from distributions made by the Liquidating Trustee or the Liquidating Trust under the Plan or otherwise shall be paid by the Liquidating Trustee out of the Liquidating Trust Assets, until the earlier of (i) the closing of the Bankruptcy Case by the issuance of a Final Decree by the Bankruptcy Court, or (ii) the entry of an order by the Bankruptcy Court dismissing the Bankruptcy Case or converting the Bankruptcy Case to another chapter under the Bankruptcy Code. All such payments to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements by the Liquidating Trustee or the Liquidating Trust for the relevant periods and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6). The Liquidating Trustee shall provide to the United States Trustee at the time of each such payment an appropriate affidavit indicating the disbursements made by the Liquidating Trustee or the Liquidating Trust for the relevant period, if requested by the United States Trustee.

All Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid by the

Liquidating Trustee out of the Liquidating Trust Assets (a) in the ordinary course of business in accordance with contract terms, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Liquidating Trustee, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

All Allowed Administrative Expense Claims representing Assumed Liabilities shall not be the responsibility of the Debtor or the Liquidating Trustee or be paid under Article 3.1.1 or 3.1.3 of the Plan, but shall be paid by the Purchaser in accordance with the terms and conditions of the Purchase Agreement and the Sale Order.

*Priority Tax Claims.* The holders of Priority Tax Claims are also entitled to be paid in full under a plan pursuant to the Bankruptcy Code. The Plan provides that Holder of an Allowed Priority Tax Claim shall be paid (a) on the Distribution Date, an amount, in Cash, by the Liquidating Trustee out of the Liquidating Trust Assets equal to the Allowed Amount of its Priority Tax Claim, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Liquidating Trustee, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

*DIP Loan Claim.* The DIP Lender shall be paid, on the Closing Date, an amount, in Cash, by the Debtor out of the Sale Proceeds equal to the Allowed Amount of its DIP Loan Claims. By no later than the Voting Deadline, the DIP Lender shall file an affidavit with the Bankruptcy Court setting forth the calculation of the DIP Loan Claims. The Confirmation Order shall set forth the Allowed Amount of the DIP Loan Claims.

*Class 1: Priority Claims.* Class 1 consists of all Priority Claims. Each Holder of an Allowed Priority Claim shall be paid (a) on the Distribution Date, an amount, in Cash, by the Liquidating Trustee out of the Liquidating Trust Assets equal to the Allowed Amount of its Priority Claim in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, (b) under such other terms as may be agreed upon by both the Holder of such Allowed Priority Claim and the Liquidating Trustee, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court. Class 1 is Unimpaired by the Plan. Each Holder of an Allowed Priority Claim in Class 1 conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

*Class 2: Secured Claims and Other Claims of Wells Fargo Capital Finance, Inc.* Class 2 consists of all of the Wells Fargo Prepetition Claims. By no later than the Voting Deadline, Wells Fargo shall file an affidavit with the Bankruptcy Court setting forth the calculation of the Wells Fargo Prepetition Claims. The Confirmation Order shall set forth the Allowed Amount of the Wells Fargo Prepetition Claims (the "Wells Fargo Allowed Secured Claim"). Pursuant to the Sale Order and the Plan, the Wells Fargo Allowed Secured Claim shall be paid in full in connection with the Closing under the Purchase Agreement. As of the Closing, without any further action by any party, and to the extent not already released, the Liens that secure the Class 2 Claims shall be deemed released, null and void, and unenforceable for all purposes. Any Proof of Claim filed by Wells Fargo with respect to the Class 2 Claims (or any Claim related thereto and listed in the Schedules) shall be deemed stricken and disallowed in its entirety as of the Closing. Class 2 is Unimpaired by the Plan. Wells Fargo, as the Holder of the Class 2 Claims,

conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

*Class 3: Secured Tax Claims of Governmental Units.* Class 3 consists of all Secured Tax Claims of Governmental Units. On the Distribution Date, the Liquidating Trustee shall pay to a Governmental Unit, in Cash, out of the Liquidating Trust Assets, the Allowed Amount of its Secured Tax Claim. Class 3 is Unimpaired by the Plan. Each Holder of a Class 3 Claim conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

*Class 4: Other Secured Claims.* Class 4 consists of all Secured Claims not otherwise specifically classified in the Plan. In the event there is more than one Secured Claim in this Class, such Secured Claims shall be separated into subclasses in Class 4. Within thirty (30) days following the Effective Date, the Liquidating Trustee shall either (a) return to the Secured Creditor any Property securing its Secured Claim in full satisfaction of such Secured Claim, or (b) pay the Allowed Amount of the Secured Claim in full, out of the Liquidating Trust Assets, in accordance with the terms of any agreement governing such Secured Claim. If the obligation comprising the Secured Claim is assumed in connection with the Purchase Agreement as approved and authorized by entry of the Sale Order, the Class 4 Claim shall be deemed fully satisfied, settled, released, extinguished and discharged. Any deficiency owing to a Secured Creditor with respect to a Class 4 Claim shall be classified and treated as a Class 6 Unsecured Claim to the extent Allowed by a Final Order of the Bankruptcy Court. Class 4 is Unimpaired by the Plan. Each Holder of a Class 4 Claim conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

*Class 5: Unsecured Convenience Claims.* Class 5 consists of all Unsecured Convenience Claims. Notwithstanding anything to the contrary contained in the Plan, each Holder of a Class 6 Unsecured Claim (i) in an amount greater than $_____ may have its Unsecured Claim treated as an Unsecured Convenience Claim under the Plan by making the Convenience Class Opt-In Election, or (ii) in an amount less than or equal to $_____ may have its Unsecured Claim treated as a Class 6 Unsecured Claim under the Plan by making the Convenience Class Opt-Out Election. The Convenience Class Opt-In Election or the Convenience Class Opt-Out Election is irrevocable and must be made by such Holder on the Ballot and filed with the Bankruptcy Court on or before the Voting Deadline. On the Distribution Date, the Holder of an Allowed Unsecured Convenience Claim shall receive Cash from the Liquidating Trustee, out of the Liquidating Trust Assets, in an amount equal to (a) _____ percent (____%) of the amount of such Allowed Claim if the amount of such Allowed Claim is less than or equal to $_____, or (b) $____ if the amount of such Allowed Claim is greater than $_____ and the Holder of such Allowed Claim has agreed to reduce the Allowed Amount of its Claim to $_____ by making the Convenience Class Opt-In Election. With respect to a Class 5 Claim, the "Distribution Date" shall mean the date which is as soon as reasonably practicable (as determined by the Liquidating Trustee) after the later to occur of (a) the Effective Date or (b) thirty (30) days after the date the order of the Bankruptcy Court allowing any such Claim as an Unsecured Convenience Claim becomes a Final Order. Class 5 is Impaired by the Plan. Each Holder of an Unsecured Convenience Claim in Class 5 is entitled to vote to accept or reject the Plan

