UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:  Chapter 11

TELTRONICS, INC.,  Case No. 8:11-bk-12150-KRM

Debtor.
_____/

NOTICE OF FILING
DIP LOAN DOCUMENT EXECUTED
WITH WELLS FARGO CAPITAL FINANCE, INC.

Teltronics, Inc., as debtor and debtor in possession (the "**Debtor**"), by and through its undersigned attorneys, hereby files the following document with the Court:

1. Amendment Number Sixteen to Credit Agreement [DIP Financing] dated as of September 23, 2011, by and between Wells Fargo Capital Finance, Inc. and Teltronics, Inc., a fully executed copy of which is attached hereto as Exhibit A

Dated: September 30, 2011

/s/ Elena Paras Ketchum
Charles A. Postler (Florida Bar No. 455318)
Elena Paras Ketchum (Florida Bar No. 0129267)
STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
PH   (813) 229-0144
FAX  (813) 229-1811
Attorneys for Debtor

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **Notice of Filing DIP Loan Documents Executed with Wells Fargo Capital Finance, Inc.** has been furnished on this 30th day of September, 2011 via **CM/ECF Transmission** (with Exhibit) and/or by **U.S. Mail** (without Exhibit) to all parties listed on the attached Local Rule 1007-2 Parties in Interest List.

/s/ Elena Paras Ketchum
Elena Paras Ketchum

# EXHIBIT A

```
Label Matrix for local noticing            ACTIVE SALES ASSOC, INC                 American Express Travel Related Services Co
113A-8                                     ALEX WU, OWNER                          c/o Becket and Lee LLP
Case 8:11-bk-12150-KRM                     7411 114TH AVE. NORTH, STE 313          POB 3001
Middle District of Florida                 LARGO, FL 33773-5127                    Malvern PA 19355-0701
Tampa
Fri Sep 30 15:54:04 EDT 2011

DATACOMM CONSULTING GROUP                  DELCO ELECTRICAL CORP.                  Dun & Bradstreet
Steven Orlando                             JOHN DELUCA, PRESIDENT                  % Receivable Management Services
1276 CASTLETON AVE                         766 5TH AVENUE                          Attn: Ronald L. Rowland, Agent
STATEN ISLAND, NY 10310-1718               BROOKLYN, NY 11232-1619                 307 International Cir., Ste 270
                                                                                   Hunt Valley, MD 21030-1322

EXPERTEL COMMUNICATIONS, LTD               GM DATA COMMUNICATIONS INC              Graybar Electric Company, Inc.
MICHAEL GAVIN, PRESIDENT                   MIKE PORTOGHESE, RCDD                   c/o Jill Levi, Esq.
19915 23rd AVENUE                          48 WOODBINE COURT                       444 Madison Ave., #1202
WHITESTONE, NY 11357-4123                  FLORAL PARK, NY 11001-2718              New York, NY 10022-6959

Gulfcoast Property #1, LLC                 Gulfcoast Property No. 1, LLC           Gulfcoast Property No.1, LLC
c/o Edwin G. Rice                          c/o Edwin G. Rice                       c/o Edwin G. Rice
Glenn Rasmussen Fogarty & Hooker, P.A.     Glenn Rasmussen Fogarty & Hooker, P.A.  Glenn Rasmussen Fogarty & Hooker, P.A.
100 S. Ashley Drive, Suite 1300            100 S. Ashley Drive, Suite 1300         100 S. Ashley Drive, Ste 1300
Tampa, FL 33602-5309                       Tampa, FL 33602-5309                    Tampa, FL 33602-5309

Official Committee of Unsecured Creditors  POWELL ELECTRONICS INC                  SAT UTILITY CONTRACTING LLC
c/o Steven J. Solomon, Esq.                Debra Frederick, Credit Manager         ANTONIO JABRANE, OWNER
GrayRobinson, P.A.                         200 COMMODORE DRIVE                     7318 69 PLACE
1221 Brickell Avenue, Suite 1600           LOGAN TOWNSHIP, NJ 08085-1270           GLENDALE, NY 11385-7114
Miami, Florida 33131-3247

STARCOM COMM SERVICES, INC.                Susan D Profant, CFCA, CLA, FRP, Paralegal  U.S.Security and Exchange Commission
MARTIN A. GAVIN, PRESIDENT                 Ken Burton, Jr.                         Office of Reorganization
41 CENTRAL DRIVE                           Manatee County Tax Collector            3475 Lenox Road, N.E., Ste 1000
FARMINGDALE, NY 11735-1201                 4333 US 301 North                       Atlanta, GA 30326-3235
                                           Ellenton, FL 34222-2413

WEATHER WISE CONDITIONING CORP             Wells Fargo Bank, N.A., as successor to Wach  Wells Fargo Capital Finance, Inc.
333 STAGG STREET                           c/o Donald Kirk, Esq.                   c/o Donald Kirk, Esq.
BROOKLYN, NY 11206-1701                    Fowler White Boggs P.A.                 Fowler White Boggs P.A.
                                           P.O. Box 1438                           Post Office Box 1438
                                           Tampa, FL 33601-1438                    Tampa, FL 33601-1438

Wells Fargo Capital Finance, Inc.          Wells Fargo Capital Finance, Inc.
c/o Donald R. Kirk, Esq.                   % Pamela Webster, Esq.
Fowler White Boggs P.A.                    Buchalter Nemer
P.O. Box 1438                              1000 Wilshire Blvd., Ste 1500
Tampa, FL 33601-1438                       Los Angeles, CA 90017-1730
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(d)Gulfcoast Property No. 1, LLC           (d)Wells Fargo Capital Finance, Inc.    End of Label Matrix
c/o Edwin G. Rice                          c/o Donald R. Kirk, Esq.                Mailable recipients    22
Glenn Rasmussen Fogarty & Hooker, P.A.     Fowler White Boggs P.A.                 Bypassed recipients     2
100 S. Ashley Drive, Suite 1300            P.O. Box 1438                           Total                  24
Tampa, FL 33602-5309                       Tampa, FL 33601-1438
```

