UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:   Chapter 11

TELTRONICS, INC.,   Case No. 8:11-bk-12150-KRM

Debtor.
_____/   *Emergency Relief Requested*

DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) APPROVING
THE SALE OF, AND BIDDING PROCEDURES IN CONNECTION WITH THE SALE
OF, THE EQUITY INTERESTS IN TELTRONICS, INC., (II) APPROVING MINIMUM
OVERBID AMOUNT AND A BREAK-UP FEE, (III) APPROVING FORM AND
MANNER OF NOTICE OF THE SALE AND BIDDING PROCEDURES, AND
(IV) SETTING OBJECTION DEADLINES[1]

| A hearing on this Motion will be held on Friday, October 21, 2011, at 2:30 p.m., in Courtroom 9B, Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Tampa, Florida, before the Honorable K. Rodney May, Bankruptcy Judge. |
|---|

Teltronics, Inc., as debtor and debtor in possession (the "**Debtor**" or "**Teltronics**"), by and through its undersigned attorneys, respectfully requests the entry of an order by this Court (i) approving the sale of, and bidding procedures in connection with the sale of, new equity interests in Teltronics, Inc. to the party submitting the highest or best cash offer at an auction, (ii) approving a minimum overbid amount and a break-up fee in connection with such sale, (iii)

---

[1] This Motion is being filed to outline the bidding procedures which the Debtor requests the Court authorize in connection with the sale/auction of the New Equity Interests. The Debtor has received Letters of Intent (collectively, the "**Letter of Intent**") from three third party purchasers. However, on account of the Debtor's receipt of the Letter of Intent at the end of the day set by the Final DIP Financing Order [Doc. No. 155] for the filing of this Motion, the Debtor is still in the process of reviewing the terms of the Letter of Intent. It is premature, therefore, to set forth the amount of the offer, the Break-Up Fee and the Overbid Amount in this Motion prior to the Debtor's review of the Letter of Intent and these amounts have been noted with "To Be Announced" herein. The Debtor will either file an amendment to this Motion setting forth these terms prior to the October 21, 2011 hearing on this Motion, will announce such terms at the October 21, 2011 hearing, or will modify or withdraw this Motion to the extent any additional offers are received prior to the date of the October 21, 2011 hearing or to the extent the Letter of Intent is not acceptable to the Board of Directors of the Debtor. Capitalized terms used in this footnote shall have the meaning described to them hereinbelow in this Motion.

approving the form and manner of notice of the sale and the bidding procedures, and (iv) setting deadlines for objections to the sale. In support of this Motion, the Debtor states as follows:

## A. Jurisdiction and Venue

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief sought in this Motion include 11 U.S.C. §§105, 363, 1107 and 1108, Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure, and Local Rules 2002-1 and 6004-1.

## B. General Background

2. On June 27, 2011 (the "**Petition Date**"), the Debtor filed with this Court its Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.

3. The Debtor continues to operate its business and manage its property as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4. No previous application for the relief sought herein has been made by the Debtor to this Court or any other court.

5. No trustee or examiner has been appointed in this case. On June 30, 2011, the Office of the United States Trustee appointed an Unsecured Creditors Committee (the "**Committee**") in this case pursuant to Section 1102 of the Bankruptcy Code [Doc. No. 33]. On July 1, 2011, the Office of the United States Trustee filed a notice with the Court amending the membership of the Committee [Doc. No. 37]. On July 5, 2011, the Office of the United States Trustee filed a second notice with the Court further amending the membership of the Committee [Doc. No. 41].

6. The Debtor, a publicly-traded Delaware corporation, designs, installs, develops, manufactures and markets electronic hardware and application software products, and engages in

2

electronic manufacturing services primarily in the telecommunications industry. The Debtor provides telecommunications equipment, converged communications platforms and software solutions to over 20,000 customers worldwide. The Debtor's primary focus is the design, development, manufacturing, marketing and installation of PBX switching, converged communications applications and infrastructure monitoring solutions. The Debtor also provides electronic manufacturing services for companies in the military, security, industrial, medical and telecommunications sectors.

7. The Debtor's corporate headquarters and manufacturing facility is located at 2511 Corporate Way in Palmetto, Florida, and is comprised of 21,250 square feet of office space and 30,000 square feet of manufacturing space. The Debtor also has office locations in the States of New York, California, and Georgia, primarily to service customers in those locations.