*Class 6: Unsecured Claims (Unsecured Claims Not Otherwise Classified).* Class 6 consists of all Unsecured Claims not otherwise classified in the Plan, including any Unsecured Claim in the amount of $_____ or less to the extent the Holder thereof has made the Convenience Class Opt-Out Election. On the Distribution Date, each Holder of an Allowed Unsecured Claim in Class 6 shall receive such Holder's Pro Rata Share of the Liquidating Trust Assets. The timing and procedures for, and amount of, Distributions to Holders of Allowed Class 6 Claims shall be in accordance with Article 9 of the Plan and the Confirmation Order. Class 6 is Impaired by the Plan. Each Holder of an Unsecured Claim in Class 6 is entitled to vote to accept or reject the Plan.

*Class 7: Intercompany Claims.* Class 7 consists of all Intercompany Claims. On the Effective Date, all of the Intercompany Claims shall be deemed cancelled, annulled and extinguished without any further action by any party and shall be of no further force and effect, as the amount of any Intercompany Claims held by any Subsidiary is less than the amount of any claim the Debtor has against such Subsidiary. The Holders of the Class 7 Intercompany Claims will not receive or retain any Property under the Plan on account of such Intercompany Claims. Accordingly, the Liquidating Trustee will not make any Distribution or establish any reserve under the Plan for the Intercompany Claims. The treatment set forth in this Article 5.8 shall have no effect on any claim that the Debtor may have against any of the Subsidiaries. Class 7 is Impaired by the Plan. Pursuant to Section 1126(g) of the Bankruptcy Code, Class 7 is deemed not to have accepted the Plan and, thus, the Holders of the Class 7 Intercompany Claims are not entitled to vote to accept or reject the Plan.

*Class 8: Subordinated Securities Claims.* Class 8 consists of all Subordinated Securities Claims. Pursuant to Section 510(b) of the Bankruptcy Code, each Allowed Class 8 Claim, if any, shall be subordinated to all Claims (including Class 6 Unsecured Claims) or Equity Interests that are senior to or equal to the Claim or Equity Interest represented by the Security of the Debtor in question; provided, however, that if such Security is Preferred Stock such Allowed Class 8 Claim shall have the same priority as that provided herein for such Class of Preferred Stock; provided further, however, that if such Security is Existing Common Stock, such allowed Class 8 Claim shall have the same priority as Class 12 Equity Interests. Under the Plan, each Holder of an Allowed Class 8 Claim will receive a Distribution, in Cash, in an amount equal to one hundred percent (100%) of such Holder's Allowed Class 8 Claim. Such Distribution will be made to such Holder by the Liquidating Trustee on the Distribution Date and only after the payment in full of the Allowed Claims of any and all Classes hereinabove. Class 8 is Impaired by the Plan. Each Holder of a Subordinated Securities Claim in Class 8 is entitled to vote to accept or reject the Plan.

*Class 9: Series A Preferred Stock.* Class 9 consists of all Series A Preferred Stock. On the Distribution Date and only after the payment in full of the Allowed Claims of any and all of the Classes of Claims hereinabove, each Holder of Series A Preferred Stock shall receive the distribution (in amount and priority) such Holder is entitled to under the Certificate of Incorporation of the Debtor. Class 9 is Impaired by the Plan. Each Holder of Series A Preferred Stock is entitled to vote to accept or reject the Plan.

10

*Class 10: Series B Preferred Stock.* Class 10 consists of all Series B Preferred Stock. On the Distribution Date and only after the payment in full of the Allowed Claims of any and all of the Classes of Claims hereinabove, each Holder of Series B Preferred Stock shall receive the distribution (in amount and priority) such Holder is entitled to under the Certificate of Incorporation of the Debtor. Class 10 is Impaired by the Plan. Each Holder of Series B Preferred Stock is entitled to vote to accept or reject the Plan.

*Class 11: Series C Preferred Stock.* Class 11 consists of all Series C Preferred Stock. On the Distribution Date and only after the payment in full of the Allowed Claims of any and all of the Classes of Claims hereinabove, each Holder of Series C Preferred Stock shall receive the distribution (in amount and priority) such Holder is entitled to under the Certificate of Incorporation of the Debtor. Class 11 is Impaired by the Plan. Each Holder of Series C Preferred Stock is entitled to vote to accept or reject the Plan.

*Class 12: Equity Interests.* Class 12 consists of all Equity Interests. On the Effective Date, all of the Class 12 Equity Interests shall be deemed cancelled, annulled, extinguished and surrendered without any further action by any party and shall be of no further force and effect. The Holders of the Class 12 Equity Interests will not receive or retain any Property or equity interest under the Plan on account of such Equity Interests. Accordingly, the Liquidating Trustee will not make any Distribution or establish any reserve under the Plan for the Class 12 Equity Interests. Class 12 is Impaired by the Plan. Pursuant to Section 1126(g) of the Bankruptcy Code, Class 12 is deemed not to have accepted the Plan and, thus, the Holders of the Class 12 Equity Interests are not entitled to vote to accept or reject the Plan.

*Class 13: Subsidiary Equity Interests.* Class 13 consists of all Subsidiary Equity Interests. The Subsidiary Equity Interests will not be affected by the Plan and the Reorganized Debtor or the Liquidating Trustee will retain the Subsidiary Equity Interests. No Distributions will be made under the Plan on account of the Subsidiary Equity Interests. Class 13 is Unimpaired by the Plan. The Debtor, as the Holder of the Class 13 Subsidiary Equity Interests, conclusively is presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

**Effective Date**

*Condition Precedent to the Effective Date*

The Plan shall not be consummated and the Effective Date shall not occur unless each of the following conditions has been satisfied following the Confirmation Date or waived by the Debtor:

(i)     The Confirmation Order shall be a Final Order.