# AMENDMENT NUMBER SIXTEEN TO CREDIT AGREEMENT

# [DIP FINANCING]

This Amendment Number Sixteen to Credit Agreement [DIP Financing] (this "Second DIP Amendment") is entered into as of September 1, 2011, by and among the lenders identified on the signature pages hereof (such lenders, together with their respective successors and permitted assigns, are referred to hereinafter each individually as a "Lender" and collectively as the "Lenders"), and WELLS FARGO CAPITAL FINANCE, INC., a California corporation, formerly known as Wells Fargo Foothill, Inc., as the arranger and administrative agent for the Lenders (in such capacity, together with its successors and assigns in such capacity, "Agent"), on the one hand, and TELTRONICS, INC., a Delaware corporation, as debtor in possession in the Bankruptcy Case ("Borrower"), on the other hand, with reference to the following facts:

A. On or about May 31, 2007, Borrower, Agent and Lenders have previously entered into the Agreement, the Security Agreement and the other Loan Documents.

B. On or about June 29, 2011, Borrower, Agent and Lenders entered into that certain Amendment Number Fifteen to Credit Agreement [DIP Financing] pursuant to which Lender agreed to provide financing to Borrower during the Bankruptcy Case pursuant to the terms therein and the Financing Orders relating thereto.

C. Borrower has requested that Lenders continue to provide financing to Borrower during the Bankruptcy Case under the Agreement and the Security Agreement, each as amended by this Second DIP Amendment and the Financing Orders, and Agent and Lenders have agreed with such requests on the condition that Borrower execute and deliver this Second DIP Amendment and comply with all of the terms and conditions set forth herein.