8. The Debtor has four (4) wholly-owned subsidiaries, Teltronics Limited (UK), Teltronics Technical Services Limited (UK), 36371 Yukon Inc., and TTG Acquisition Corp.

9. For the fiscal year ended December 31, 2010, the Debtor's consolidated statement of operations reflected total net sales of approximately $26.2 million, total operating expenses of approximately $10.9 million, and a net operating loss of approximately $5.0 million. As of December 31, 2010, the Debtor's consolidated balance sheet reflected total assets of approximately $9.1 million and total liabilities of approximately $19.8 million.

### C. Sale and Purchase of New Equity Interests

10. Pursuant to the Debtor's proposed Plan of Reorganization (the "**Plan**"), all of the outstanding equity interests in Teltronics are being cancelled and extinguished as of the effective date of the Plan, and new equity interests (the "**New Equity Interests**") in Teltronics as reorganized pursuant to the Plan are being issued to the Prevailing Bidder (as defined below) pursuant to the bidding procedures described in this Motion. Under the Plan, the sale proceeds

will first be used to pay the allowed secured claims of Wells Fargo Capital Finance, Inc. ("**Wells Fargo**"), and thereafter the net sale proceeds remaining and certain other assets to be retained by the Debtor's bankruptcy estate will be transferred to a liquidating trust to be established on the effective date of the Plan. In addition, all of the claims against and liabilities of the Debtor will be channeled to the liquidating trust, such that the Prevailing Bidder will have no obligation or liability as to such claims and liabilities. A liquidating trustee will be appointed under the Plan to administer the assets contained in the liquidating trust and to resolve the claims against the Debtor.

11. As set forth in this Court's Final Order Granting Debtor's Emergency Motion for Authority to (A) Obtain Postpetition Financing from Wells Fargo Capital Finance, Inc. and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. § 364(c) and (d) and F.R.B.P. 4001, (B) Use Cash Collateral, and (C) Maintain its Existing Cash Management System dated September 23, 2011 [Doc. No. 155] (the "**Final DIP Financing Order**"), expedited procedures for the sale of the New Equity Interests under an auction process are contemplated and are to be completed prior to confirmation of the Plan. This expedited process is necessitated due to the fact that the Debtor has no monies to operate its business absent continued financing by Wells Fargo, and Wells Fargo has placed time constraints on continued financing. Pursuant to this Motion, the Debtor requests approval of an auction process that will be completed by no later than November 21, 2011. It is then anticipated that the Court will consider (i) approval of the sale to the Prevailing Bidder at a hearing to be held on November 22, 2011 and (ii) confirmation of the Plan at a hearing to be held on November 28, 2011.

12. On October 14, 2011, the Debtor received three letters of intent (collectively, the "**Letter of Intent**") from third party purchasers (each, a "**Purchaser**"), which provide for the

4

sale by the Debtor, and the purchase by the Purchaser, of the New Equity Interests. Copies of the Letter of Intent has been provided to counsel to Wells Fargo and counsel to the Committee. The Debtor is in the process of reviewing the Letter of Intent and, if necessary, negotiating the terms of the Letter of Intent with the Purchaser. The Debtor contemplates either filing an amendment to this Motion or, alternatively, announcing at the hearing on October 21, 2011, the terms of the Letter of Intent, including the amount of the offer, the Overbid Amount and the Break-Up Fee (as such terms are defined hereinbelow). The Debtor also contemplates that a stock purchase agreement to be used in the sale (the "**Purchase Agreement**") will be negotiated with the Purchaser and filed with the Court.

13. Section 363(b)(1) states that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). Courts usually defer to the business judgment of a debtor in deciding whether or not to authorize a debtor to sell property outside the ordinary course of business. See e.g., In re Continental Airlines, Inc., 780 F.2d 1223 (5th Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2nd Cir. 1983); In re Mason's Nursing Center, Inc., 73 E.R. 360, 362 (Bankr. S.D. Fla. 1987).

14. In considering whether a debtor is justified in selling property outside the ordinary course of business, courts consider four factors: (1) a sound business reason or emergency justifies a pre-confirmation sale; (2) adequate and reasonable notice of the sale was provided through interested parties; (3) the sale has been proposed in good faith; and (4) the purchase price is fair and reasonable.