(ii)    All conditions precedent to the Closing under the Purchase Agreement shall have been satisfied or waived in accordance with the terms thereof.

11

*Notice of the Effective Date*

Within ten (10) Business Days after the Effective Date, the Liquidating Trustee shall file a notice with the Bankruptcy Court designating the Effective Date and shall mail such notice to the Notice Parties.

## Treatment of Executory Contracts and Unexpired Leases

*Assumption or Rejection of Executory Contracts and Unexpired Leases.*

Pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtor and another Person or Entity and listed on Exhibit A to the Plan (collectively, the "Assumed Contracts") shall be deemed assumed by the Debtor as of the Effective Date; provided, however, that the Debtor reserves the right, on or prior to the Confirmation Date, to amend Exhibit A to add any executory contract or unexpired lease thereto or to delete any executory contract or unexpired lease therefrom, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be assumed (if added) or rejected (if deleted). The Debtor shall provide notice of any amendments to Exhibit A to the parties to the executory contracts and unexpired leases affected thereby. The listing of a document on Exhibit A shall not constitute an admission by the Debtor that such document is an executory contract or an unexpired lease or that the Debtor has any liability thereunder. Any other executory contract or unexpired lease that exists between the Debtor and another Person or Entity and that has not been expressly assumed or rejected by the Debtor with the Bankruptcy Court's approval on or prior to the Confirmation Date shall be deemed rejected by the Debtor as of the Confirmation Date, including any executory contract or unexpired lease that has been rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date or as to which a motion for approval of the rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date (all of the foregoing, collectively, the "Rejected Contracts").

*Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.*

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (i) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article 7.1 of the Plan, (ii) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Article 7.1 of the Plan, and (iii) the extension of time, pursuant to Section 365(d)(4) of the Bankruptcy Code, within which the Debtor may assume, assume and assign, or reject any unexpired lease of nonresidential real property through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such unexpired lease. The assumption by the Debtor of an Assumed Contract shall be binding upon any and all parties to such Assumed Contract as a matter of law, and each such Assumed Contract shall be fully enforceable in accordance with its terms, except as modified by the provisions of the Plan or an order of the Bankruptcy Court.

*Cure of Defaults.*

Any lessor or other party to an Assumed Contract (except those lessors or other parties whose leases or executory contracts have been previously assumed by a Final Order of the Bankruptcy Court) asserting a Cure Claim in connection with the assumption of any unexpired lease or executory contract under Article 7.1 of the Plan, as contemplated by Section 365(b) of the Bankruptcy Code, must file such Cure Claim with the Bankruptcy Court on or before the Cure Claim Submission Deadline asserting all alleged amounts accrued or alleged defaults through the Effective Date. Any lessor or other party to an Assumed Contract failing to submit a Cure Claim by the Cure Claim Submission Deadline shall be forever barred from asserting, collecting or seeking to collect any amounts or defaults relating thereto against the Debtor or the Liquidating Trustee. The Liquidating Trustee shall have thirty (30) days from the Effective Date to file an objection to any Cure Claim. Any disputed Cure Claims shall be resolved either consensually or by the Bankruptcy Court. Except as may otherwise be agreed to by the parties, within thirty (30) days after the Effective Date, the Liquidating Trustee shall cure any and all undisputed Cure Claims. All disputed Cure Claims shall be cured either within five (5) Business Days after the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto or as may otherwise be agreed to by the parties.

*Claims under Rejected Executory Contracts and Unexpired Leases.*

Unless otherwise ordered by the Bankruptcy Court, any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease or such Claim shall be forever barred and unenforceable against the Debtor and/or the Liquidating Trustee. With respect to any executory contract or unexpired lease rejected pursuant to the Plan, the Bar Date for filing rejection damage Claims with the Bankruptcy Court shall be thirty (30) days after the Effective Date. Such Claims, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed Unsecured Claims in Class 6. Any such Claims that become Disputed Claims shall be Disputed Claims in Class 6 for purposes of administration of Distributions under the Plan to Holders of Allowed Unsecured Claims in Class 6. The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

*Insurance Policies.*

All of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto are treated as executory contracts under the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or the Liquidating Trust may hold against any Person or Entity, including the insurers under any of the Debtor's insurance policies or under the D&O Policy.

*Indemnification Rights.*

All Claims for Indemnification Rights against the Debtor by an Indemnitee for defense and indemnification shall be reinstated against the Liquidating Trust and rendered Unimpaired to the extent that such Indemnitee is entitled to defense or indemnification under applicable law, agreement or past policy of the Debtor, but only to the extent that any such reinstated Claim for defense and indemnification in response to a claim against such Indemnitee is covered under any of the Debtor's insurance policies, including the D&O Policy. The reinstated Claim against the Liquidating Trust, and the Liquidating Trust's corresponding defense and indemnification obligation, shall not be for any deductible or self-insured retention amount and shall not exceed the amount of available insurance coverage.

**Causes of Action**

On the Effective Date, the Causes of Action shall be vested in the Liquidating Trust, except to the extent a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Plan or by a Final Order of the Bankruptcy Court. The Causes of Action shall be pursued by the Liquidating Trustee. The Debtor is currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Debtor states that any party in interest that engaged in business or other transactions with the Debtor Prepetition or that received payments from the Debtor Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation. The Liquidating Trust Assets will fund the expenses of the Liquidating Trustee to pursue the Causes of Action, including fees of counsel for the Liquidating Trustee.

No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE LIQUIDATING TRUSTEE AND THE LIQUIDATING TRUST. Creditors are advised that legal rights, claims and rights of action the Debtor may have against them, if they exist, are retained under the Plan for prosecution unless a Final Order of the Bankruptcy Court authorizes the Debtor to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtor or the Liquidating Trustee does not possess or does not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of the Liquidating Trust and the Debtor's Creditors. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement; nor shall the Liquidating Trust, as a result of such failure, be estopped or precluded under any theory from

pursuing such Causes of Action. Nothing in the Plan operates as a release of any of the Causes of Action.