D. Agent and Lenders have agreed to amend the Loan Documents, as previously amended by the DIP Amendment, pursuant to this Second DIP Amendment and the Financing Orders to continue to provide loans and financing to Borrower during the Bankruptcy Case upon the terms and conditions set forth in the Loan Documents, as previously amended by the DIP Amendment, and amended by this Second DIP Amendment, and the Financing Orders.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby amend and supplement the Loan Documents as follows:

1. **DEFINITIONS.** All initially capitalized terms used in this Second DIP Amendment shall have the meanings given to them in the Loan Documents unless specifically defined herein.

2. **AMENDMENTS TO AGREEMENT.**

   (a) *Definitions – New*. Schedule 1.1 to Section 1.1 of the Agreement is amended by adding the following new definitions thereto in alphabetical order:

"Strategic Chapter 11 Plan" shall mean a Chapter 11 plan of reorganization in the Bankruptcy Case that provides for the payment in full, in cash, of all Obligations owed to Lenders and Agent on or before December 6, 2011, and all documents relating thereto, including without limitation orders issued by the Bankruptcy Court, each on terms and in form and substance acceptable to Agent, and all proceedings before the Bankruptcy Court relating thereto.

"Strategic 363 Sale" shall mean a sale of all or substantially all assets of Borrower pursuant to section 363 of the Bankruptcy Code that provides for the payment in full, in cash, of all Obligations owed to Lenders and Agent on or before December 6, 2011, and all documents relating thereto, including without limitation orders issued by the Bankruptcy Court, each on terms and in form and substance acceptable to Agent, and all proceedings before the Bankruptcy Court relating thereto.

"Strategic Transaction" shall mean (i) the refinancing of the Obligations, (ii) a Strategic 363 Sale or such other sale of all or a portion of the assets (other than in the ordinary course) of Borrower that will satisfy the Obligations, (iii) a recapitalization of Borrower in an amount that will satisfy all Obligations, or (iv) the confirmation by the Bankruptcy Court and consummation of a Strategic Chapter 11 Plan.

(b) **Definitions – Amended**. Schedule 1.1 of Section 1.1 of the Agreement is amended by replacing the applicable definitions therein (or portions thereof) with the following new definitions in alphabetical order:

Clause (b)(ii) of "Borrowing Base" is amended by deleting that clause in its entirety and replacing it as follows:

(ii) 15% of the value of Eligible Inventory valued at cost; provided that notwithstanding anything to the contrary, the advance rate provided in this clause (ii) has always been with respect to Eligible Inventory, *minus*

"Loan Documents" means the Agreement, the DIP Amendment, the Second DIP Amendment, the Financing Orders, the Disclosure Statement, the Bank Product Agreements, any Borrowing Base Certificate, the Cash Management Agreements, the Control Agreements, the Copyright Security Agreement, the Fee Letter, the Guaranty, the Intercompany Subordination Agreement, the Letters of Credit, the Mortgages, the Patent Security Agreement, the Security Agreement, the Trademark Security Agreement, any note or notes executed by Borrower in connection with the Agreement and payable to a member of the Lender Group, and any other agreement entered into, now or in the future, by Borrower or any of its Subsidiaries and the Lender Group in connection with the Agreement.

"Maximum Revolver Amount" means $2,750,000.00.

(c) **Conditions Precedent (DIP)**. Section 3.2(A)(aa) of the Agreement is amended as follows:

(aa) <u>Final Financing Order</u>. The Final Financing Order shall have been entered by the Bankruptcy Court on or before September 23, 2011.

(d) <u>Term</u>. Section 3.3 of the Agreement is amended as follows:

3.3 Term. This Agreement shall continue in full force and effect until the earliest to occur of (the "<u>Maturity Date</u>"): (i) December 6, 2011, (ii) the effective date and consummation of a confirmed Strategic Chapter 11 Plan that provides for and in fact accomplishes the satisfaction of the Obligations in full in cash, (iii) the occurrence of an Event of Default under the DIP Amendment and a determination by Agent to terminate its commitment, or (iv) the closing of a Strategic 363 Sale that provides for and in fact accomplishes the satisfaction of the Obligations in full in cash.