15. The Debtor, through the exercise of its business judgment, has determined that, absent any viable offers to reorganize its business, it would be in the best interests of its creditors and its estate to maximize value through a sale of the New Equity Interests pursuant to the Plan, which will provide for the distribution of the sale proceeds and other available funds to its

5

creditors. Absent such a sale, the Debtor would most likely be facing a liquidation under Chapter 7 of the Bankruptcy Code which would achieve far less for creditors than a sale as described herein. The Debtor has engaged in extensive efforts to market the New Equity Interests and will recommend to the Court at the October 21, 2011 hearing if the proposed purchase price offered by the Purchaser is the highest and best offer received to date, is reasonable, represents fair market value, and is in the best interests of the estate. Moreover, the proposed sale is subject to higher and better offers which will insure that the price is fair and reasonable.

16. The transaction with the Purchaser will be negotiated in good faith and at arm's length between the Purchaser and the Debtor.

### D. Relief Requested

#### *Bidding and Sale Procedures*

17. The sale of the New Equity Interests to the Purchaser will be subject to higher or better offers. To ensure that maximum value is obtained, this Motion is being filed to seek approval of bidding procedures in connection with the sale of the New Equity Interests, including (a) approval of procedures for the submission of competing bids, and (b) approval of a break-up fee to the Purchaser. Further, this Motion is filed to seek approval of the form and manner of notice of the sale and of the bidding procedures.

18. The Debtor believes that the bidding procedures set forth in this Motion will assist in determining the highest and best offer available to the Debtor for the sale of the New Equity Interests and the other transactions contemplated by the Letter of Intent. The Debtor believes that these procedures are favorable to the Debtor, its estate and creditors, and create a fair and level playing field for all interested bidders. The Debtor submits that these proposed procedures will satisfy the interests of all creditors in assuring that the Debtor will achieve the maximum

value for the New Equity Interests and the other transactions contemplated by the Letter of Intent.

19. The Debtor requests that the Court conduct a hearing on this Motion, as soon as practicable and in any event no later than October 21, 2011, to consider entry of an order approving the bidding procedures set forth herein (the "**Bid Procedures Order**") and approving the form and manner of notice of the sale through the Bid Procedures Order.

20. Prior to the filing of this Motion, the Debtor, through its Court-approved investment banker, Triton Capital Partners, Ltd. ("**Triton**"), has solicited a significant number of parties regarding a potential purchase of the Debtor. Following the entry of the Bid Procedures Order, Triton will continue to market the New Equity Interests to all parties that have expressed an interest in acquiring the Debtor.

21. The Debtor requests that this Court approve the following procedures (the "**Bid Procedures**") for the submission and consideration of any written competing bid ("**Bid**") by any competing bidder ("**Bidder**") for the New Equity Interests:

    a) At least one (1) business day prior to the Bid Deadline (as defined below), a Bidder will be required to (i) execute a confidentiality agreement in form and content acceptable to the Debtor, (ii) execute a questionnaire evidencing such Bidder's qualification as an accredited investor in form and content acceptable to the Debtor, and (iii) provide relevant background and financial information satisfactory to the Debtor (including without limitation the latest available audited and unaudited financial statements) demonstrating the Bidder's financial ability to close and to consummate an acquisition of the New Equity Interests, such as (1) evidence of the Bidder's ability to assume or satisfy the terms and obligations of the Bidder's Agreement (as defined below) and pay the purchase price provided for therein, and/or (2) an unconditional lending commitment from a recognized financial institution or cash sources in the amount of the Bid. A Bidder that timely submits the foregoing documents and information and that the Debtor determines, in consultation with the Committee, is financially able to consummate the purchase of the New Equity Interests shall be a "**Qualified Bidder**" and shall be entitled to then submit a Bid for the New Equity Interests. The Purchaser will be deemed to be a Qualified Bidder.