The Debtors do not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Liquidating Trustee will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect which would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

The Debtor and the Liquidating Trustee reserve all rights under Section 506(c) of the Bankruptcy Code with respect to any and all Secured Claims. The Liquidating Trust shall remain open, even if the Bankruptcy Case shall have been closed, as to any and all Causes of Action until such time as the Causes of Action have been fully administered and the Causes of Action Recoveries have been received by the Liquidating Trustee.

The Bankruptcy Code gives a trustee or a debtor-in-possession the right to avoid and recover for the benefit of creditors in the bankruptcy case certain transfers that the debtor made prior to the bankruptcy filing. One such type of avoidance power is provided by the preference provisions of Section 547 of the Bankruptcy Code. Under Section 547(b) of the Bankruptcy Code, an avoidable preference is (1) a transfer, (2) of an interest of the debtor in property, (3) to or for the benefit of a creditor, (4) for or on account of antecedent debt, (5) made while the debtor was insolvent, (6) on or within ninety (90) days (one year for "insiders") before bankruptcy, and (7) that enables the creditor to receive more than it would have received in a Chapter 7 liquidation case if the transfer had not been made.

In the Statement of Financial Affairs filed in the Bankruptcy Case, the Debtor identified Persons who received payments or other transfers within ninety (90) days prior to the Chapter 11 filing and insiders who received payments or other transfers within one (1) year prior to the Chapter 11 filing or other payments or transfers that may be avoidable under the Bankruptcy Code. Some or all of such Persons may dispute or deny that Causes of Action may be brought against them and could assert defenses thereto. The investigation as to these Causes of Action has not been completed and no decision has been made yet with respect to the pursuit thereof.

**Discharge, Exculpation from Liability and Injunction Provisions under the Plan**

Article 11 of the Plan contains detailed discharge, exculpation from liability, and injunction provisions for the benefit of the Debtor, the Debtor's Estate and other Persons. In addition, the Plan provides for the complete and unconditional discharge, to the fullest extent permitted by law, of any and all Debts and Claims of any nature whatsoever against the Debtor

and its Estate that arose on or before the Effective Date. Set forth below is a summary of these provisions.

## *Discharge of Claims and Termination of Equity Interests*

Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of the Debtor and its Estate from any and all Debts of, Claims of any nature whatsoever against and Equity Interests in the Debtor that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date. Except as otherwise expressly provided in the Plan or in the Confirmation Order, but without limiting the generality of the foregoing, on the Effective Date, the Debtor, its successors or assigns, and its Estate shall be discharged, to the fullest extent permitted by applicable law, from any Claim or Debt that arose prior to the Effective Date and from any and all Debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of Claims or Equity Interests, shall be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor, its successors or assigns, and its Estate, or the assets or Properties of any of them, any other or further Claims, Debts, rights, causes of action, remedies, Liabilities or Equity Interests based upon any act, omission, document, instrument, transaction, event, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan, and the Confirmation Order shall contain appropriate injunctive language to that effect. As of the Effective Date, Holders of cancelled Equity Interests shall have no rights arising from or relating to such Equity Interests, or the cancellation thereof. In accordance with the foregoing, except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall be a judicial determination of the discharge or termination of all such Claims and other Debts and Liabilities against, or Equity Interests in, the Debtor, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor, at any time, to the extent that such judgment relates to a discharged or terminated Claim, Liability, Debt or Equity Interest. Notwithstanding the foregoing, the Liquidating Trustee shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan. The provisions of Article 11.1 of the Plan shall also be applicable to the Reorganized Debtor and its Properties.

## *Exculpation from Liability*

**The Debtor and its Postpetition directors and officers (including the CRO) and Board, the Professionals for the Debtor (acting in such capacity), the Committee and its members, and the Professionals for the Committee (acting in such capacity) (collectively, the "Exculpated Parties") shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to**

the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, the Purchase Agreement, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Case, in each case for the period on and after the Petition Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case. Any such claims shall be governed by the standard of care otherwise applicable to the standard of negligence claims outside of bankruptcy. The rights granted under this Article 11.2 are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under Section 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase or securities. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article 11.2 shall not release any of the Causes of Action.

## *General Injunction*

Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, Liability or Equity Interest that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated Claims, Debts, Liabilities, or Equity Interests, other than actions brought to enforce any rights or obligations under the Plan: (a) commencing or continuing in any manner any action or other proceeding against the Debtor or its Property or Estate; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or its Property or Estate; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor or its Property or Estate; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or its Estate; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor or its Estate under the Plan and the documents executed in connection therewith. The Debtor shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation.

**The provisions of Article 11.3 of the Plan shall also be applicable to the Reorganized Debtor and its Properties.**

*Term of Certain Injunctions and Automatic Stay*

All injunctions or automatic stays provided for in the Bankruptcy Case pursuant to Sections 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect following the Confirmation Date and until the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

*No Liability for Tax Claims*

Unless a taxing Governmental Unit has asserted a Claim against the Debtor before the Governmental Unit Bar Date or Administrative Expense Claim Bar Date established therefor, no Claim of such Governmental Unit shall be Allowed against the Debtor or its directors, officers or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of its Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period or (ii) an audit of any return for a period before the Petition Date.

The foregoing is only a general summary of the discharge and injunction provisions of the Plan. For a complete understanding of the terms and conditions of these essential Plan provisions, each holder of a Claim against or Equity Interest in the Debtor is encouraged to read Article 11 of the Plan in its entirety. If you have any uncertainty regarding the scope of these discharge or injunction provisions, you should be aware that the language of the Plan controls over the language of the Disclosure Statement.

**Liquidating Trust**

On the Effective Date, the Liquidating Trust shall be established and the Debtor or the Reorganized Debtor, as the case may be, shall thereafter transfer all of its rights, title and interests in the Retained Assets to the Liquidating Trust free and clear of all Liens, including any and all Claims of Wells Fargo. The Liquidating Trust shall be a distinct legal entity from the Debtor and the Reorganized Debtor, each of which shall have no liability whatsoever for any obligations of the Liquidating Trust except as otherwise provided for in the Plan, the Liquidating Trust or otherwise. The Liquidating Trust is intended to quality as a qualified settlement fund pursuant to Internal Revenue Code Section 468B. The terms for the operation of the Liquidating Trust shall be set forth in the Liquidating Trust Agreement which shall be finalized on or before the Effective Date. Documents establishing the Liquidating Trust will be filed by amendment to the Plan.