(e) <u>Affirmative Covenants (DIP)</u>. Section 5 of the Agreement is amended by adding a new section 5.20(k) as follows:

(k) <u>Strategic Transaction Milestones</u>. Accomplish each of the following events on or before each of the following dates:

| MILESTONE | EVENT | DATE |
|---|---|---|
| First Milestone | Complete and distribute offering materials regarding the Strategic Transaction | 9/2/2011 |
| Second Milestone | File the Strategic Chapter 11 Plan and related Disclosure Statement | 9/23/2011 |
| Third Milestone | File motion to approve bid procedures relating to the Strategic Chapter 11 Plan or, in the alternative, the Strategic 363 Sale | 10/14/2011 |
| Fourth Milestone | Indentify a stalking horse bidder relating to the Strategic Chapter 11 Plan or, in the alternative, the Strategic 363 Sale | 10/14/2011 |
| Fifth Milestone | Hearing before the Bankruptcy Court regarding a motion to approve bid procedures relating to the Strategic Chapter 11 Plan or, in the alternative, the Strategic 363 Sale | 10/21/2011 |
| Sixth Milestone | Hearing before the Bankruptcy Court on a motion to approve a Disclosure Statement relating to the Strategic Chapter 11 Plan | 10/21/2011 |
| Seventh Milestone | Entry of an order by the Bankruptcy Court approving the Disclosure Statement relating to the Strategic Chapter 11 Plan | 10/21/2011 |
| Eighth Milestone | Completion of an auction regarding new value equity for Borrower as the "reorganized debtor" under the Strategic | 11/21/2011 |

|  | Chapter 11 Plan or in the alternative, the Strategic 363 Sale |  |
|---|---|---|
| Ninth Milestone | Hearing before the Bankruptcy Court regarding confirmation of the Strategic Chapter 11 Plan or, in the alternative, approval of the Strategic 363 Sale | 11/28/2011 |
| Tenth Milestone | Entry of an order approving the confirmation of a Strategic Chapter 11 Plan or, in the alternative, the Strategic 363 Sale | 11/28/2011 |
| Eleventh Milestone | Payment in full, in cash, of all Obligations owed to Agent and Lenders pursuant to the Strategic Chapter 11 Plan or the Strategic 363 Sale | 12/6/2011 |

(f) **Events of Default (DIP)**. Section 7 of the Agreement is amended by adding a new section 7.14 as follows:

7.14 Events of Default (DIP).

(n) Strategic Transaction. Borrower fails to accomplish, to Agent's satisfaction, of any of the events on or before the last date by which Borrower is to accomplish such event as set forth in section 5.20(k) (unless otherwise agreed to by the DIP Lender).

(g) Exhibit A [Budget] currently attached to the Agreement is hereby amended by deleting such exhibit in its entirety and replacing it with Exhibit A attached hereto.

3. **REPRESENTATIONS AND WARRANTIES**.

(a) **Acknowledgment of Representations and Warranties**. Borrower hereby affirms to Agent and Lenders that all of Borrower's representations and warranties set forth in the Agreement are true, complete and accurate in all respects as of the date hereof.

4. **CONDITIONS PRECEDENT**. The effectiveness of this Amendment is hereby conditioned upon receipt by Agent of (i) a copy of this Second DIP Amendment duly executed by each party hereto, and (ii) entry of the Final Financing Order in the Bankruptcy Case.

5. **RELEASE**.