b)     Any Qualified Bidder must deliver a Bid for the New Equity Interests by no later than 12:00 p.m. (Eastern Standard Time) on Friday, November 18, 2011 (the "**Bid Deadline**"), to the following parties: (i) Teltronics, Inc., Attn: Mr. Ewen Cameron, 2511 Corporate Way, Palmetto, Florida 34221 (Fax No.: 941/751-7724); (ii) counsel to the Debtor (Charles A. Postler, Esq. and Elena P. Ketchum, Esq., Stichter, Riedel, Blain & Prosser, P.A., 110 E. Madison Street, Suite 200, Tampa, Florida 33602 (Fax No.: 813/229-1811)); (iii) counsel to the Committee (Frank P. Terzo, Esq. and Steven Solomon, Esq., GrayRobinson, P.A., 1221 Brickell Avenue, Suite 1650, Miami, Florida 33131 (Fax No. 305/416-6887)); (iv) Triton Capital Partners, Ltd. c/o David J. Asmann, 566 West Lake Street, Suite 235, Chicago, Illinois 60661 (Fax No. 312/575-0168); and (v) the Office of the United States Trustee, Attn: Denise Barnett, Timberlake Annex, 501 East Polk St., Suite 1200, Tampa, Florida 33602 (Fax No. 813/228-2303).

c)     In order to be a qualified bid (a "**Qualified Bid**"), a Bid submitted by a Qualified Bidder must include the following:

    i)     A copy of the initial written purchase offer, executed by such Qualified Bidder, in substantially the form of the Purchase Agreement (the "**Bidder's Agreement**"); provided, however that any Bidder's Agreement which contains terms different from the Purchase Agreement must be black-lined to show any changes made by such Qualified Bidder to the form of the Purchase Agreement, and must be signed by such Qualified Bidder and be subject to acceptance by the Debtor solely by its execution thereof and necessary Court approval. The Debtor may accept modifications to the Purchase Agreement as submitted by a Qualified Bidder who otherwise complies with the Bid Procedures if the Debtor determines, in the exercise of its business judgment, that the proposed modifications result in a higher or better offer for the New Equity Interests.

    ii)     A cash purchase price for the New Equity Interests of $ (To Be Announced) above (the "**Overbid Amount**") the $ (To Be Announced) cash purchase price offered by the Purchaser.

    iii)     A designation of any executory contracts or unexpired non-residential real property leases such Qualified Bidder desires the Debtor to assume under the Plan (the "**Designated Contracts**").

    iv)     The Bid shall not be contingent upon receipt of financing or due diligence past the Bid Deadline.

    v)     The Bid shall be valid and enforceable and binding on the Qualified Bidder through the closing date of the sale transaction.

vi) The Bid shall not contain any conditions precedent to such Qualified Bidder's obligation to purchase the New Equity Interests, other than as may be included in the Purchase Agreement.

vii) A good faith deposit in immediately available funds by wire transfer in the amount of $500,000 (the "**Bid Deposit**"), which shall be delivered to Stichter, Riedel, Blain & Prosser, P.A. ("**SRBP**"), counsel to the Debtor, by no later than the Bid Deadline. The Bid Deposit shall be deposited into a trust account maintained by SRBP and shall be held in escrow subject to the terms of the Bid Procedures Order. SRBP will provide wire transfer instructions upon any request received from a Qualified Bidder.

d) If one or more Qualified Bids are received, an auction (the "**Auction**") to be conducted in accordance with the Bid Procedures shall be held on November 21, 2011, at 10:00 a.m., at the offices of Stichter, Riedel, Blain & Prosser, P.A. or at such other location designated by the Debtor in Tampa, Florida. By no later than 12:00 p.m. on November 19, 2011, the Debtor or Triton, in consultation with the Committee, will advise each of the Qualified Bidders as to whether their Bid is a Qualified Bid and whether an Auction will be held as scheduled above. All potential Qualified Bidders or their authorized representatives with full authority to participate in the Auction must be present in person at the Auction. At the Auction, the Debtor may request a Qualified Bidder to provide additional information demonstrating the Qualified Bidder's financial ability to close and to consummate an acquisition of the New Equity Interests.

e) The Auction will be conducted as an "open cry" auction. Bidding will begin at the purchase price stated in the highest or otherwise best Qualified Bid as selected by the Debtor in consultation with the Committee. The Purchaser shall be entitled to submit further bids at the Auction. All subsequent higher Bids above the starting Bid (including any subsequent Bid which may be made by the Purchaser) must be in incremental increases of at least $ (To Be Announced) and be payable in cash, unless the Debtor determines that other increments would be preferable. Any successive overbid shall be irrevocable unless and until it is declared to not be the highest or best bid. The competitive bidding process among Qualified Bidders shall continue according to these Bid Procedures until the Debtor determines, in the exercise of its business judgment, that a Qualified Bidder has made the highest or otherwise best offer to purchase the New Equity Interests (the "**Prevailing Bidder**"). Following the Auction, the Debtor will file all of the Qualified Bids with the Court.