On the Effective Date, all Unsecured Claims shall be automatically channeled, transferred and attached solely and exclusively to the Liquidating Trust, and the sole and exclusive right and remedy available to Unsecured Creditors shall be the entitlement, in accordance with the Plan and the Liquidating Trust Agreement, to assert Unsecured Claims solely and exclusively against

the Liquidating Trust and the Liquidating Trust Assets. The transfer to, vesting in and assumption by the Liquidating Trust of the Liquidating Trust Assets, as contemplated in the Plan and the Liquidating Trust Agreement, shall, as of the Effective Date, discharge, release and extinguish all obligations and Liabilities of the Debtor and the Reorganized Debtor for and in respect of all Unsecured Claims. The Liquidating Trust shall assume sole responsibility and liability for all Unsecured Claims and such Unsecured Claims shall be paid from the Liquidating Trust Assets as described in this Plan. The Confirmation Order shall contain appropriate language incorporating the foregoing and permanently enjoining any Holder of an Unsecured Claim from taking any action in violation of this Article 8.4. The entry of the Confirmation Order will act as a full and complete discharge of all Claims, Debts, Liabilities, and/or interests arising from, relating to or in connection with Unsecured Claims, except to the extent that the Liquidating Trust Agreement or the Plan provides a mechanism for the payment or resolution thereof.

**Corporate Existence; Dissolution**

The corporate existence of the Debtor will be determined based on terms of the Purchase Agreement, that is whether the Purchase Agreement contemplates (a) a sale of assets or (b) a sale of New Equity Interest.

**Corporate Action**

All matters provided for under the Plan involving the corporate structure of the Debtor, or any corporate action to be taken by or required of the Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the stockholders or Board of Directors of the Debtor.

**Section 1146 Exemption**

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the vesting, re-vesting, transfer or sale of any Property of, by or in the Debtor, its Estate or the Liquidating Trust pursuant to, in implementation of or as contemplated by the Plan, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**Distributions under the Plan**

*In General*

Within the times provided elsewhere in the Plan, the Liquidating Trustee shall make the Cash distributions required by the Plan to the Holders of Allowed Claims and Allowed Equity Interests.

## *Determination of Claims*

From and after the Effective Date, the Liquidating Trustee shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate to judgment all objections to Claims. Except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than one hundred twenty (120) days following the Effective Date (unless such period is extended by the Bankruptcy Court upon motion of the Debtor or the Liquidating Trustee), and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve notice of any request to the Bankruptcy Court for allowance to file late Unsecured Claims on (i) the Liquidating Trustee and (ii) such other parties as the Bankruptcy Court may direct. If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as a Class 6 Unsecured Claim. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) ninety (90) days following the Effective Date or (b) the date sixty (60) days after the Liquidating Trustee receives actual notice of the filing of such Claim.

Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtor or the Liquidating Trustee effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim.

Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Bankruptcy Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and Distribution. The Debtor or the Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the

Debtor or the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

## *Distributions as to Allowed Claims in Class 6*

Each Holder of an Allowed Unsecured Claim in Class 6 shall receive, on the applicable Distribution Date (as determined by the Liquidating Trustee in its sole discretion), a Cash Distribution in the amount of such Holder's Pro Rata Share of the Liquidating Trust Assets.
Notwithstanding any provision herein to the contrary, no Distribution shall be made to the Holder of a Disputed Claim in Class 6 unless and until such Disputed Claim becomes an Allowed Claim. If, on any applicable Distribution Date, any Disputed Claims in Class 6 remain, then the Liquidating Trustee shall withhold from any such Distribution the amount of funds that would be necessary to make the same proportionate distribution to the Holders of all Class 6 Claims which are Disputed Claims as if each such Disputed Claim were an Allowed Class 6 Claim. At such time that such Disputed Claim becomes an Allowed Class 6 Claim, the Holder of such Allowed Class 6 Claim shall receive the Distribution to which such Holder is then entitled under the Plan. Notwithstanding any provision herein to the contrary, if, on any applicable Distribution Date, the Holder of a Class 6 Claim is subject to a proceeding against it by the Liquidating Trustee, the Liquidating Trustee (in its sole discretion) may withhold a Distribution to such Holder until the final resolution of such proceeding.

A Distribution to a Holder of an Allowed Class 6 Claim shall be made at the address of such Holder set forth in the Schedules or on the books and records of the Debtor at the time of the Distribution, unless the Debtor or the Liquidating Trustee has been notified in writing of a change of address, including by the filing of a Proof of Claim or statement pursuant to Bankruptcy Rule 3003 by such Holder that contains an address for such Holder different than the address for such Holder as set forth in the Schedules. Neither the Debtor nor the Liquidating Trustee shall be liable for any Distribution sent to the address of record of a Holder in the absence of the written change thereof as provided herein.

## **Retention of Jurisdiction**

The Plan provides for the retention of jurisdiction by the Bankruptcy Court following the Effective Date to, among other things, determine all disputes relating to Claims, Equity Interests and other issues presented by or arising under the Plan. The Bankruptcy Court will also retain jurisdiction under the Plan for any actions brought in connection with the implementation and consummation of the Plan and the transactions contemplated thereby. See Article 12 of the Plan for a more detailed description.

## HISTORY AND BUSINESS OF THE DEBTOR PRIOR TO THE CHAPTER 11 FILING; EVENTS LEADING TO THE CHAPTER 11 FILING

*History and Business of Teltronics, Inc.*

Teltronics, Inc., a Delaware corporation, is a technology manufacturer specializing in three major business markets: (i) communications, (ii) alarms management (in the telecommuniations market), and (iii) contract electronic manufacturing. Teltronics was founded in 1969 as a manufacturer of phone dialers. Today, the publicly traded company is a global business that designs, develops, manufactures an supports innovative telecommunications products and services. Throughout is history, Teltronics has focused on long-term strategic growth, evidenced by innovative product and application introductions and acquisitins that provide access to new products, markets and customer populations.