(a) In consideration of the agreements of Lenders and Agent contained in this Amendment and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged by Borrower, Borrower, on behalf of itself and its successors, and assigns, but expressly not on behalf of the Committee (Borrower and all such other persons, excluding the Committee, being referred to collectively as "Releasors" and individually as a "Releasor"), absolutely, unconditionally and irrevocably releases, remises and forever discharges each Lender and Agent, and each of their successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents

and other representatives (Lenders, Agent and all such other persons being referred to collectively as "Releasees" and individually as a "Releasee"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which Releasors may now or hereafter own, hold, have or claim to have against Releasees or any of them for, upon, or by reason of any circumstance, action, cause or thing whatsoever which arises at any time on or prior to the date of this Amendment, for or on account of, or in relation to, or in any way in connection with any of the Loan Documents or transactions arising out of or in connection with any of the Loan Documents.

(b) It is the intention of Borrower that this Amendment and the release set forth above constitute a full and final accord and satisfaction of all claims that may have or hereafter be deemed to have against Releasees as set forth in this Amendment. In furtherance of this intention, Borrower, on behalf of itself and each other Releasor, expressly waives any statutory or common law provision that would otherwise prevent the release set forth above from extending to claims that are not currently known or suspected to exist in any Releasor's favor at the time of executing this Amendment and which, if known by Releasors, might have materially affected the agreement as provided for hereunder. Borrower, on behalf of itself and each other Releasor, acknowledges that it is familiar with Section 1542 of California Civil Code:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Borrower, on behalf of itself and each other Releasor, waives and releases any rights or benefits that it may have under Section 1542 to the full extent that it may lawfully waive such rights and benefits, and Borrower, on behalf of itself and each other Releasor, acknowledges that it understands the significance and consequences of the waiver of the provisions of Section 1542 and that it has been advised by its attorney as to the significance and consequences of this waiver.

(c) Borrower understands, acknowledges and agrees that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

(d) Borrower agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered will affect in any manner the final, absolute and unconditional nature of the release set forth above.

(e) Borrower, on behalf of itself and each other Releasor, absolutely, unconditionally and irrevocably, covenants and agrees with and in favor of each Releasee that it

will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Claim released, remised and discharged by Borrower pursuant to Section 5(a) above. If Borrower or any of its successors, assigns or other legal representations violates the foregoing covenant, Borrower, for itself and each other Releasor, agrees to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

6. **COSTS AND EXPENSES.** Borrower shall pay to Agent and Lenders all of Agent's and Lenders' out-of-pocket costs and expenses (including, without limitation, the fees and expenses of its counsel, which counsel may include any local counsel deemed necessary, search fees, filing and recording fees, documentation fees, appraisal fees, travel expenses, and other fees) arising in connection with the preparation, execution, and delivery of this Second DIP Amendment and all related documents and the Bankruptcy Case.

7. **LIMITED EFFECT.** In the event of a conflict between the terms and provisions of this Second DIP Amendment and the terms and provisions of the Loan Documents, the terms and provisions of this Second DIP Amendment shall govern. In the event of a conflict between the terms and provisions of this Second DIP Amendment and the terms and provisions of a Financing Order, the terms and provisions of the Financing Order shall govern. In all other respects, the Loan Documents, as amended and supplemented hereby, shall remain in full force and effect.

8. **COUNTERPARTS; EFFECTIVENESS.** This Second DIP Amendment may be executed in any number of counterparts and by different parties on separate counterparts, each of which when so executed and delivered shall be deemed to be an original. All such counterparts, taken together, shall constitute but one and the same amendment. This Second DIP Amendment shall become effective upon the execution of a counterpart of this Second DIP Amendment by each of the parties hereto. This Second DIP Amendment is a Loan Document and is subject to all the terms and conditions, and entitled to all the protections, applicable to Loan Documents generally.

*[remainder of page left blank intentionally; signatures to follow]*

IN WITNESS WHEREOF, the parties hereto have executed this Second DIP Amendment as of the date first set forth above.