f) At the Auction, in analyzing all of the Qualified Bids, the Debtor, in consultation with the Committee, shall be entitled to take into account all

aspects of the Qualified Bids, including, without limitation, the amount of the purchase price, the method and timing of the payment of the purchase price, conditions to closing, the time for closing, the assumption and rejection of executory contracts, and the representations, warranties and covenants to be provided by the Debtor.

g) The Court will conduct a hearing (the "**Sale Hearing**") on November 22, 2011, to consider approval of the highest or best bid and the sale of the New Equity Interests to the Prevailing Bidder. At the Sale Hearing, the Debtor will seek entry of an order authorizing and approving the sale of the New Equity Interests to the Prevailing Bidder and will request that such order become effective immediately. The Debtor will also request that the Court's approval of the sale of the New Equity Interests to the Prevailing Bidder be included in the order confirming the Plan (the "**Confirmation Order**") and will further request that the Confirmation Order become effective immediately.

h) The Prevailing Bidder shall be required to close on the purchase of the New Equity Interests by no later than December 6, 2011.

i) The Court shall register the second highest Bid and Bidder (the "**Backup Bidder**"), whose Bidder's Agreement shall be a binding contract with the Debtor and shall close in the event the Prevailing Bidder fails to consummate the acquisition of the New Equity Interests in accordance with the provisions described above and in any order of the Court. The bid of the Backup Bidder shall remain irrevocable and the Debtor shall retain the deposit of the Backup Bidder until the Prevailing Bidder has closed. Any closing with the Backup Bidder shall occur within five (5) days of written notification to the Backup Bidder that the Prevailing Bidder failed to close.

j) A Bid Deposit shall be non-refundable to the Bidder in the event such Bidder's Bid is approved by the Court at the Sale Hearing as the highest or best offer (i.e., the Prevailing Bidder) and such Prevailing Bidder fails to close on the purchase of the New Equity Interests for any reason. In such event, the Bid Deposit will become property of the Debtor as agreed upon liquidated damages to the Debtor and not as a penalty to the Prevailing Bidder. Otherwise, the Bid Deposit will be applied against the purchase price at the closing. Within five (5) days following the entry of the Confirmation Order, SRBP will return the Bid Deposit of any Bidder (except the Backup Bidder) that is not selected as having the highest or best offer at the Sale Hearing. The deposit for the Backup Bidder shall be returned to the Backup Bidder within two (2) days following the closing with the Prevailing Bidder.

k) Except for the Purchaser, no Bidder submitting any Bid shall be entitled to any expense reimbursement or any break-up, termination or similar fee or payment.

l) All objections to the sale, the Bid Procedures and the other transactions contemplated by this Motion shall be filed with the Court and served on the parties set forth in subparagraph (b) above on or before the Bid Deadline.

### *Break-Up Fee and Minimum Overbid Amount*

22. In order to induce the Purchaser to conduct its due diligence as to the Debtor and reach agreement on a definitive agreement, the Purchaser is requesting in the Letter of Intent a break-up fee of $ (To Be Announced) (the "**Break-Up Fee**") and the Overbid Amount of $ (To Be Announced).

23. The Letter of Intent requires the Debtor to pay the Purchaser the Break-Up Fee as liquidated damages for the Purchaser's time, expenses, and lost opportunities in the event that the Purchaser submits its opening bid and the Debtor accepts an offer from a competing Bidder whose Bid is approved by order of this Court. If the Purchaser is not the winning bidder, the Break-Up Fee will be paid to the Purchaser at the closing from the sale proceeds received. The Debtor believes that the Break-Up Fee is fair and reasonable, especially after taking into account the significant time, effort and expenses of the Purchaser in conducting its due diligence of the Debtor and negotiating the Letter of Intent and the Purchase Agreement. In addition, a break-up fee encourages an initial purchaser to act as a stalking horse whose initial bid will be used to attract higher offers.