In the area of telecommunications, Teltronics designs, develops, manufactures and markets communications servers known as Cerato® VCSe 100/500/2000/9000, which are a line of hybrid switching systems, derived from the 20-20™, which involves providing telephone switches for businesses of all sizes. In addition, Teltronics markets advanced Call Center software applications, which permit its customers to effectively and efficiently manage voice, e-mail and web based customer interactions with support staff.

Also in the area of telecommunications, Teltronics provides alarm management systems for private branch exchanges, voice mail systems and data networks through their products, OmniWorks™ and the Intelligent Systems Management ("ISM"). These systems consist of two major components: IRISnGEN, a powerful, centralized, management GUI application for a client's network operations center and SEB NET-PATH, a series of remote agent appliances that monitor a client's network components. Together, these items provide complete endpoint management for a client's voice and data network components.

In its last major business market, Teltronics provides electronic manufacturing services for companies in the military, security, industrial, medical, and telecommunications sectors. Teltronics's ISO 9001:2008 certified operations facility is only the beginning of its commitment to excellence. In addition to its IPC, ITAR, FCC, and UL certifications and compliance, Teltronics also offers full engineering services available for printed circuitry design, schematic drawing, and project management.

Well known for its circuit card assembly, including Micro-Ball Grid Array (MBGA), Ball Grid Array (BGA), Fine Pitch, Surface Mount (SMT) and Thru-Hole (PTH) placements as well as electromechanical assembly and system integration, Teltronics has manufactured state-of-the-art electronic equipment since 1969. Over the years, Teltronics's continued commitment to advanced manufacturing technology and to highly automated operations, processes and complete turnkey services for manufacturing partners has set the standard for excellence and innovation in the electronics manufacturing industry.

Teltronics has significant direct customers, in particular the New York City Department of Education, the City of New York Department of Corrections and the Federal Bureau of

Prisons. These installations are supported by Teltronics' facilities in Lake Success, New York and the Network Operations Center in Atlanta, Georgia.

As of the Petition Date, the Debtor's corporate headquarters and manufacturing facility are located at 2511 Corporate Way, Palmetto, Florida 34221. This facility, leased from Gulfcoast Property No. 1, LLC, is comprised of 30,000 square feet of office space and 21,520 square feet of manufacturing space. The Debtor also leases offices at the following locations, primarily to service customers in those geographic locations: (i) New York, New York; (ii) Lake Success, New York; (iii) Petaluma, California; and (iv) Kennesaw, Georgia. As of the Petition Date, the Debtor employed 133 employees in its business operations.

For the fiscal year ended December 31, 2010, the Debtor's consolidated statement of operations reflected total net sales of approximately $26.2 million, total operating expenses of approximately $10.9 million, and a net operating loss of approximately $5.0 million. As of December 31, 2010, the Debtor's consolidated balance sheet reflected total assets of approximately $9.1 million and total liabilities of approximately $19.8 million.

### *Events Leading to Chapter 11 Filing*

During 2010, the Debtor experienced a downturn in all of its business segments. The decrease in revenue was due, in part, to one of the Debtor's largest customers placing fewer government orders than placed in previous years. In addition, the demise of Nortel and its acquisition by Avaya, Inc. negatively impacted the alarms management segment of the Debtor's business due to the uncertainty of the Nortel distributors to embrace the Avaya product. In response, Teltronics has developed new interfaces to provide better reporting on the Avaya products. The Debtor's electronic manufacturing business also experienced a down turn in its business.

As part of a planned restructuring, the Debtor attempted, but has been unsuccessful, in refinancing its current debt and providing additional working capital for its business operations. This has played a particular crucial part in the Debtor's current financial issues as the Debtor's credit agreement with Wells Fargo had expired in July 2010. The Debtor has entered into fourteen amendments to the credit agreement with Wells Fargo, the last of which expired on June 15, 2011, leaving the Debtor with no available cash to fund its operations.

Additionally, the Debtor also attempted to negotiate a sale of a portion of its maintenance contracts, including those with the New York City Department of Education, to an independent third party. The decision to negotiate the sale was made to raise additional capital that would have allowed the Debtor to focus on its core products. The possible sale, through no fault of either the purchaser or seller, was not able to be consummated.

A combination of the foregoing factors resulted in the Debtor's decision to file for Chapter 11 protection with this Court on June 27, 2011.

# CERTAIN FEDERAL INCOME TAX CONSEQUENCES

## General

The tax consequences of the Plan to Holders of Claims and Holders of Equity Interests (collectively, "Holders") are discussed below. This discussion of the federal income tax consequences of the Plan to Holders under U.S. federal income tax law, including the Internal Revenue Code of 1986, as amended (the "Tax Code"), is provided for informational purposes only. While this discussion addresses certain of the material tax consequences of the Plan, it is not a complete discussion of all such consequences and is subject to substantial uncertainties. Moreover, the consequences to a Holder may be affected by matters not discussed below (including, without limitation, special rules applicable to certain types of persons, such as persons holding non-vested stock or otherwise subject to special rules, nonresident aliens, life insurance companies, and tax-exempt organizations) and by such Holder's particular tax situation. In addition, this discussion does not address any state, local, or foreign tax considerations that may be applicable to particular Holders.

**HOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.**

**THE DEBTOR'S GENERAL BANKRUPTCY COUNSEL HAS NO TAX EXPERTISE AND HAS NOT RESEARCHED OR ANALYZED TAX CONSEQUENCES RESULTING FROM THE PLAN.**

**SOME OF THE ISSUES DISCUSSED BELOW ARE COMPLEX, AND THERE CAN BE NO ASSURANCE OF THE ACCURACY OF THIS INFORMATION.**

## General Federal Income Tax Consequences to Holders

*In General.* The following discussion addresses certain of the material consequences of the Plan to Holders. Under the Plan, the tax consequences of the Plan to a Holder will depend, in part, on the type of consideration received in exchange for the Claim or Equity Interest and the tax status of the Holder, such as whether the Holder is an individual, corporation or other entity, whether the Holder is a resident of the United States, the accounting method of the Holder, and the tax classification of the Holder's particular Claim or Equity Interest. **HOLDERS ARE STRONGLY ADVISED TO CONSULT THEIR OWN TAX ADVISORS WITH RESPECT TO THE TAX TREATMENT UNDER THE PLAN OF THEIR PARTICULAR CLAIM OR EQUITY INTEREST.**

*Tax Consequences to Holders.* Holders are urged to consult with their tax advisors as to the consequences of the Plan to them. Among the issues Holders and their advisors may wish to consider are:

        (1)    The extent to which a Holder may be entitled to a bad debt deduction or a worthless securities loss.