TELTRONICS, INC.,
a Delaware corporation, as Debtor in Possession,

By: _____
Name: _____EWEN CAMERON_____
Title: _____PRESIDENT / CEO_____

**WELLS FARGO CAPITAL FINANCE, INC.**,
a California corporation,
as Agent, Lender and Required Lender

By: _____
Name: Matthew Maclay
Title: Vice President

## Schedule C-1

Commitments

| Lender | Revolver Commitment | Term Loan Commitment | Total Commitment |
|---|---|---|---|
| Wells Fargo Capital Finance, Inc. | $2,750,000.00 | $1,086,971 | $3,836,971.00 |

# Exhibit A

Budget

See Attached

TC DIP Budget (9-13) v18.xlsx
Court Budget

| Category | 26-Aug | 2-Sep | 9-Sep | 16-Sep | 23-Sep | 30-Sep | 7-Oct | 14-Oct | 21-Oct | 28-Oct | 4-Nov | 11-Nov | 18-Nov | 25-Nov | 2-Dec | 9-Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | |
| Revenue | 770,448 | 113,690 | 285,821 | 176,984 | 440,438 | 680,606 | 334,706 | 315,456 | 182,615 | 1,404,263 | 284,670 | 232,363 | 146,686 | 393,328 | 638,818 | 365,015 | 6,476,012 |
| Pre-Petition Employee Catch-up | | | | | | | | | | | | | | | | | 6,476,012 |
| DIP Loan Advances | 5,000 | 10,693 | | | | | | | | | | | | | | | |
| Payroll | 241,750 | 1,743 | 266,449 | 1,281 | 266,000 | 15,000 | 264,000 | | 279,000 | | 264,000 | | 279,000 | | 264,000 | 163,914 | 2,192,263 |
| Insurance Related | | 6,354 | | 17,500 | 80,000 | 102,000 | 5,000 | 17,000 | 22,000 | 80,000 | 5,000 | 17,000 | 22,000 | 80,000 | 5,000 | | 458,354 |
| Real Estate and Other Leases | 14,720 | | | | 70,558 | 52,435 | 92,993 | 5,000 | 5,000 | 30,000 | 127,993 | 5,000 | 5,000 | | | | 408,198 |
| Real Estate - July | 28,435 | 5,000 | 5,000 | | 20,008 | | | | | | | | | | | | |
| Utilities and Telephone | 3,222 | 4,083 | | 398 | 24,500 | 25,000 | 10,000 | 15,000 | 10,000 | 15,000 | 10,000 | 15,000 | 10,000 | | 10,000 | | 58,443 |
| Contractors, Suppliers and Freight (Cash Management) | 72,812 | 219,513 | 8,551 | 83,157 | | 315,548 | 89,423 | 30,081 | (18,801) | 494,649 | 75,000 | | 25,000 | 100,928 | 65,000 | 25,000 | 187,203 |
| | | | | | | | | | | | | | | | | | 1,589,962 |
| Professionals | 4,500 | 60,000 | 75,000 | 52,900 | 75,000 | 80,000 | 50,000 | 50,000 | 49,500 | 291,500 | 40,000 | 40,000 | 30,000 | | 30,000 | 20,000 | 923,200 |
| Other | 1,721 | 7,694 | | 5,174 | 2,000 | 12,500 | 2,000 | 5,600 | 5,000 | 12,500 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 82,500 |
| | | | | | | | | | | | | | | | | | 8,051,629 |
| DIP Loan Advances | 425,000 | 315,000 | 355,000 | 160,000 | 548,066 | 524,488 | 513,415 | 122,061 | 371,899 | 867,649 | 526,993 | 82,000 | 370,000 | 225,928 | 399,000 | 228,134 | |
| Revolver Balance | 1,831,466 | 1,983,907 | 2,038,921 | 1,776,557 | 2,089,456 | 2,299,584 | 2,498,091 | 2,115,139 | 2,199,463 | 1,805,870 | 2,194,752 | 1,886,947 | 1,917,341 | 1,813,563 | 1,865,278 | 1,730,517 | |