24. The Purchaser has expended, and will expend, significant amounts of money in reaching a determination to acquire the New Equity Interests and in negotiating the Letter of Intent and the Purchase Agreement. These efforts will inevitably be of value to any competing bidder, inasmuch as the framework for the transaction will have been structured through the efforts of the Debtor and the Purchaser. The Purchaser was unwilling to expend substantial time and effort reaching a definitive agreement and performing the necessary due diligence, only to

find itself outbid in Court, absent the Break-Up Fee. In addition, the Debtor has benefited substantially from the willingness of the Purchaser to proceed forward with this transaction, notwithstanding the fact that the transaction is subject to overbid in this Court. For all of these reasons, the Debtor believes that the Purchaser is entitled to the Break-Up Fee in the event a higher and better offer for the New Equity Interests is received and approved by the Court.

25. The Debtor respectfully submits that the Overbid Amount and the Break-Up Fee are equitable and in the best interests of the Debtor's estate. Given the size of the transaction and the amount of diligence and effort required by the Purchaser to complete the transaction, it would be inequitable to allow a bidder to outbid the Purchaser by an amount less than the Overbid Amount. Additionally, the Purchaser, with the knowledge of the Debtor, has relied upon the Debtor's agreement to the Overbid Amount and the Break-Up Fee in proceeding with negotiation of the Letter of Intent. Finally, the Debtor believes that without reaching some accommodation with the Purchaser regarding the scope of higher and better offers, the Debtor might have lost the bid from the Purchaser.

### *Notice*

26. Pursuant to Bankruptcy Rule 6004(a), notice of a proposed sale of property outside the ordinary course of business is to be provided in accordance with Bankruptcy Rules 2002(a)(2), (c)(1), (i) and (k). Bankruptcy Rule 2002(a)(2) provides that the Clerk shall give the Debtor and all creditors at least 21 days' notice by mail of a proposed sale of property of the estate outside the ordinary course of business. The Debtor proposes that a copy of the Bid Procedures Order be mailed by the Clerk to (a) all parties listed on the Local Rule 1007-2 Parties in Interest List for this case, and (b) all creditors of the Debtor. In addition, the Debtor or Triton will transmit a copy of the Bid Procedures Order to any party that has been previously contacted by the Debtor or its representatives and that has expressed an interest in acquiring the New

Equity Interests. Furthermore, if required by the Court, the Debtor will mail the final form of this Motion (as it may be amended or supplemented) to all creditors of the Debtor. By this Motion, the Debtor seeks this Court's approval of the form and manner of notice as being adequate and sufficient notice of the Bid Procedures and the proposed sale of the New Equity Interests.

## Basis for Emergency Relief

27. Due to the exigent circumstances of this case, the fixing at this time of procedures for the sale of the New Equity Interests is essential and necessary. Certainly, the relief sought would be of considerably greater value if granted immediately.

WHEREFORE, the Debtor respectfully requests entry of an order granting the relief requested herein, and such other and further relief as is just and proper.

Dated: October 14, 2011

/s/ *Charles A. Postler*
Charles A. Postler (Fla. Bar #455318)
Elena Paras Ketchum (Fla Bar # 0129267)
STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
PH   813/229-0144
FAX   813/229-1811
Attorneys for Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **Debtor's Emergency Motion for Entry of an Order (I) Approving the Sale of, and Bidding Procedures in Connection with the Sale of, the Equity Interests in Teltronics, Inc., (II) Approving Minimum Overbid Amount and a Break-Up Fee, (III) Approving Form and Manner of Notice of the Sale and Bidding Procedures, and (IV) Setting Objection Deadlines** has been

13

furnished on this 14th day of October, 2011, (i) by **CM/ECF Transmission** to the United States Trustee, 501 East Polk Street, Suite 1200, Tampa, Florida 33602, and (ii) by **U.S. Mail** or **CM/ECF Transmission** to all parties set forth on the Local 1007-2 Parties in Interest matrix attached hereto.