(2)     The extent to which a Holder may recognize gain or loss on the exchange of its Claim or Equity Interest for property, debt, and stock of the Debtor and the character of that gain or loss.

(3)     The basis and the holding period for any property, debt, and stock received by a Holder.

(4)     Whether the original issue discount rules, market discount rule, and amortizable bond premium rules apply to any debt received by a Holder.

(5)     The treatment of property, stock, or debt, if any, received by a Holder in satisfaction of accrued interest.

(6)     The effect of a Holder receiving deferred distributions or distributions that are contingent in amount.

PERSONS CONCERNED WITH THE TAX CONSEQUENCES OF THE PLAN SHOULD CONSULT THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS. THE DEBTOR MAKES THE ABOVE-NOTED DISCLOSURE OF POSSIBLE TAX CONSEQUENCES FOR THE SOLE PURPOSE OF ALERTING READERS TO TAX ISSUES THEY MAY WISH TO CONSIDER. THE DEBTOR CANNOT AND DOES NOT REPRESENT THAT THE TAX CONSEQUENCES MENTIONED ABOVE ARE COMPLETELY ACCURATE BECAUSE, AMONG OTHER THINGS, THE TAX LAW EMBODIES MANY COMPLICATED RULES THAT MAKE IT DIFFICULT TO STATE ACCURATELY WHAT THE TAX IMPLICATIONS OF ANY ACTION MIGHT BE.

## VOTING ON AND CONFIRMATION OF THE PLAN

### Confirmation and Acceptance by All Impaired Classes

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan if all of the requirements of Bankruptcy Code Section 1129 are met. Among the requirements for confirmation of a plan are that the plan be accepted by all impaired classes of claims and equity interests, and satisfaction of the matters described below.

*Feasibility.* A plan may be confirmed only if it is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor. The Debtor believes that it will be able to perform its obligations under the Plan without further financial reorganization.

25

The Plan provides for the sale of substantially all of the assets of the Debtor (or, in the alternative, the sale of the New Equity Interest in the Debtor) to the Purchaser or such other winning bidder as approved by order of the Bankruptcy Court. On the Closing Date, substantially all of the Debtor's assets (or, in the alternative, the New Equity Interest) will be sold to the Purchaser. Thus, the Plan provides for either the liquidation or the reorganization of the Debtor and for Cash payments to Holders of Allowed Claims primarily out of the Sale Proceeds received by the Debtor under the Purchase Agreement. On the Closing Date, the DIP Loan Claims of Wells Fargo and the Wells Fargo Allowed Secured Claim in Class 2 will be paid in full from the Sale Proceeds. Thereafter, the net Sale Proceeds following payment to Wells Fargo will be transferred into the Liquidating Trust, which will be managed by the Liquidating Trustee who will implement the terms of the Plan, including making Distributions to Creditors.

The Plan provides for Cash payments to be made by the Liquidating Trustee to Holders of Allowed Claims out of the Liquidating Trust Assets. The source of the funds to make such Cash payments will primarily be the Sale Proceeds. At the present time, the Debtor is unable to predict with certainty the ultimate amount of the Sale Proceeds which will result from a sale of the Debtor's assets (or, in the alternative, the sale of the New Equity Interest in the Debtor). It is contemplated, however, that the Sale Proceeds will be in an amount sufficient to (i) fund in full, in Cash, the expected payments required under the Plan to the Holders of Allowed Administrative Expense Claims (including Allowed Administrative Expense Claims of Professionals), the DIP Loan Claims, Allowed Priority Tax Claims, Allowed Priority Claims, the Secured Claims of Wells Fargo in Class 2, the Allowed Secured Tax Claims of Governmental Units in Class 3, the Allowed Other Secured Claims in Class 4, and the Allowed Unsecured Convenience Claims in Class 5, and (ii) provide a Distribution to the Holders of Allowed Unsecured Claims in Class 6. Each Holder of an Allowed Class 8 Claim will receive a Distribution, in Cash, in an amount equal to the sum of one hundred percent (100%) of such Holder's Allowed Class 8 Claim; provided that, such Distribution will be made to such Holder only after the payment of the Claims of any and all Classes higher in priority under the Plan. The Debtor does not expect there will be any Class 8 Claims. As of the Effective Date, all of the Class 7 Intercompany Claims and the Class 12 Equity Interests will automatically be deemed cancelled, annulled, and extinguished without any further action by any party and will be of no further force and effect. The Holders of the Class 7 Intercompany Claims and the Class 12 Equity Interests will not receive any Distribution or retain any Property or equity interest under the Plan on account of such Intercompany Claims and Equity Interests. As of the Distribution Date and only after the payment of the Allowed Claims of any and all Classes of higher priority, each Holder of Preferred Stock in Class 9, Class 10, and Class 11 shall receive, to the extent of available funds, a distribution (in amount and priority) to which such Holders are entitled under the Certificate of Incorporation of the Debtor. Class 13 Subsidiary Equity Interests will not receive any Distribution under the Plan.

The obligations under the Plan to Holders of contingent, unliquidated and Disputed Claims cannot be ascertained without the determination of the validity and amount of those Claims by the Bankruptcy Court. Until the Claim determination process is complete, the exact amount to be received by Unsecured Creditors cannot be ascertained.

26

*Best Interests Standard.* The Bankruptcy Code requires that the Plan meet the "best interest" test, which requires that members of a Class must receive or retain under the Plan, property having a value not less than the amount which the Class members would have received or retained if the Debtor was liquidated under Chapter 7 on the same date. The Debtor believes that Distributions to all Impaired Classes of Claims in accordance with the terms of the Plan would exceed the net distribution that would otherwise take place in Chapter 7. See "ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN— Liquidation under Chapter 7 or Chapter 11."