/s/ *Charles A. Postler*
Charles A. Postler

Label Matrix for local noticing
113A-8
Case 8:11-bk-12150-KRM
Middle District of Florida
Tampa
Fri Oct 14 13:47:21 EDT 2011

ACTIVE SALES ASSOC, INC
ALEX WU, OWNER
7411 114TH AVE. NORTH,STE 313
LARGO, FL 33773-5127

American Express Travel Related Services Co
c/o Becket and Lee LLP
POB 3001
Malvern PA 19355-0701

DATACOMM CONSULTING GROUP
Steven Orlando
1276 CASTLETON AVE
STATEN ISLAND, NY 10310-1718

DELCO ELECTRICAL CORP.
JOHN DELUCA, PRESIDENT
766 5TH AVENUE
BROOKLYN, NY 11232-1619

Dun & Bradstreet
% Receivable Management Services
Attn: Ronald L. Rowland, Agent
307 International Cir., Ste 270
Hunt Valley, MD 21030-1322

EXPERTEL COMMUNICATIONS, LTD
MICHAEL GAVIN, PRESIDENT
19915 23rd AVENUE
WHITESTONE, NY 11357-4123

GM DATA COMMUNICATIONS INC
MIKE PORTOGHESE, RCDD
48 WOODBINE COURT
FLORAL PARK, NY 11001-2718

Graybar Electric Company, Inc.
c/o Jill Levi, Esq.
444 Madison Ave., #1202
New York, NY 10022-6959

Gulfcoast Property #1, LLC
c/o Edwin G. Rice
Glenn Rasmussen Fogarty & Hooker, P.A.
100 S. Ashley Drive, Suite 1300
Tampa, FL 33602-5309

Gulfcoast Property No. 1, LLC
c/o Edwin G. Rice
Glenn Rasmussen Fogarty & Hooker, P.A.
100 S. Ashley Drive, Suite 1300
Tampa, FL 33602-5309

Gulfcoast Property No.1, LLC
c/o Edwin G. Rice
Glenn Rasmussen Fogarty & Hooker, P.A.
100 S. Ashley Drive, Ste 1300
Tampa, FL 33602-5309

Official Committee of Unsecured Creditors
c/o Steven J. Solomon, Esq.
GrayRobinson, P.A.
1221 Brickell Avenue,Suite 1600
Miami, Florida 33131-3247

POWELL ELECTRONICS INC
Debra Frederick,Credit Manager
200 COMMODORE DRIVE
LOGAN TOWNSHIP, NJ 08085-1270

SAT UTILITY CONTRACTING LLC
ANTONIO JABRANE, OWNER
7318 69 PLACE
GLENDALE, NY 11385-7114

STARCOM COMM SERVICES, INC.
MARTIN A. GAVIN, PRESIDENT
41 CENTRAL DRIVE
FARMINGDALE, NY 11735-1201

Susan D Profant, CFCA, CLA, FRP, Paralegal
Ken Burton, Jr.
Manatee County Tax Collector
4333 US 301 North
Ellenton, FL 34222-2413

Teltronics, Inc.
2511 Corporate Way
Palmetto, FL 34221-8478

U.S.Security and Exchange Commission
Office of Reorganization
3475 Lenox Road, N.E.,Ste 1000
Atlanta, GA 30326-3235

United States Trustee - TPA
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602-3949

WEATHER WISE CONDITIONING CORP
333 STAGG STREET
BROOKLYN, NY 11206-1701

Wells Fargo Bank, N.A., as successor to Wach
c/o Donald Kirk, Esq.
Fowler White Boggs P.A.
P.O. Box 1438
Tampa, FL 33601-1438

Wells Fargo Capital Finance, Inc.
% Pamela Webster, Esq.
Buchalter Nemer
1000 Wilshire Blvd.,Ste 1500
Los Angeles, CA 90017-1730

Wells Fargo Capital Finance, Inc.
c/o Donald Kirk, Esq.
Fowler White Boggs P.A.
Post Office Box 1438
Tampa, FL 33601-1438

Wells Fargo Capital Finance, Inc.
c/o Donald R. Kirk, Esq.
Fowler White Boggs, P.A.
P.O. Box 1438
Tampa, FL 33601-1438

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (d)Gulfcoast Property No. 1, LLC<br>c/o Edwin G. Rice<br>Glenn Rasmussen Fogarty & Hooker, P.A.<br>100 S. Ashley Drive, Suite 1300<br>Tampa, FL 33602-5309 | (d)Wells Fargo Capital Finance, Inc.<br>c/o Donald R. Kirk, Esq.<br>Fowler White Boggs P.A.<br>P.O. Box 1438<br>Tampa, FL 33601-1438 | End of Label Matrix<br>Mailable recipients 24<br>Bypassed recipients 2<br>Total 26 |