## Confirmation Without Acceptance by All Impaired Classes

If one or more of the Impaired Classes of Claims or Equity Interests does not accept the Plan, the Plan may nevertheless be confirmed and be binding upon the non-accepting Impaired Class under the "cram-down" provisions of the Bankruptcy Code, if the Plan does not "discriminate unfairly" and is "fair and equitable" to the non-accepting Impaired Classes under the Plan.

*Discriminate Unfairly.* The Bankruptcy Code requirement that a plan not "discriminate unfairly" means that a dissenting class must be treated equally with respect to other classes of equal rank. The Debtor believes that the Plan does not "discriminate unfairly" with respect to any Class of Claims or Equity Interests because no Class is afforded treatment which is disproportionate to the treatment afforded other Classes of equal rank.

*Fair and Equitable Standard.* The "fair and equitable" standard, also known as the "absolute priority rule," requires that a dissenting class receive full compensation for its allowed claims or interests before any junior class receives any distribution. The Debtor believes the Plan is fair and equitable to all Classes pursuant to this standard.

With respect to the Impaired Class of Unsecured Claims, Bankruptcy Code Section 1129(b)(2)(B) provides that a plan is "fair and equitable" if it provides that (i) each holder of a claim of such a class receives or retains on account of such claim, property of a value as of the effective date of the plan equal to the allowed amount of such claim; or (ii) the Holder of any claim or interest that is junior to the claims of such class will not receive or retain any property under the plan on account of such junior claim or interest. The Debtor believes that the Plan meets these standards.

Accordingly, if necessary, the Debtor believes that the Plan meets the requirements for Confirmation by the Bankruptcy Court, notwithstanding the non-acceptance by an Impaired Class of Claims.

The Debtor intends to evaluate the results of the balloting and determine whether to seek Confirmation of the Plan in the event that less than all the Impaired Classes of Claims do not vote to accept the Plan. The determination as to whether to seek Confirmation under such circumstances will be announced before or at the Confirmation Hearing.

**Absolute Priority Rule**

The Bankruptcy Code and other applicable law establish the priority for distribution of funds in bankruptcy cases. These priority provisions are sometimes referred to as the "absolute priority" rule. Normally, and subject to exceptions not relevant here, valid secured claims are first paid to the extent of the amount of the claim or the value of the claimant's collateral (if less than the claim).

Any property in the bankruptcy estate, net of the valid secured claims described above, is first distributed to holders of priority claims, including (a) the costs of administering the bankruptcy case, including the cost of operating the Debtor's business during the Bankruptcy Case; (b) certain wage and benefit claims; and (c) certain tax claims. After payment of priority claims, unsecured creditors share pro rata in the remaining funds until paid in full. Equity holders (i.e., stockholders) are paid only after all creditors have been paid.

**Non-Confirmation of the Plan**

If the Plan is not confirmed by the Bankruptcy Court, the Court may permit the filing of an amended plan, dismiss the Bankruptcy Case, or convert the Bankruptcy Case to Chapter 7. In a Chapter 7 case, the Debtor's assets would be distributed to the Unsecured Creditors after the payment of all Secured Claims, costs of administration and the payment of priority claims.

The cost of distributing the Plan and this Disclosure Statement, as well as the costs, if any, of soliciting acceptances, will be borne by the Debtor.

## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed, the potential alternatives include (a) alternative plans under Chapter 11, (b) dismissal of the Bankruptcy Case, or (c) conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code.

**Alternative Plans of Reorganization**

If the Plan is not confirmed, the Debtor or, subject to further determination by the Bankruptcy Court as to extensions of exclusivity under the Bankruptcy Code, any other party in interest in the Bankruptcy Case could attempt to formulate and propose a different plan or plans. The Debtor believes that the Plan will enable Creditors to be paid the maximum amount possible for their Allowed Claims.

**Liquidation under Chapter 7 or Chapter 11**

If a plan is not confirmed, the Bankruptcy Case may be converted to a Chapter 7 liquidation case. In a Chapter 7 case, a trustee would be elected or appointed to liquidate the assets of the Debtor. The proceeds of the liquidation would be distributed to the Creditors of the Debtor in accordance with the priorities established by the Bankruptcy Code.

In general, the Debtor believes that liquidation under Chapter 7 would result in diminution of the value of the interests of the Creditors because of (a) additional administrative expenses involved in the appointment of a trustee and attorneys, accountants and other professionals to assist such trustee; (b) additional expenses and claims, some of which might be entitled to priority, which would arise by reason of the liquidation; (c) the inability to utilize the work product and knowledge of the Debtor and its Professionals; and (d) the substantial delay which would elapse before Creditors would receive any distribution in respect of their Claims.

In a liquidation under Chapter 11, the Debtor's assets would be liquidated in an orderly fashion over a more extended period of time than in liquidation under Chapter 7. The Debtor believes that the Plan is superior to liquidation under Chapter 7.

## SUMMARY, RECOMMENDATION AND CONCLUSION

The Plan provides for an orderly and prompt distribution to Holders of Allowed Claims against the Debtor. The Debtor believes that its efforts to maximize the return for Creditors have been full and complete. The Debtor further believes that the Plan is in the best interests of all Creditors, even though Unsecured Creditors may not be paid in full. In the event of a liquidation of the Debtor's assets under Chapter 7 of the Bankruptcy Code, the Debtor believes there would be a lesser distribution to Unsecured Creditors. For these reasons, the Debtor believes that the Plan is in the best interests of all Creditors and urges that the Plan be accepted.

Tampa, Florida
Dated as September 23, 2011

Respectfully submitted,

TELTRONICS, INC.

By: _____
Ewen Cameron, President

/s/ Elena Paras Ketchum
Charles A. Postler (Florida Bar No. 455318)
Elena Paras Ketchum (Florida Bar No. 0129267)
STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone:      (813) 229-0144
Facsimile:      (813) 229-1811
Email:          cpostler@srbp.com
Email:          eketchum@srbp.com
Counsel for Debtor and Debtor in Possession